# EXHIBIT "A"

# ORIGINAL

| STATE OF TENNESSEE 20TH JUDICIAL DISTRICT CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER 24-0259-II |
|---|---|---|

| PLAINTIFF Carlex Glass America, LLC | DEFENDANT Sompo America Insurance Company |
|---|---|

**TO:** (NAME AND ADDRESS OF DEFENDANT)

Sompo America Insurance Company NAIC CoCode 11126
c/o Commissioner of the Tennessee Dept. of Commerce and Insurance
Attn: Service of Process
500 James Robertson Parkway
Nashville, TN 37243

**Method of Service:**

☐ Certified Mail
☐ Davidson Co. Sheriff
☒ *Comm. Of Insurance
☐ *Secretary of State
☐ *Out of County Sheriff
☐ Private Process Server
☐ Other
  *Attach Required Fees

List each defendant on a separate summons.

YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

| Attorney for plaintiff or plaintiff if filing Pro Se: (Name, address & telephone number) Jack R. Dodson, III K&L Gates LLP 501 Commerce Street, Suite 1500 Nashville, TN 37203 (615)780-6742 rob.dodson@klgates.com | FILED, ISSUED & ATTESTED    APR 2 5 2024 **FOR CLERK USE ONLY** MARIA M. SALAS, Clerk and Master By:                    1 Public Square                         Suite 308                         Nashville, TN 37201 Deputy Clerk & Master |
|---|---|

## NOTICE OF DISPOSITION DATE

The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | Sheriff |

***Submit one original plus one copy for each defendant to be served.

⚓ADA Coordinator, Maria M. Salas (862-5710)

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows: (Name of Party Served) *Mbemba Songo America Trevon*

- ☑ Served    *Return Served on Mbemba Ons*
- ☐ Not Served
- ☐ Not Found
- ☐ Other _____

| Date of Return: | By: *Special Officer* |
|---|---|
| Agency Address: *5/6/24* | Sheriff/or other authorized person to serve process |

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____ 20___, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to the defendant _____ . On the ____ day of _____ , 20___, I received the return receipt, which had been signed by _____ on the _____ day of _____ 20

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| Sworn to and subscribed before me on this _____ day of _____ , 20___. Signature of ____ Notary Public or ____ Deputy Clerk | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
|---|---|

My Commission Expires: _____

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

    Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

    Mail list to: Clerk & Master
              1 Public Square
              Suite 308
              Nashville TN 37201

Please state file number on list.

ATTACH RETURN RECEIPT HERE (IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

| I, Maria M. Salas, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case. | MARIA M. SALAS, Clerk & Master <br><br> By: <br><br> D.C. & M. |
|---|---|

FILED
APR 25 2024
2024 APR 25 PM 3:51
CLERK & MASTER
DAVIDSON CO. CHANCERY CT
_D.C. & M.

**CHANCERY COURT FOR THE STATE OF TENNESSEE**
**20th JUDICIAL DISTRICT, DAVIDSON COUNTY**

| | | |
|---|---|---|
| **CARLEX GLASS AMERICA, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action Number 24-0259-II** |
| | ) | **Jury Demand** |
| **SOMPO AMERICA INSURANCE** | ) | |
| **COMPANY** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## AFFIDAVIT OF LAST KNOWN ADDRESS

STATE OF TENNESSEE    )
DAVIDSON COUNTY    )

I, Jack R. Dodson III, being over the age of eighteen and otherwise competent to testify, do hereby state as follows:

1. I am the attorney for the Plaintiff in this action, Carlex Glass America, LLC.

2. The Defendant's last known address is:

> Sompo America Insurance Company
> 777 3rd Avenue, 24th Floor
> New York, NY 10017-1307

I hereby swear or affirm, under penalty of perjury, that the foregoing statements are true to the best of my knowledge, information and belief.

Jack R. Dodson III (#
K&L Gates, LLP
501 Commerce Street, Suite 1500
Nashville, TN 37203
Rob.Dodson@klgates.com

*Attorney for Carlex Glass America, LLC*

SUBSCRIBED AND SWORN before me this ___ day of April, 2024.

_____
Notary Public in and for the
State of Tennessee

My commission expires: 11/2/2026



## CHANCERY COURT FOR THE STATE OF TENNESSEE
### 20th JUDICIAL DISTRICT, DAVIDSON COUNTY

| | |
|---|---|
| CARLEX GLASS AMERICA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action Number 24-0259-II |
| | ) Jury Demand |
| SOMPO AMERICA INSURANCE | ) |
| COMPANY | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND MONEY DAMAGES

Plaintiff, Carlex Glass America, LLC. ("Carlex"), by and through counsel, files this Complaint against Defendant, Sompo America Insurance Company ("Sompo"), alleging as follows:

### I. NATURE OF THE ACTION

1.      This is a first party property insurance coverage action by Carlex seeking judgment for money damages arising from the breach of a commercial property insurance contract issued by Sompo. As a result of a tornado which struck Carlex's facility on March 3, 2020, Carlex submitted its claim for insurance coverage to Sompo claiming at least $83,678,744 in covered losses resulting from the tornado strike. The tornado was state's deadliest tornado in seven years, killing 25 Tennesseans, injuring more than 300 and causing $1.1 billion in total damages and was labeled a CAT event by the Insurance Industry at large, prompting a wide area response. Sompo wrongfully and in breach of contract, rejected part of Carlex's claim, and Carlex is entitled to a money judgment against Sompo for at least $65,910,544.00. The claim relates to unpaid property damage, and business interruption and extra expense losses, among other Policy features.

313656292.8

## II. PARTIES

1.     Carlex Glass America, LLC is a Delaware limited liability company with its principal place of business at 7200 Centennial Boulevard, Nashville, Tennessee 37209. Carlex is a named insured in the Policy per a Schedule of Named Insureds. See Policy, Exhibit 1, Schedule of Named Insureds.

2.     Sompo America Insurance Company (NAIC CoCode: 11126) is a New York Insurance Company with its principal place of business at 11405 North Community House Road, Suite 600, Charlotte, NC 28277. Sompo was authorized to act as a surplus lines carrier with respect to the Policy placement. It may be served with process on Commissioner of the Tennessee Department of Commerce and Insurance, Attn: Service of Process, 500 James Robertson Parkway, Nashville, TN 37243.

## III. JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to Tenn Code Ann. § 16-11-101, et seq.

4.     Venue in this Court is proper under Tenn. Code Ann. §20-4-10; a substantial part of the events giving rise to the claims herein occurred in this judicial district.

## IV. FACTUAL BACKGROUND

5.     At all times relevant hereto, Carlex was insured by a Comprehensive All-Risk Policy numbered HPR40033H0, issued by Sompo with a maximum limit of liability for covered losses of $650,000,000.00 (the "Policy"). A copy of the Policy is attached hereto as Exhibit 1.

6.     The effective period of coverage was from May 1, 2019 through May 1, 2020.

2

7.       Carlex is the manufacturer of float glass, original equipment and replacement glass for the automotive industry. Carlex operates a glass production facility in Nashville, Tennessee.

8.       On March 3, 2020, a tornado struck the Carlex glass production facility located in Nashville, Tennessee. The tornado was an F4 category storm, and it demolished the Carlex facility along with a substantial number of buildings in the vicinity.

9.       As a result of the tornado damage, Carlex submit claims for its losses to Sompo for coverage under the Policy. Initially, Carlex submitted claims for losses of approximately $20,000,000. Carlex subsequently submitted additional claims for losses of $65,910,544. Carlex's total losses, to which it is entitled to coverage under the Policy are in excess of $65,910,544.00. The adjustment process was carried out by in house adjusters at Sompo who interacted extensively with Carlex's broker of record, Lockton Companies as well as the prior broker on the program, Willis of Tennessee.

10.      After Carlex submitted its claims for coverage of losses under the Policy, Sompo eventually paid to Carlex $17,768,200.00 for physical property damage (the "Property Damage Payment") which was part of its initial claim. Sompo denied coverage for the time element portion of its initial claim. A smaller payment was made respecting extra expense/expense to reduce loss in connection with the placement of equipment to keep the demolished float line partially operational.

11.      Sompo eventually rejected and/or denied coverage for Carlex's business interruption claims, and partially rejected/denied its property damage claims all on the spurious grounds that: (1) the period of restoration "ended" (2) the losses were caused by Covid-19; and (3) that Carlex failed to support its claim. At the time of denial, Sompo knew that Carlex was

3

313656292.8

continuing to gather support for its claims and lulled Carlex into thinking the adjustment was ongoing.

12.     Sompo has failed and refused to make payment to Carlex for these claims totaling $65,910,544.00 for (1) property damage and related losses to the float line at the Facility; (2) extra expense associated with outside glass purchases and other customer contracts; (3) loss of gross earnings in connection with lost sales of excess glass; (4) pure extra expense representing outside purchases of materials to keep the line operating; and (5) professional fees that are payable in the event of a covered loss.

13.     As shown below, Sompo's positions are contrary to the Policy, the law, insurance industry custom and practice, and the facts.

14.     Carlex is informed and believes, and on that basis alleges, that Sompo is an insurance company which is extremely sophisticated and knowledgeable in insuring against property, time element, and contingent time element losses, and in investigating the risks they are insuring.

15.     Carlex is informed and believes, and on that basis alleges, that Sompo participates in a wide range of first-party property insurance programs and holds itself out as being knowledgeable, experienced, and reliable, and willing to insure, and capable of insuring, substantial time element and contingent time element losses.

16.     During the time that it has insured Carlex under the Policy, Sompo has engaged, or has had reasonable opportunities to engage, in extensive underwriting investigation, and has become familiar and knowledgeable regarding the nature and scope of Carlex's business, its

4

direct and indirect suppliers, and the nature of the risks, locations, and perils that it was insuring against.

17.    The Policy is a "Comprehensive All Risk" property insurance policy that covers against "risks of direct physical loss or damage to covered property while at an Insured Location or on land within one thousand (1,000) feet thereof, unless otherwise excluded or subject to limitations elsewhere in this policy…." except those plainly, clearly, conspicuously, and expressly excluded. Exhibit 1 at p. 21. Like most commercial property insurance policies, the Policy insures not only against physical damage or destruction of covered property, but also the economic losses and consequences that can result from such property damage. This coverage is typically referred to as "Business Interruption." Relevant portions of the Policy read as follows:

## III.    TIME ELEMENT COVERAGES

### A.    Gross Earnings

We will pay for the actual loss of Gross Earnings sustained by the Insured due to the necessary "suspension" of the Insured's business activities during the Period of Restoration. The "suspension" must be due to physical loss or damage of the type insured against to real or personal property of the type covered, at Insured Locations.

      1.    Recovery in the event of loss shall be the actual loss sustained, less charges and expenses that do not necessarily continue during the suspension of the Insured's business activities. Consideration shall be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume the Insured's business activities with the same quality of service that existed immediately preceding the loss. *Ex. 1*, p. 44 of 68

****

### B.    Extra Expense

We will pay for the reasonable and necessary Extra Expense incurred by the Insured, to resume and continue as nearly as practicable the Insured's "normal" business activities that otherwise would be suspended, due to direct physical loss of or damage caused by a "covered cause of loss" to property at an Insured Location.

5

313656292.8

Extra Expense, wherever used in this policy, means that amount spent during the Period of Restoration to continue the Insured's business activities, over and above the expenses the Insured would normally have incurred had there been no necessary suspension of the Insured's business activities.

1.   Recovery in the event of loss will be the reasonable and necessary extra costs incurred by the Insured of the following during the Period of Restoration:

a.   Extra expenses to avoid or minimize the "suspension" of business and to continue operations at the insured Location, or at replacement locations, or temporary locations, including relocation expenses and costs to equip and operate the replacement or temporary location; and

b.   Extra costs to minimize the "suspension" of business if it is not possible to continue operating during the Period of Restoration; *Ex. 1*, p. 45 of 68.

****

**C.   Rental Value**

We will pay the Rental Value loss, if any, sustained by the Insured resulting directly from necessary untenantability, caused by direct physical loss or damage of the type insured against to property at Insured Locations.

Rental Value means income that would have been earned or incurred as rental income from tenant occupancy, including fair rental value of any portion of the premises which is occupied by the Insured, and continuing "normal" operating expenses incurred in connection with the property at the Insured Location.

1.   Recovery in the event of loss is the actual loss sustained by the Insured of the following during the Period of Restoration:

a.   The fair rental value of any portion of the property occupied by the Insured;

b.   The total anticipated rental income from tenant occupancy of the Insured Location as furnished and equipped by the Insured; and

c.   The rental income from the rented portions of such property according to bona fide leases, contracts or agreements in force at the time of loss, all not to include non-continuing charges and expenses. *Ex. 1*, p. 46 of 68.

**IV.   TIME ELEMENT COVERAGE EXTENSIONS**

313656292.8

If this policy insures "Time Element" loss, as provided by the Time Element Coverages of this policy, the Time Element Coverage Extensions apply as described below.

**C.      Extended Period Of Indemnity**

This policy extends coverage as provided by Gross Earnings and/or Rental Value to cover the additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss occurred. This coverage commences:

1.      On the date the covered property that incurred the loss (except "finished stock") is rebuilt, repaired or replaced and business is resumed or tenant ability is restored; and

2.      Ends on the earlier of:

a.      The date the Insured could restore business, with reasonable speed, to the level which would generate the earnings amount or rents that would have existed had no loss or damage occurred; or

b.      30 consecutive days after the date determined in C.1. above (unless otherwise indicated in the Declarations section of this policy). *Ex. 1*, p. 49 of 68

\*\*\*\*\*

**28.      Professional Fees**

This policy covers the actual costs incurred by the Insured, for reasonable fees paid to the Insured's accountants, architects, auditors, engineers, or other professionals, and the cost of using the Insured's employees for producing and certifying any details contained in the Insured's books or documents, or such other proofs, information or evidence required by us resulting from loss or damage payable under this policy for which we have accepted liability. *Ex. 1*, p. 30 of 68.

**TIME Element, cont'd**

**C.**  This policy covers expenses reasonably and necessarily incurred by the Insured to reduce the loss otherwise payable under this section of the policy. The amount of such recoverable expenses will not exceed the amount by which the loss has been reduced.

18.      Subject to its terms and conditions, the Policy provides up to $650,000,000 in

coverage per "occurrence," which the Policy defines as "the sum total of all loss or damage of

the type insured, irrespective of the number of Insured Locations involved, arising out of or

caused by any one disaster, "accident", loss or series of disasters, accidents or losses, arising out of the same or similar causes, except as respects Earth Movement." The Tornado was an Occurrence under the Policy and is an insured peril.

19.     Carlex paid and or met the Policy deductible and otherwise complied with all terms and conditions precedent in the Policy, or they were excused or waived by Sompo's conduct.

20.     Notably, and unlike many property forms, the Declarations and Sublimits do not provide a date restriction (e.g. one year or 18 months) on the notional Period of Restoration, which is a period "1. Begin[ning] immediately after the time of direct physical loss or damage caused by or resulting from a 'covered cause of loss' to property at an Insured Location; and 2. Ends on the earlier of: The date when the property at the Insured Location should be repaired, rebuilt, replaced or restored with reasonable speed and similar quality" See Policy at Time Element Section V page 52 of 68. In other words, the entire gross earnings limit of $203,077, 315 is available to Carlex subject to the obligations and the hypothetical period prescribed in Time Element Section V.

21.     Carlex avers that the Period of Restoration is ongoing and that it has not fully recovered from the Tornadic wind event and loss.

22.     Carlex timely notified Sompo of its losses, and Carlex fully cooperated with Sompo in Sompo's investigation of these losses – including by providing extensive information to Sompo regarding the nature and extent of the losses, by meeting with Sompo's adjusters and representatives to answer questions, and by providing Sompo's adjusters and representatives with the opportunity to inspect the damage and books.

8

23.     After receiving notice of Carlex's losses, Sompo's representatives collaborated with Carlex on several occasions and participated in numerous meetings and telephone calls with representatives of Carlex regarding the initial claim. Through these site visits, meetings, and telephone calls, Sompo was afforded every reasonable opportunity to gain an understanding of the nature and scope of the damage to the Carlex facilities.

24.     Carlex went so far as to hire its own loss consultants who generated reports indicating the specific nature and amount of Carlex's claims with supporting backup documentation.

25.     Notwithstanding Carlex's cooperation and collaboration with Sompo and its extensive documentation of the losses sustained due to the tornado strike, Sompo has rejected and denied coverage for over $65,910,544.00 of Carlex's claims, blaming large portions of the loss generically on "the Covid-19 Pandemic" and the "mandated Covid-19 Closure" both of which are fabricated excuses. Carlex's physical damage predated the earliest Covid-19 case in Tennessee and any Emergency Orders relating to Covid-19. See Executive Order Dated March 12, 2020, Governor Bill Lee.   See Tennessee Department of Health bulletin, noting first confirmed case occurred on March 5, 2020 in Tennessee.

26.     The denial was unexpected and not precipitated by any lack of cooperation by Carlex. By letter dated November 1, 2023, Sompo rejected Carlex's time element claims as well as certain property damage claims (the "Denial Letter"). A copy of Sompo's November 1, 2023, letter is attached as Exhibit 2.

27.     In the Denial Letter, Sompo alleges that Carlex failed to submit sufficient proof of its time element losses.  This is false.  Carlex provide adequate proof of all time element losses, and is entitled to payment as provided by the policy for its covered, time element losses.

28.     Carlex tendered a sworn Proof of Loss on February 1, 2024 which has not been the

subject of any responsive communication since it was issued.  See Exhibit 3.  Sompo has rejected

the Proof of Loss by not responding within the 30 days allotted in the Policy. Sompo therefore has

no intention of paying Carlex's insured claims, making this controversy and the parties' rights and

obligations ripe for determination by the Court.

## CAUSES OF ACTION

### COUNT I -- BREACH OF CONTRACT

29.     Carlex realleges and incorporates by reference the allegations contained in the

foregoing paragraphs.

30.     Sompo had a duty under the Policy, the law, and insurance industry custom and

practice to promptly conduct a full and thorough investigation, including all bases that might

support Carlex's claim for coverage and to promptly pay sums that are owed under the Policy and

Endorsements.

31.     Sompo has breached its duties under the Policy by, among other things:

    (a)     Failing and refusing to acknowledge or deny coverage;

    (b)     Asserting grounds for disputing coverage that it knows are not supported
        by, and are contrary to, the terms of the Policy, the law, insurance industry
        custom and practice, the parties' course of dealings, and the facts;

    (c)     Failing to conduct an adequate investigation of Carlex's losses, and
        asserting grounds for disputing coverage based on its inadequate
        investigation;

    (d)     Forcing Carlex to conduct its own loss investigation, to hire loss
        preparation consultants and to adjust its own loss without receiving the
        Policy benefit;

    (e)     Failing to fully inquire into possible bases that might support coverage for
        Carlex's losses;

10

313656292:8

(f)    By giving greater consideration to its own interests than Carlex's interests;

(g)    By intentionally delaying its consideration of Carlex's claimed losses;

(h)    By Forcing Carlex into litigation to recover sums that are rightly owed to it; and

(i)    By otherwise acting as alleged above.

32.    As a direct and proximate result of Sompo's breach of contract, Carlex has sustained damages to be proved but presently estimated to exceed $65,910,544.00, plus interest (including prejudgment interest running from the date of proof of loss) at the legal rate. Carlex continues to suffer damages, including consequential damages, because of Sompo's breaches of contract.

**SECOND CAUSE OF ACTION**
**(For Declaratory Relief)**

33.    Carlex realleges and incorporates by reference herein each allegation contained in the foregoing paragraphs.

34.    An actual and justiciable controversy exists between Carlex and Sompo. Carlex contends that Sompo has a duty to indemnify Carlex for at least $65,910,544.00 in covered loss adjustment expenses and time element and contingent time element losses, plus interest at the legal rate and attorney's fees.

35.    Carlex is informed and believes, and on that basis alleges, that Sompo disputes coverage for these amounts. Therefore, declaratory relief is necessary to determine Carlex's rights under the Policy. Specifically, Carlex seeks a judicial declaration confirming that Sompo must honor all duties under the Policy, including its duty to pay for Carlex's losses; that Sompo wrongly takes the position that time element and contingent time element coverage is not triggered; that the period of restoration "ended"; that the exclusions relied upon by Sompo apply; and that Covid-19

11

caused the loss. Because of Sompo's conduct, Carlex is excused from performing or complying with any Policy conditions precedent and duties otherwise within the responsibility of Carlex.

36.     Carlex is entitled to a "speedy hearing" on its claim for Declaratory Relief and to advancement on the Court Calendar under Tenn. Rule Civ. P. 57.

**PRAYER FOR RELIEF**

WHEREFORE, Carlex prays for relief as follows:

A.     On the First Cause of Action, for damages to be proved at trial, plus interest;

B.     On the Second Cause of Action, a declaration of the Parties' rights under the Policy as relates to Carlex's claims for losses set forth herein, determining that Carlex is entitled to coverage for all losses and amounts asserted, for damages to be proved at trial, including reasonable attorneys' fees incurred in obtaining the benefits due under the Policy, plus interest.

C.     For such other, further, and/or different relief as may be deemed just and proper.

**JURY DEMAND**

Carlex demands a trial by jury for all issues so triable.

Respectfully submitted,

/s/ *Jack R. Dodson III*
Jack R. Dodson III (#027947)
rob.dodson@klgates.com
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
(615) 780-6742

*Counsel for Plaintiff*
Respectfully submitted,

12

# Exhibit 1

 **SOMPO INTERNATIONAL**

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

POLICY NUMBER: HPR40033H0

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

| SCHEDULE – PART I |
|---|
| **Terrorism Premium (Certified Acts)** $184 |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):**<br>SFP ONLY<br><br>PROPERTY |
| **Additional Information, if any, concerning the terrorism premium:**<br>THIS FORM IS NOT APPLICABLE IN THE STATE OF MISSOURI. |

| SCHEDULE – PART II |
|---|
| **Federal share of terrorism losses** 81% **Year: 20** 19<br>(Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses** 80% **Year: 20** 20<br>(Refer to Paragraph **B.** in this endorsement.) |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

Case 3:24-cv-00695 Document 1-1 Filed 06/05/24 Page 20 of 174 PageID #: 24

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015   **IL 09 85 01 15**



**SOMPO INTERNATIONAL**

**Policy Number**
**HPR40033H0**

## INSTALLMENT PAYMENT SCHEDULE

Sompo America Insurance Company

Named Insured    CENTRAL GLASS AMERICA, INC.

Effective Date:    05-01-19
12:01 A.M., Standard Time

Agent Name    WILLIS OF TENNESSEE, INC.

Agent No.    A20TN

IT IS HEREBY AGREED AND UNDERSTOOD THAT THIS POLICY IS
PAYABLE ON INSTALLMENTS AS FOLLOWS:

|  | DUE | PREMIUM | TAXES AND SURCHARGES | INSTALLMENT TOTAL |
|---|---|---|---|---|
| DEPOSIT | 05/01/2019 | $ 176,446.00 |  | $ 176,446.00 |
| INSTALL | 08/01/2019 | $ 88,223.00 |  | $ 88,223.00 |
| INSTALL | 11/01/2019 | $ 88,223.00 |  | $ 88,223.00 |
| INSTALL | 02/01/2020 | $ 88,223.00 |  | $ 88,223.00 |

Failure to pay the Installment Premium by the Date Due shown shall constitute non-payment of premium for which will be handled according to the Cancellation provisions stated in this policy.

SIL EXT 010 07 13



**SOMPO INTERNATIONAL**

| | Policy Number |
|---|---|
| | **HPR40033H0** |
| | Renewal of Number |
| | HPR40033H0 |

## COMMON POLICY DECLARATIONS

**Sompo America Insurance Company**
Home Office: 777 Third Avenue 24th Floor, New York, NY 10017-1307
Phone (212) 416-1200

| **Item 1.** Named Insured and Mailing Address | Producer Name and Address |
|---|---|
| CENTRAL GLASS AMERICA, INC.<br>SEE SCHEDULE OF NAMED INSURED(S)<br>7200 CENTENNIAL BLVD<br>NASHVILLE TN 37209-1013 | WILLIS OF TENNESSEE, INC.<br>P.O. BOX 210583<br>DALLAS, TX 75211 |
| | Producer No. A20TN |

**Item 2.** Policy Period   From:   05-01-2019   To:   05-01-2020
At 12:01 A.M., Standard Time at your mailing address shown above.

**Item 3.** Business Description:   AUTOMOBILE GLASS MANUFACTURING

Form of Business:   CORPORATION

**Item 4.** In return for the payment of the premium, and subject to all the terms of this policy, we agreed with you to provide the Insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Premium | |
|---|---|---|
| Commercial Property Coverage Part | $ | 441,115.00 |
| Equipment Breakdown Coverage | | NOT COVERED |
| Commercial General Liability Coverage Part | | NOT COVERED |
| Commercial Crime and Fidelity Coverage Part | | NOT COVERED |
| Commercial Inland Marine Coverage Part | | NOT COVERED |
| Taxes and/or Surcharges | | |
| | | |
| | | |
| **Total Policy Premium** | $ | 441,115.00 |

**Item 5.** See Schedule of Forms and Endorsements.

Additional Form(s) and Endorsement(s) made a part of this policy at time of issue:

Countersigned: _____   By: _____
Authorized Representative

Date:   05-29-19
Branch Office:   Sompo International
11405 North Community House Road
Suite 500
Charlotte, NC 28277

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY

**SHPR DEC 001 (0114)**



**SOMPO INTERNATIONAL**

Policy Number
**HPR40033H0**

### SCHEDULE OF LOCATIONS

Sompo America Insurance Company

Named Insured CENTRAL GLASS AMERICA, INC.

Effective Date: 05-01-2019
12:01 A.M., Standard Time

Agent Name: WILLIS OF TENNESSEE, INC.
Agent No. A20TN

## This Schedule forms a part of Policy Number: HPR40033H0

| Location Number | Bldg. Number | Location Address (Street, City, State, Zip) | Occupancy |
|---|---|---|---|
| 001 | 001 | 77 EXCELLENCE WAY, VONORE, TN, 37885-2123 | Manufacturing |
| 002 | 001 | 1501 CORPORATE PL, LA VERGNE, TN, 37086-3594 | Assembly |
| 003 | 001 | 151 NISSAN WAY, CANTON, MS, 39046 | Assembly |
| 004 | 001 | 3245 CORPORATE PARK DR, LOUDON, TN, 37774-5855 | Warehouse |
| 005 | 001 | 3701 DAVID HOWARTH DR, LAFAYETTE, IN, 47909-9360 | Assembly |
| 006 | 001 | 2500 W JAMESON ST, SEATTLE, WA, 98199-1294 | Manufacturing |
| 007 | 001 | 2421 & 2501 W COMMODORE WAY, SEATTLE, WA, 98199 | Manufacturing |
| 008 | 001 | 4410 26TH AVE W, SEATTLE, WA, 98199 | Manufacturing |
| 009 | 001 | 7595 E 30TH ST, YUMA, AZ, 85365-6532 | Manufacturing |
| 010 | 001 | 7200 CENTENNIAL BLVD, NASHVILLE, TN, 37209-1013 | Manufacturing |
| 011 | 001 | 340 BRIDGESTONE PKWY, LEBANON, TN, 37090-7015 | Warehouse |
| 012 | 001 | 860 W US HIGHWAY 6, LIGONIER, IN, 46767-2543 | Manufacturing |

Refer to Limit of Liability Schedule if specific limits apply.



Policy Number
**HPR40033H0**

### SCHEDULE OF LOCATIONS

Sompo America Insurance Company

Named Insured CENTRAL GLASS AMERICA, INC.

Effective Date: 05-01-2019
12:01 A.M., Standard Time

Agent Name:  WILLIS OF TENNESSEE, INC.
Agent No.    A20TN

## This Schedule forms a part of Policy Number:  HPR40033H0

| Location Number | Bldg. Number | Location Address (Street, City, State, Zip) | Occupancy |
|---|---|---|---|
| 013 | 001 | 1900 S CENTER ST, AUBURN, IN, 46706-9685 | Manufacturing |
| 014 | 001 | 2839 COUNTY ROAD 72, AUBURN, IN, 46706-9623 | Warehouse |
| 015 | 001 | 1209 E BIG BEAVER RD, TROY, MI, 48083-1905 | Office |
| 016 | 001 | 301 N TAYLOR RD, GARRETT, IN, 46738-1843 | Warehouse |
| 017 | 001 | 162 BANK ST, TELLICO PLAINS, TN, 37385-4901 | Warehouse |

Refer to Limit of Liability Schedule if specific limits apply.

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 25 of 174 PageID #: 29


**SOMPO INTERNATIONAL**

Policy Number
**HPR40033H0**

**SCHEDULE OF NAMED INSURED(S)**

Sompo America Insurance Company

Named Insured CENTRAL GLASS AMERICA, INC.

Effective Date: 05-01-2019
12:01 A.M., Standard Time

Agent Name WILLIS OF TENNESSEE, INC.
Agent No.   A20TN

THE NAMED INSURED ON FORM SHPR DEC 001 IS AMENDED TO READ:

CENTRAL GLASS AMERICA, INC.

CARLEX GLASS AMERICA, LLC
NORTHWESTERN INDUSTRIES, INC.

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 26 of 174 PageID #: 30


**SOMPO INTERNATIONAL**

Policy Number
**HPR40033H0**

### SCHEDULE OF FORMS AND ENDORSEMENTS

Sompo America Insurance Company

Named Insured  CENTRAL GLASS AMERICA, INC.

Effective Date: 05-01-2019
12:01 A.M., Standard Time

Agent Name WILLIS OF TENNESSEE, INC.
Agent No.  A20TN

The following forms are attached to and form a part of Policy number:  **HPR40033H0**

| Form Number | Edition | Description of Form |
|---|---|---|
| COMMON POLICY FORMS AND ENDORSEMENTS | | |
| SIL PN 035 | 04-12 | US TREASURY DEPT'S OFAC ADVISORY NOTICE |
| IL 09 85 | 01-15 | DISCLOSURE PURSUANT/TERROR RISK INS ACT |
| SIL EXT 010 | 07-13 | INSTALLMENT PAYMENT SCHEDULE |
| SHPR DEC 001 | 01-14 | HPR POLICY DECLARATIONS |
| SHPR DS 001 | 12-11 | SCHEDULE OF LOCATIONS |
| SHPR DS 005 | 12-11 | SCHEDULE OF NAMED INSURED(S) |
| SHPR DS 004 | 12-11 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| IL 09 53 | 01-15 | EXCL/CERT ACTS-TERROR; COV/FIRE LOSSES |
| SIL 01 054 | 04-15 | AZ POLICY SIGNATURE PAGE |
| SIL 01 053 | 09-11 | POLICY SIGNATURE PAGE |
| SILPN037 | 02-13 | TENNESSEE EXEMPT COMMERCIAL POLICYHOLDER |
| HIGHLY PROTECTED RISK FORMS AND ENDORSEMENTS | | |
| SHPR TOC | 05-19 | TABLE OF CONTENTS |
| SHPR 00 100 | 05-19 | COMPREHENSIVE ALL RISK FORM |
| SHPR APP-A | 12-11 | APPNDX A PACIFIC NORTHWEST SEISMIC ZONE |
| SHPR APP-B | 12-11 | APPENDIX B NEW MADRID SEISMIC ZONE |
| SHPR APP-C | 06-18 | APPENDIX C TIER I AND TIER II WIND ZONES |
| SHPR 01 113 | 01-15 | ENABLING ENDORSEMENT |
| SHPR 02 002 | 12-11 | LOSS PAYABLE PROVISIONS |
| SHPR 02 003 | 12-11 | ORDINARY PAYROLL LIMITATION OR EXCLUSION |
| SHPR 02 013 | 12-11 | STANDARD FIRE POLICY PROVISIONS |
| SHPR DS 003 | 12-11 | SCHEDULE OF DEPENDENT LOCATIONS |
| SHPR 01 006 | 01-11 | ARIZONA CHANGES |
| SHPR 01 007 | 03-15 | ARIZONA CHANGES CANCEL AND NONRENEWAL |
| SHPR 01 019 | 01-11 | GEORGIA CHANGES |
| SHPR 01 020 | 03-15 | GEORGIA CHANGES-CANCEL AND NONRENEWAL |
| SHPR 01 026 | 10-14 | INDIANA CHANGES RIGHTS OF RECOVERY |
| SHPR 01 027 | 01-11 | INDIANA CHANGES-CANCEL AND NONRENEWAL |
| SHPR 01 043 | 09-17 | MICHIGAN CHANGES |
| SHPR 01 073 | 01-11 | MISSISSIPPI CHGS-CANCEL AND NONRENEWAL |
| SHPR 01 074 | 01-11 | MISSISSIPPI CHANGES |
| SHPR 01 088 | 01-11 | TENNESSEE CHANGES-CANCEL AND NONRENEWAL |
| SHPR 01 097 | 01-11 | WASHINGTON CHANGES |
| SHPR 01 098 | 01-11 | WASHINGTON CHANGES - DOMESTIC ABUSE |
| SHPR 01 099 | 01-12 | WA CHANGES - GENERAL POLICY CONDITIONS |
| SHPR 01 111 | 10-14 | IN CHANGES AMEND DEFINITION POLLUTANTS |
| SHPR 02 019 | 12-11 | JOINT OR DISPUTED LOSS AGREEMENT |
| SHPR 02 027 | 12-11 | TERRORISM - WASHINGTON AMENDMENT |



SOMPO
INTERNATIONAL

Policy Number
**HPR40033H0**

**SCHEDULE OF FORMS AND ENDORSEMENTS**

Sompo America Insurance Company

Named Insured  CENTRAL GLASS AMERICA, INC.

Effective Date: 05-01-2019
12:01 A.M., Standard Time

Agent Name  WILLIS OF TENNESSEE, INC.
Agent No.  A20TN

The following forms are attached to and form a part of Policy number:  **HPR40033H0**

| Form Number | Edition | Description of Form |
|---|---|---|
| SHPR 01 110 | 07-14 | WASHINGTON CHANGES - DEFENSE COSTS |
| SOMPO-HPRA | 07-13 | COVERAGE TERRITORY AMENDMENT |
| SOMPO-HPRB | 07-13 | BUILDER'S RISK - NEW BLDGS & ADFDITIONS |

SHPR DS 004 (12/2011)

Page 2

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 28 of 174 PageID #: 32

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

### SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| APPLICABLE TO CURRENT STANDARD | |
| FIRE POLICY STATES AT TIME OF | |
| LOSS | |
| | |
| | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

Case 3:24-cv-00695     Document 1-1     Filed 06/05/24     Page 29 of 174 PageID #: 33

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.


SOMPO INTERNATIONAL

In Witness Whereof, we have caused this policy to be executed and attested.

_____
Secretary

_____
President

SIL 01 054 (0415)


**SOMPO**
**INTERNATIONAL**

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____
**Secretary**

_____
**President**

SIL 01 053 0911

SOMPO INTERNATIONAL

## TENNESSEE EXEMPT COMMERCIAL POLICYHOLDER
## ADVISORY NOTICE

The rate provided for in this policy and forms which make up this policy contract are exempt from the filing requirements of Tenn.Code Ann. § 56-5-306.



# MICHIGAN NOTICE TO POLICYHOLDERS

The following information is provided in accordance with Michigan Law:

This policy is exempt from the filing requirements of section 2236 of the Insurance code of 1956, 1956 PA 218, MCL 500.2236.

Case 3:24-cv-00695     Document 1-1     Filed 06/05/24     Page 34 of 174 PageID #: 38



# THE COMPREHENSIVE ALL RISK FORM
## TABLE OF CONTENTS
### (Order In Which They Appear)

**SECTION A - DECLARATIONS**                                                    Page No.

I.      NAMED INSURED AND MAILING ADDRESS ........................................................ 1
II.     INSURING AGREEMENT ........................................................................................ 1
III.    PREMIUM AND TERM OF POLICY ....................................................................... 1
IV.     COVERAGE TERRITORY ....................................................................................... 2
V.      INSURED LOCATION .............................................................................................. 2
VI.     OCCURRENCE .......................................................................................................... 2
VII.    LIMITS OF LIABILITY ............................................................................................. 2
        SUBLIMITS OF LIABILITY ..................................................................................... 3
        A.    EARTH MOVEMENT ...................................................................................... 3
        B.    FLOOD .............................................................................................................. 3
        C.    TRANSIT ........................................................................................................... 3
        D.    EQUIPMENT BREAKDOWN .......................................................................... 3
        E.    OFF-PREMISES SERVICES INTERRUPTION ............................................. 4
        F.    OTHER SUBLIMITS ........................................................................................ 4
        G.    TIME LIMITS OF LIABILITY ......................................................................... 5
VIII.   VALUE REPORTING PROVISIONS ...................................................................... 6
IX.     DEDUCTIBLES .......................................................................................................... 6
        A.    APPLICATION OF DEDUCTIBLES .............................................................. 6
        B.    POLICY DEDUCTIBLE .................................................................................... 6
              1.    EARTH MOVEMENT DEDUCTIBLE(S) ............................................ 6
              2.    FLOOD DEDUCTIBLE(S) ...................................................................... 7
              3.    NAMED WINDSTORM DEDUCTIBLE(S) ........................................... 8
              4.    TRANSIT DEDUCTIBLE(S) ................................................................... 9
              5.    EQUIPMENT BREAKDOWN DEDUCTIBLE(S) .................................. 9
              6.    OTHER DEDUCTIBLE(S) ....................................................................... 9
X.      WAITING PERIOD .................................................................................................... 9

**SECTION B - PROPERTY DAMAGE COVERAGE PART**

I.      COVERED PROPERTY ............................................................................................ 11
II.     PROPERTY NOT COVERED ................................................................................... 12
III.    ADDITIONAL COVERAGES ................................................................................... 13
        1.    ACCOUNTS RECEIVABLE ............................................................................. 14
        2.    AUTOMOBILES ................................................................................................ 15
        3.    BRANDS AND LABELS .................................................................................... 15
        4.    COLLAPSE ......................................................................................................... 15
        5.    CONSEQUENTIAL REDUCTION IN VALUE ................................................ 16
        6.    DEBRIS REMOVAL EXPENSE ........................................................................ 16
        7.    DECONTAMINATION COSTS ......................................................................... 17
        8.    DEFENSE COSTS .............................................................................................. 18
        9.    DEFERRED PAYMENTS ................................................................................... 18
        10.   DOCKS, PIERS, WHARVES ............................................................................. 18
        11.   EARTH MOVEMENT ........................................................................................ 18
        12.   ELECTRONIC DATA - PROPERTY DAMAGE ............................................... 19
        13.   EQUIPMENT BREAKDOWN ............................................................................ 20
        14.   ERRORS AND OMISSIONS .............................................................................. 22
        15.   EXHIBITION, EXPOSITION, FAIR OR TRADE SHOW ................................ 22

16. EXPEDITING EXPENSES .......................................................................... 22
17. FINE ARTS .................................................................................................. 22
18. FIRE DEPARTMENT SERVICE CHARGES ................................................ 23
19. FLOOD ........................................................................................................ 23
20. LIMITED COVERAGE FOR "FUNGUS", WET ROT OR DRY ROT ............ 24
21. MISCELLANEOUS NON-OWNED LOCATIONS: ...................................... 25
22. MISCELLANEOUS UNNAMED LOCATIONS ............................................ 25
23. NEWLY ACQUIRED PROPERTY ............................................................... 26
24. OFF-PREMISES SERVICE INTERRUPTION - PROPERTY DAMAGE ......... 26
25. ORDINANCE OR LAW - DEMOLITION AND INCREASED COST OF CONSTRUCTION ........ 28
26. ORDINANCE OR LAW - UNDAMAGED PARTS OF A BUILDING ............... 29
27. POLLUTANT CLEANUP AND REMOVAL ................................................... 29
28. PROFESSIONAL FEES .............................................................................. 30
29. PROTECTION AND PRESERVATION OF PROPERTY .............................. 30
30. RECHARGE OF FIRE EXTINGUISHING EQUIPMENT ............................. 30
31. REWARDS ................................................................................................... 31
32. SALES REPRESENTATIVE SAMPLES ...................................................... 31
33. SPOILAGE .................................................................................................. 31
34. TEMPORARY REMOVAL OF PROPERTY ................................................. 32
35. TRANSIT COVERAGE ............................................................................... 33
36. TREES, SHRUBS, AND PLANTS .............................................................. 35
37. VALUABLE PAPERS AND RECORDS ....................................................... 35
38. VOLUNTARY PARTING .............................................................................. 36
IV. EXCLUSIONS ................................................................................................. 36

## SECTION C - TIME ELEMENT COVERAGE PART

I. TIME ELEMENT COVERAGE PROVISIONS ................................................ 43
II. LOSS INSURED ............................................................................................. 43
III. TIME ELEMENT COVERAGES ..................................................................... 44
    A. GROSS EARNINGS ................................................................................ 44
    B. EXTRA EXPENSE ................................................................................... 45
    C. RENTAL VALUE ...................................................................................... 46
    D. LEASEHOLD INTEREST ......................................................................... 46
IV. TIME ELEMENT COVERAGE EXTENSIONS ................................................ 47
    A. DEPENDENT LOCATIONS ...................................................................... 47
    B. ELECTRONIC DATA - TIME ELEMENT ................................................... 49
    C. EXTENDED PERIOD OF INDEMNITY ..................................................... 49
    D. INGRESS/EGRESS ................................................................................. 50
    E. INTERRUPTION BY CIVIL AUTHORITY ................................................. 50
    F. IMPOUNDED WATER .............................................................................. 50
    G. OFF-PREMISES SERVICE INTERRUPTION - TIME ELEMENT ............. 51
    H. RESEARCH AND DEVELOPMENT .......................................................... 51
V. PERIOD OF RESTORATION ......................................................................... 52
VI. TIME ELEMENT EXCLUSIONS ..................................................................... 53
VII. TIME ELEMENT INTERDEPENDENCY ........................................................ 54

## SECTION D - GENERAL POLICY CONDITIONS

I. CANCELLATION AND NON-RENEWAL ......................................................... 55
II. CONCEALMENT, MISREPRESENTATION OR FRAUD .................................. 55

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 36 of 174 PageID #: 40

## THE COMPREHENSIVE ALL RISK FORM
## TABLE OF CONTENTS
### (Order In Which They Appear)

| | | |
|---|---|---|
| III. | CONTROL OF PROPERTY | 55 |
| IV. | CONTROL OF DAMAGED GOODS | 56 |
| V. | ENVIRONMENTAL, SAFETY AND EFFICIENCY IMPROVEMENTS | 56 |
| VI. | INSPECTIONS AND SURVEYS | 56 |
| VII. | JURISDICTION | 57 |
| VIII. | JURISDICTIONAL INSPECTIONS | 57 |
| IX. | LIBERALIZATION | 57 |
| X. | LOSS ADJUSTMENT/PAYABLE | 57 |
| XI. | LOSS CONDITIONS | 57 |
| | A. DUTIES IN THE EVENT OF LOSS OR DAMAGE | 57 |
| | B. ABANDONMENT | 58 |
| | C. SUBROGATION | 58 |
| | D. APPRAISAL | 58 |
| | E. SUIT AGAINST THE COMPANY | 59 |
| XII. | MORTGAGE PROVISIONS | 59 |
| XIII. | REDUCTION BY LOSS | 59 |
| XIV. | OTHER INSURANCE | 60 |
| XV. | POLICY MODIFICATION | 60 |
| XVI. | SETTLEMENT OF CLAIMS | 60 |
| XVII. | SUSPENDED PROPERTY | 61 |
| XVIII. | TITLES OF PARAGRAPHS | 61 |
| XIX. | TRANSFER OF RIGHTS AND DUTIES | 61 |
| XX. | VACANCY - UNOCCUPANCY | 61 |
| XXI. | VALUATION | 61 |
| | | |
| SECTION E - DEFINITIONS | | 65 |

**APPENDICES:**
APPENDIX A  -  PACIFIC NORTHWEST SEISMIC ZONE SHPR APP-A
APPENDIX B  -  NEW MADRID SEISMIC ZONE SHPR APP-B
APPENDIX C  -  TIER I AND TIER II WIND ZONES SHPR APP-C

<u>Please see Form #SHPR DS 004 for Schedule of Forms and Endorsements applicable to this policy.</u>



## COMPREHENSIVE ALL RISK FORM

## SECTION A - DECLARATIONS

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations of this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have a special meaning. Refer to the Definitions section of this policy.

**I.    NAMED INSURED AND MAILING ADDRESS:**

> **CENTRAL GLASS AMERICA, INC.**
> **7200 CENTENNIAL BLVD**
> **NASHVILLE, TN 37209-1013**

as now or may hereafter be constituted. Unless otherwise provided herein, loss, if any, shall be adjusted with **CENTRAL GLASS AMERICA, INC.**, and payable as directed by the Insured. The receipt of the payee(s) so designated shall constitute a release in full of all liability with respect to such loss.

IN ADDITION TO THE NAMED INSURED SHOWN ABOVE, WE ALSO INSURE:

**A.**    Any subsidiary organization(s) of the Insured, including their subsidiaries;

**B.**    Additional Named Insured's; and

**C.**    Any other organization coming under the Insured's control when the Insured assumes its actual management.

If the Named Insured under this form consists of more than one person or firm, we will not pay more than what the amount of loss would have been if we had insured a single person or firm.

**II.    INSURING AGREEMENT**

This policy insures against risks of direct physical loss or damage to covered property while at an Insured Location or on land within one thousand (1,000) feet thereof, unless otherwise excluded or subject to limitations elsewhere in this policy, and provided such physical loss or damage occurs during the term of this policy. Any other type of insurance coverage shall be in writing and/or contained in a specific endorsement referenced in the Declarations of this policy.

**III.    PREMIUM AND TERM OF POLICY**

The first Named Insured shown herein, in the Declarations, is responsible for the payment of all premiums and will be the payee for any return premiums we pay.

In consideration of **$441,115** premium charged, due for the initial policy term, this policy attaches and covers for a period of time as indicated from **May 01, 2019** to **May 01, 2020**, beginning and ending at 12:01 a.m. Standard Time, at the location(s) of the covered property.

## IV. COVERAGE TERRITORY

This policy covers loss or damage occurring at any Insured Location within the United States of America (including its territories and possessions), Canada and Puerto Rico. As respects Sales Representative Samples, the coverage territory is amended to include Sales Representative Samples located anywhere in the world except for loss or damage in any country or jurisdiction where trade relations are unlawful as determined by the Government of the United States of America or its agencies.

## V. INSURED LOCATION

The coverages under this policy apply to an Insured Location unless otherwise provided.

An Insured Location is a location:

**A.** Listed on a Schedule of Locations attached to this policy.

**B.** Covered under the terms and conditions of the Miscellaneous Unnamed Locations Coverage, the Newly Acquired Property Coverage, Miscellaneous Non-owned Locations, or the Errors and Omissions provisions.

A location is as specified in the Schedule of Locations; or if not specified in the Schedule of Locations, a location is a site or area which is owned, leased or occupied by the Insured and is bounded on all sides by areas which are not owned, leased or occupied by the Insured.

## VI. OCCURRENCE

The term occurrence, wherever used in this policy, means the sum total of all loss or damage of the type insured, irrespective of the number of Insured Locations involved, arising out of or caused by any one disaster, "accident", loss or series of disasters, accidents or losses, arising out of the same or similar causes, except as respects Earth Movement.

As respects Earth Movement, occurrence shall mean the sum total of all loss or damage of the type insured, arising out of or caused by all earth movement during a continuous period of one hundred sixty-eight (168) hours.

## VII. LIMITS OF LIABILITY

Our maximum limit of liability in a single occurrence regardless of the number of locations or coverages involved, including any insured Time Element loss, will not exceed the **$650,000,000,** subject to the following provisions.

**A.** This policy may contain sublimits applicable to specific locations, specific coverages or specific causes of loss. Such sublimits shall be the total payable arising out of one occurrence (or an "annual aggregate" of certain occurrences where so specified), and neither the policy limit nor any sublimit shall be increased by the application of one or more sublimit.

**B.** The sublimits of liability stated below or elsewhere in this policy are parts of, and not in addition to, the policy limit of liability.

**C.** Limits of liability in an occurrence apply to the total loss or damage at all locations and for all coverages involved, including any insured Time Element loss, subject to the following provisions:

1.    When a limit of liability applies in the aggregate during any policy year, the Company's maximum amount payable will not exceed such limit of liability during any policy year regardless of the number of locations, coverages or occurrences involved.

2.    When a limit of liability applies to a location or other specified property, such limit of liability will be the maximum amount payable for all loss or damage at all locations arising from physical loss or damage at such location or to such other specified property.

Abbreviations may be used in this policy to designate coverages, in which case, "PD" will mean coverage provided by the Property Damage Coverage Section, and "TE" will mean coverage provided by any Time Element Coverage within the Time Element Coverage Section which is not more specifically identified.

## SUBLIMITS OF LIABILITY:

**A.    EARTH MOVEMENT ANNUAL AGGREGATE SUBLIMIT**

Liability for all losses per occurrence and in the aggregate, caused by or resulting from earth movement in any one policy year as insured against, shall not exceed **$90,000,000** at all Scheduled Locations except as follows:

1. a. **NOT COVERED** per occurrence and annual aggregate at location(s) in the State of California;

   b. **$30,000,000** per occurrence and annual aggregate at location(s) in the Pacific Northwest Seismic Zones per Appendix A;

   c. **$1,000,000** per occurrence and annual aggregate at location(s) in the New Madrid Seismic Zones per Appendix B;

2. Newly Acquired, Miscellaneous Unnamed, Miscellaneous Non-owned, and Dependent Property Locations are excluded.

**B.    FLOOD ANNUAL AGGREGATE SUBLIMIT**

Liability for all losses per occurrence and in the aggregate, caused by or resulting from flood in any one policy year as insured against, shall not exceed **$90,000,000** at all Scheduled Locations except as follows:

1. **NOT COVERED** per occurrence and annual aggregate at scheduled locations wholly or partially situated within "Special Flood Hazard Areas" (SFHA) as defined by the Federal Emergency Management Agency (FEMA);

2. **$20,000,000** per occurrence and annual aggregate at scheduled locations wholly or partially situated within "Moderate Flood Hazard Areas" as defined by the Federal Emergency Management Agency (FEMA)

3. Newly Acquired, Miscellaneous Unnamed, Miscellaneous Non-owned, and Dependent Property Locations are excluded.

**C.    TRANSIT SUBLIMIT**

Liability shall not exceed **$1,000,000** on any loss arising out of one occurrence as insured against by the Transit Additional Coverage provided by this policy.

**D.    EQUIPMENT BREAKDOWN SUBLIMIT(S)**

Liability shall not exceed **NOT COVERED** on any one loss arising out of any one "accident" as insured against by the Equipment Breakdown Additional Coverage, subject to the sublimit(s) for any one "accident" listed below:

| Equipment Breakdown Coverage | Sublimit |
|---|---|
| Ordinance or Law - Demolition & Increased Cost of Construction | NOT COVERED |
| Dependent Locations (on Schedule of Dependent Locations SHPR DS 003) | NOT COVERED |
| Dependent Locations (Not Specifically Named) | NOT COVERED |
| "Electronic Data" - Property Damage And, if applicable, Time Element | NOT COVERED |
| Expediting Expenses | NOT COVERED |
| Extra Expense | NOT COVERED |
| Gross Earnings or Gross Profits | NOT COVERED |
| "Hazardous Substances" | NOT COVERED |
| Service Interruption | NOT COVERED |
| "Perishable Goods" | NOT COVERED |

E. **OFF-PREMISES SERVICES INTERRUPTION - PROPERTY DAMAGE AND, IF APPLICABLE, TIME ELEMENT SUBLIMIT**

**$25,000,000** for loss or damage arising out of one occurrence caused by or resulting from off-premises service interruption; including overhead transmission lines.

F. **OTHER SUBLIMITS FOR LOSS ARISING OUT OF ONE OCCURRENCE:**

| Coverage | Sublimit |
|---|---|
| Property Damage | INCLUDED |
| Gross Earnings | $203,077,315 |
| | |
| Accounts Receivable | $5,000,000 |
| Automobiles | $100,000 |
| Brands And Labels Expense | $1,000,000 |
| Builders Risk - Property Damage | $10,000,000 |
| Contractors Mobile Equipment | $500,000 |
| Debris Removal Expense | $5,000,000 |
| Decontamination Costs | $50,000 |
| Deferred Payments | $1,000,000 |
| Dependent Locations (Not Specifically Named) | $1,000,000 |
| Dependent Locations (On Schedule Of Dependent Locations) | $7,500,000 |
| Docks/Piers/Wharves | $250,000 |

| | |
|---|---|
| Electronic Data – Property Damage And, If Applicable Time Element | $2,500,000 |
| Errors And Omissions | $2,500,000 |
| Exhibitions, Expositions, Fairs Or Trade Shows | $1,000,000 |
| Expediting Expenses | $10,000,000 |
| Extra Expense | INCLUDED IN GROSS EARNINGS |
| Fine Arts | $2,000,000 |
| Leasehold Interest | $5,000,000 |
| Limited Coverage For Fungus, Wet Rot Or Dry Rot | $1,000,000 |
| Miscellaneous Non-Owned Locations | $250,000 |
| Miscellaneous Unnamed Locations | $2,000,000 |
| Newly Acquired Property | $5,000,000 |
| Ordinance Or Law - Demolition And Increased Cost Of Construction | $25,000,000 |
| Pollutant Cleanup And Removal Annual Aggregate | $1,000,000 |
| Professional Fees | $2,500,000 |
| Recharge Of Fire Extinguishing Equipment | $1,000,000 |
| Rental Value | $1,000,000 |
| Rewards | $25,000 |
| Sales Representatives Samples | $100,000 |
| Spoilage | $1,000,000 |
| Temporary Removal Of Property | $1,000,000 |
| Trees, Shrubs And Plants | $100,000 |
| Valuable Papers And Records | $5,000,000 |
| Voluntary Parting | $100,000 |

The above sublimits may be amended as necessary. Other Limits of Liability may be added. All of the above limits apply per occurrence unless otherwise indicated.

G. **TIME LIMITS OF LIABILITY:**

In addition to any sublimit shown above or other "limit" shown elsewhere in this policy, the following time limits apply for the following coverages:

| Coverage | Time Limit |
|---|---|
| **Interruption By Civil Authority** | 30 DAYS |
| **Extended Period Of Indemnity** | 180 DAYS |
| **Impounded Water** | 30 DAYS |
| **Ingress/Egress** | 30 DAYS |
| **Newly Acquired Property** | 90 DAYS |

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 42 of 174 PageID #: 46

## VIII. VALUE REPORTING PROVISIONS

You will provide us 100% values by location. The statement of values will show values as of the inception date of this policy and are due on or before the inception date of this policy.

## IX. DEDUCTIBLES

### A. APPLICATION OF DEDUCTIBLES

In each case of loss covered by this policy, we shall not be liable unless the Insured sustains a loss, including any Insured Time Element loss, in a single occurrence in excess of the applicable deductible specified below, and then only for our share of such excess.

1. Stated dollar deductibles or time exclusion deductibles which are related to a specific type of coverage shall be applied separately with respect to such coverages. If two or more separate deductible amounts apply to the same specific type of coverage, the total to be deducted shall be the largest applicable deductible amount.

2. Deductibles which are not designated as applying to a specific type of coverage are combined deductibles and shall be applied to the total loss from all applicable coverages.

3. When this policy insures more than one location, the deductible will apply against the total loss covered in this policy in an occurrence except that a deductible that applies on a per location basis, if specified, will apply separately to each location where the physical damage occurred regardless of the number of locations involved in the occurrence.

4. Unless stated otherwise, if two or more deductibles apply to an occurrence, the total to be deducted will not exceed the largest deductible applicable. If two or more deductibles apply on a per location basis in an occurrence the largest deductible applying to each location will be applied separately to each such location.

5. Equipment Breakdown Percentage of Loss Deductibles: If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

### B. POLICY DEDUCTIBLE

A **$250,000** deductible will be applicable to all coverages on a per occurrence basis, except as follows:

A **$10,000** deductible will be applicable to all coverages on a per occurrence basis at the following locations:
**340 BRIDGESTONE PKWY, LEBANON, TN, 37090-7015**

Abbreviations may be used in this policy to designate coverages, in which case, "PD" will mean coverage provided by Property Damage Coverage Part, and "TE" will mean coverage provided by any Time Element Coverage Part which is not more specifically identified.

### EXCEPTIONS TO POLICY DEDUCTIBLE:

1. **EARTH MOVEMENT DEDUCTIBLE(S)**

In the event of Property Damage and/or Time Element loss caused by or resulting from earth movement, the following deductible provisions will apply to each occurrence as insured against in this policy.

**$250,000** for each occurrence as insured against at all Insured Locations, except as follows:

a.  As respects Insured Locations in the State of California:

    The greater of **5%** of the PD and TE values where the loss occurs, or **$250,000** for each occurrence for covered locations.

b.  As respects Insured Locations in the Pacific Northwest Seismic Zones per **Appendix A:**

    The greater of **2%** of the PD and TE values where the loss occurs, or **$250,000** for each occurrence for covered locations.

c.  As respects Insured Locations in the New Madrid Seismic Zones per **Appendix B:**

    The greater of **5%** of the PD and TE values where the loss occurs, or **$250,000** for each occurrence for covered locations.

The stated percentage deductible(s) above will be calculated for Property Damage and Time Element losses as shown in subparagraphs **a.** and **b.** below:

a.  For Property Damage loss, the percentage shown above will be multiplied by the one hundred percent (100%) value of the property insured, applied separately to each location where physical damage occurred:

    (1)  Each building or structure;

    (2)  The contents of each building or structure; and

    (3)  Personal property in each yard.

    In applying this deductible, value shall be determined on the same basis as is used to determine the amount of loss. Upon request, the Insured shall submit properly substantiated values as of the date of loss.

b.  For Time Element loss, the applicable percentage shown above will be multiplied by the Time Element value, meaning Gross Earnings and continuing expenses, that would have been earned in the twelve (12) month period immediately following the date of the earth movement loss by use of the facilities at the location(s) where the physical damage occurred and all other locations where Time Element loss ensues. The deductible percentage shall apply to each location.

2.  **FLOOD DEDUCTIBLE(S)**

    In the event of Property Damage and/or Time Element loss caused by or resulting from flood, the following deductible provisions will apply to each occurrence as insured against in this policy.

    **$250,000** for each occurrence as insured against at all Insured Locations, except as follows:

**a.** As respects Insured Locations wholly or partially situated within "Special Flood Hazard Areas" (SFHA), areas of 100-year flooding, as defined by the Federal Emergency Management Agency (FEMA):

The greater of **5%** of the PD and TE values where the loss occurs, or **$1,000,000** for each occurrence for covered locations.

**b.** As respects Insured Locations situated within "Moderate Flood Hazard Areas" (MFHA) outside of (SFHA) areas of 100-year flooding, but wholly or partially situated within areas of 500-year flooding, as defined by the Federal Emergency Management Agency (FEMA):

The greater of **2%** of the PD and TE values where the loss occurs, or **$250,000** for each occurrence for Insured Locations.

The stated percentage deductible(s) above will be calculated for Property Damage and Time Element losses as shown below:

**a.** For Property Damage loss, the percentage shown above will be multiplied by the one hundred percent (100%) value of the property Insured, applied separately to each location where physical damage occurred:

    **(1)** Each building or structure;

    **(2)** The contents of each building or structure; and

    **(3)** Personal property In each yard.

In applying this deductible, value shall be determined on the same basis as is used to determine the amount of loss. Upon request, the Insured shall submit properly substantiated values as of the date of loss.

**b.** For Time Element loss, the applicable percentage shown above will be multiplied by the Time Element value, meaning Gross Earnings and continuing expenses, that would have been earned in the twelve (12) month period immediately following the date of the flood loss by use of the facilities at the location(s) where the physical damage occurred and all other locations where Time Element loss ensues. The deductible percentage shall apply to each location.

### 3. NAMED WINDSTORM DEDUCTIBLE(S)

In the event of Property Damage and/or Time Element loss caused by or resulting from a Named Windstorm, the sum to be deducted, each occurrence, shall be **$250,000**, except as follows:

**a.** Tier I Wind Zones - as respects Insured Locations in a Tier I Wind Zone per **Appendix C:**

The greater of **5%** of the PD and TE values where the loss occurs, or **$500,000** for each occurrence for Insured Locations.

**b.** Tier II Wind Zones - as respects Insured Locations in a Tier II Wind Zone per **Appendix C:**

The greater of **0%** of the PD and TE values where the loss occurs, or **$250,000** for each occurrence for Insured Locations.

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 45 of 174 PageID #: 49

**K&L GATES LLP**

Date: 04/23/2024   Payee: **Tennessee Commissioner of Insurance**          Vendor #: 100114-9          Check #: 1442993

| Ref. # | Invoice | Inv. Date | Inv. Amount | Comments | Amt. Paid |
|--------|---------|-----------|-------------|----------|-----------|
| 1204515 | 100114-042324-15 00 | 04/23/2024 | 15.00 | Tiffany Kanselaar (NS) | 15.00 |

15.00

---

**K&L GATES LLP**

Date: 04/23/2024   Payee: **Tennessee Commissioner of Insurance**          Vendor #: 100114-9          Check #: 1442993

| Ref. # | Invoice | Inv. Date | Inv. Amount | Comments | Amt. Paid |
|--------|---------|-----------|-------------|----------|-----------|
| 1204515 | 100114-042324-15 00 | 04/23/2024 | 15.00 | Tiffany Kanselaar (NS) | 15.00 |

15.00

The stated percentage deductible(s) above will be calculated for Property Damage and Time Element losses as shown below:

a. For Property Damage, the percentage shown above will be multiplied by the one hundred percent (100%) value of the property insured, applied separately to each location where physical damage occurred:

    (1) Each building or structure;

    (2) The contents of each building or structure; and

    (3) Personal property in each yard.

In applying this deductible, value shall be determined on the same basis as is used to determine the amount of loss. Upon request, the Insured shall submit properly substantiated values as of the date of loss.

b. For Time Element loss, the applicable percentage shown above will be multiplied by the Time Element values, meaning Gross Earnings and continuing expenses that would have been earned in the twelve (12) month period immediately following the date of the Named Windstorm loss by use of the facilities at the location(s) where the physical damage occurred and all other locations where Time Element loss ensues. The deductible percentage shall apply separately to each location.

The term Named Windstorm shall mean a storm or weather condition including substance driven by wind that has been identified by name by any meteorological authority such as the National Hurricane Center or U.S. National Weather Service.

4. **TRANSIT DEDUCTIBLE(S)**

**$10,000** for each occurrence as insured against by the Transit Additional Coverage provided by this policy.

5. **EQUIPMENT BREAKDOWN DEDUCTIBLE(S)**

**NOT APPLICABLE** for each "accident" as insured against by the Equipment Breakdown Additional Coverage

6. **OTHER DEDUCTIBLE(S)**

| Coverage | Deductible |
|---|---|
| Coverage | Deductible |
| Not Applicable | |

## X. WAITING PERIOD

If a waiting period is indicated below for a coverage, we will not be liable for any loss or expense occurring during the specified number of hours or days following an occurrence. The number of hours or days immediately following the loss must exceed the stated waiting period below for coverage to apply. If the time period exceeds the stated waiting period below, then all terms and conditions including applicable deductibles would apply.

| Coverage | Waiting Period |
|---|---|

| | |
|---|---|
| Dependent Locations (On Schedule Of Dependent Locations) | **Twenty-four (24) Hours Waiting Period,** at which time the deductible will be **$250,000** |
| Off - Premises Services Interruption - Te | **Twenty-four (24) Hours Waiting Period,** at which time the deductible will be **$250,000** |
| **"Electronic Data", Programs Or Software As Respects Loss Or Damage Caused By The Malicious Introduction Of A Machine Code Or Instruction.** | **Forty-eight (48) Hours Waiting Period,** at which time the deductible will be **$250,000** |
| Dependent Locations Not Specifically Named | **Twenty-four (24) Hours Waiting Period,** at which time the deductible will be **$250,000** |
| Gross Earnings - 7200 Centennial Blvd. Nashville Tn | **Forty-eight (48) Hours Waiting Period,** at which time the deductible will be **$250,000** |

## SECTION B - PROPERTY DAMAGE COVERAGE PART

**I. COVERED PROPERTY**

Except as excluded elsewhere in this policy, this policy insures the following property at an Insured Location or on land within 1,000 feet thereof, to the extent of the interest of the Insured in such property.

**A.** If this policy covers Real Property, it covers:

    **1.** All buildings and structures of every description at an Insured Location as described in the Declarations of this policy which are owned or used by the Insured, including new buildings and additions under construction at an Insured Location in which the Insured has an insurable interest;

    **2.** The Insured's liability for contractors and subcontractors interest in buildings or structures covered by this policy while under construction, alteration, or repair, or when completed at an Insured Location or within 1,000 feet thereof, including:

        **a.** All fixtures, equipment, machinery or apparatus, which will constitute a permanent part of such buildings or structures; and

        **b.** Materials or supplies intended for use in the construction, alteration, or repair of such buildings or structures.

    Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any Time Element Coverage provided in this policy.

**B.** If this policy covers Personal Property, it covers:

    **1.** All personal property owned by the Insured and used in the Insured's business while at the Insured Location(s) described in the Declarations of this policy or within 1,000 feet thereof;

    **2.** The Insured's interest in and liability for personal property of others while in the Insured's care, custody or control while at the Insured Location(s) described in the Declarations of this policy or within 1,000 feet thereof;

    **3.** Personal property (other than motor vehicles) of officers and employees of the Insured;

    **4.** The Insured's use interest as a tenant in improvements and betterments to buildings or structures. In the event of physical loss or damage, we agree to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary;

    **5.** "Mobile equipment" owned by the Insured, or owned by others if such non-owned equipment is in the Insured's care, custody or control. "Mobile equipment" does not include vehicles and other self-propelled motorized machines licensed for road use.

## II. PROPERTY NOT COVERED

A. This policy does not insure against loss or damage to:

1. Contractors' and subcontractors' machinery, tools and equipment used in erection of covered property unless the total capital value of such property is directly and specifically charged to the job, or unless specifically endorsed hereon as being insured;

2. Currency, deeds, money, notes, securities, precious metal in bullion form;

3. Land, growing crops, timber;

4. Outdoor trees, lawns, plants, shrubs (other than as "stock"), except as provided under Trees, Shrubs, and Plants in the Additional Coverages section of this policy;

5. Animals, furs, jewelry, precious stones, dams, dikes, unless caused by a "specified peril";

6. Underground mines, mine shafts, caverns or any property contained therein;

7. Property while in transit, except as provided in the Additional Coverage section of this policy.

8. Docks, piers, wharves or other property located thereon when caused by action of water or ice or impact of watercraft, except as provided in the Additional Coverage section of this policy.

9. Property sold by the Insured under conditional sale, trust agreement, installment or other deferred payment plan after delivery to customers, except as provided under Deferred Payments in the Additional Coverage section of this policy;

10. Offshore property, except that structures and their contents extending from land or shore, floating docks permanently moored to dock, river bank or shore are not to be considered as offshore.

    In the Gulf of Mexico off Texas and Louisiana, "offshore" is to be seaward of the inland edge of the Lease Block of the Plane Coordinate System, as defined on United States Department of Land Management Leasing Maps.

11. Aircraft or watercraft and contents thereof, except when unfueled and manufactured by the Insured;

12. Automobiles; motor trucks, tractors, trailers, and similar conveyances designed and used for over-the-road transportation of people or cargo;

    However, we do cover:

    a. "Mobile equipment" described under I. Covered Property, B.5. of this coverage part; and

    b. Automobiles and vehicles that you manufacture, process, or warehouse. However, we do not cover automobiles or vehicles held for sale, lease, loan, or rent; and

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 50 of 174 PageID #: 54

c. Automobiles, motor trucks, tractors, trailers, and similar conveyances designed and used for the over-the-road transportation of people or cargo while at insured location(s) described in the Declarations of this policy or within 1,000 feet thereof, as provided under the Additional Coverage section of this policy.

13. Air supported structures and contents thereof;

14. a. The Insured's product when loss is caused by errors in design, poor workmanship, or use of faulty materials, in the development, processing, testing or manufacturing of the Insured's product;

b. "Stock" or materials when loss is caused by manufacturing or processing operations which result in damage to such property while being processed, manufactured, tested or otherwise being worked upon;

c. Media for, or programming records pertaining to electronic and electromechanical data processing or electronically controlled equipment, including the data thereon when loss is caused by error or omission in machine programming or instructions to the machine;

15. Water, except water which is normally contained within any type of tank, piping system or other processing equipment;

16. "Electronic data", programs and software, except when they are "stock-in-process", finished goods manufactured by the Insured, raw materials, supplies or other "merchandise" not manufactured by the Insured, or as otherwise provided under Electronic Data in the Additional Coverage section of this policy;

17. Valuable papers and records, except as provided under Valuable Papers and Records in the Additional Coverage section of this policy;

18. Overhead transmission and distribution lines, including wire, cables, poles, pylons, standards, towers, or other supporting structures which may be attendant to the transmission and/or distribution of electrical power, telephone communications, and/or internet transmissions, except as provided under Off Premises Service Interruption in the Additional Coverage section of this policy. This exclusion shall not apply to such property which is located on the insured's premises or within 1,000 feet thereof.

III. **ADDITIONAL COVERAGES**

A. This policy includes the following Additional Coverages for physical loss or damage insured by this policy. These Additional Coverages may indicate an applicable limit of insurance. This limit may also be shown in the Declarations. If a different limit is indicated in the Declarations, that limit will apply instead of the limit shown below. However, if no limit is indicated in the coverage clause or Declarations for an Additional Coverage, coverage is provided up to the full limit for the applicable covered property.

B. Unless otherwise indicated, the Additional Coverages provided below are subject to the applicable limit of liability; will not increase the policy limit of liability; and are subject to the policy provisions including applicable exclusions and deductibles, all as shown in this section and elsewhere in this policy.

1. **Accounts Receivable**

   We will pay up for the actual loss sustained resulting from direct physical loss of or damage to the Insured's accounts receivable records, as respects the following:

   a.  All sums due the Insured from customers, provided the Insured is unable to collect these sums as a result of direct physical loss or damage to accounts receivable records;

   b.  Interest charges on any loan obtained by the Insured to offset impaired collections resulting from direct physical loss of or damage to accounts receivable records but only for such period of time reasonable and necessary for the Insured to resume normal collections;

   c.  Necessary collection expense in excess of normal collection cost due to direct physical loss of or damage to accounts receivable records; and

   d.  Other expenses, when reasonably incurred by the Insured in re-establishing accounts receivable records following direct physical loss of or damage to accounts receivable records.

   The most we will pay is **$5,000,000** or the amount stated in the Declarations.

   In the event of loss to accounts receivable records, the Insured will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding accounts receivable.

   When there is proof that direct physical loss of accounts receivable records has occurred and the Insured cannot accurately establish the total amount of accounts receivable outstanding as of the date of loss, the amount payable shall be computed as follows:

   a.  The monthly average of accounts receivable during the last available twelve (12) months; the reasonable and necessary collection expenses in excess of normal collection costs due to direct physical loss of or damage to accounts receivable records; and the reasonable and necessary expenses incurred in re-establishing accounts receivable records following direct physical loss or damage, shall be adjusted in accordance with the percentage increase or decrease in the twelve (12) months average of monthly gross revenues which may have occurred in the interim;

   b.  The monthly amount of accounts receivable as established above shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred. Consideration will also be given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

   We shall deduct from the total amounts of account receivable, the amount of accounts evidenced by records not lost or damaged or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which the Insured normally would have been unable to collect, and for the normal collection costs incurred due to accounts receivable.

   The settlement of loss will be made within ninety (90) days from the date of physical loss or damage. All amounts recovered by the Insured on outstanding accounts receivable on the date of loss will belong and be paid to us up to the amount of loss paid by us. All recoveries in excess of the amount we have paid belong to the Insured.

   The following exclusions apply in addition to the Exclusions section of this policy.

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 52 of 174 PageID #: 56

This coverage does not insure against shortage resulting from:

    **a.**    Bookkeeping, accounting or billing errors or omissions; or

    **b.**    Alteration, falsification, manipulation; or

    **c.**    Concealment, destruction or disposal.

**2.**    **Automobiles**

We cover direct physical loss of or damage to automobiles, motor trucks, tractors, trailers, and similar conveyances designed and used for over-the-road transportation of people or cargo caused by a "covered cause of loss" at the Insured Location(s) described in the Declarations of this policy or within 1,000 feet thereof.

The most we will pay under this Additional Coverage in any occurrence is **$100,000** occurrence, or the amount stated in the declarations.

**3.**    **Brands And Labels**

If branded or labeled property insured by this policy is physically damaged and we elect to take all or any part of that property, we will pay expenses you may incur to:

    **a.**    Stamp "salvage" on the property or its containers; or

    **b.**    Remove or obliterate the brands or labels,

if doing so will not damage the property. In either event, you must re-label such property or its containers to be in compliance with any applicable law.

The most we will pay for these costs is **$1,000,000** or the amount stated in the Declarations.

**4.**    **Collapse**

We will pay for loss caused by direct physical loss resulting from collapse as described in below:

    **a.**    Collapse of a building or structure, any part of a building or structure, or personal property inside a building or structure, if the collapse is caused by one or more of the following:

        **(1)**    Fire;

        **(2)**    Lightning;

        **(3)**    Explosion;

        **(4)**    Falling objects;

        **(5)**    Hidden decay not known to you prior to the collapse;

        **(6)**    Hidden insect or vermin damage not known to you prior to the collapse;

        **(7)**    Weight of people or personal property;

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 53 of 174 PageID #: 57

(8)    Weight of precipitation that collects on a roof; or

(9)    By use of defective material or methods in construction, remodeling, or renovation if the collapse occurs during the course of the construction, remodeling, or renovation.

b.    Collapse means an abrupt falling down or caving in of a building or any part of a building. Collapse does not include settling, cracking, shrinkage, bulging, or expansion.

c.    A building or part of a building that is still standing but in danger of collapse, or the structural integrity of which is otherwise impaired, is not considered to be in a state of collapse.

5.    **Consequential Reduction in Value**

We will pay for the reduction in value of insured merchandise that is a part of pairs, sets, or components, directly resulting from physical loss or damage insured by this policy to other insured parts of pairs, sets or components of such merchandise.

In case of loss or damage to any part of a pair or set, the Company will:

a.    Pay the cost of repairing or replacing any part to restore the pair or set to its value before the loss or damage;

b.    Repair or replace any part to restore the pair or set to its value before the loss or damage; or

c.    Pay the difference between the value of the pair or set before and after the loss or damage.

If settlement is based on a constructive total loss, the insured will surrender the undamaged parts of such merchandise to us.

6.    **Debris Removal Expense**

We will pay the necessary and reasonable expenses actually incurred by you to remove debris from an insured Location that remains as a direct result of physical loss or damage insured by this policy.

This Additional Coverage does not cover the expense of removal of:

a.    Any foundation, other than damaged portions which must be removed for repair or rebuilding of any covered building or structure; or

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 54 of 174 PageID #: 58

     **b.**    Any property or part thereof, the removal of which is required by the enforcement of any law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, demolition, occupancy, operation or other use of such property; or

     **c.**    "Pollutants" from land or water, nor for the cost to remove, restore or replace polluted land or water;

     **d.**    Contaminated uninsured property; or

     **e.**    The "contaminant" in or on uninsured property, whether or not the "contamination" results from insured physical loss or damage.

Our liability for loss under this Debris Removal provision, arising out of one occurrence at each Insured Location, shall not exceed:

     **a.**    25% of the combined amount of direct physical damage and Time Element loss payable at the Insured Location where the damage occurs; or

     **b.**    The amount stated in the Declarations,

whichever is greater.

This Debris Removal provision shall not increase any amounts or limits of insurance provided by this policy.

No liability shall exist under this Debris Removal provision unless such expenses are reported to the Company within one hundred eighty (180) days of the date of direct physical loss or damage or the expiration of this policy, whichever shall be earlier.

**7.**    **Decontamination Costs**

If covered property is contaminated as a direct result of physical loss or damage insured by this policy and there is in force at the time of the loss any law or ordinance regulating "contamination" due to the actual, not suspected presence of, "contaminant(s)", then this policy covers, as a direct result of enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such contaminated covered property in a manner to satisfy such law or ordinance. This Additional Coverage applies only to that part of covered property so contaminated due to the actual, not suspected presence of, "contaminant(s)" as a direct result of insured physical loss or damage. This Additional Coverage does not apply to "fungus", wet rot or dry rot.

The most we will pay for these costs is **$50,000** or the amount stated in the Declarations.

We are not liable for the costs required for removing contaminated uninsured property nor the contaminant therein or thereon, whether or not the "contamination" results from an insured event.

The coverage under this policy for Decontamination Costs does not apply to the Additional Coverage Equipment Breakdown Hazardous Substances coverage.

**8. Defense Costs**

We have the option to defend any suit against you alleging physical loss or damage as insured against to personal property of others in your care custody or control while on an Insured Location, to the extent of your liability therefore, even if such suit is groundless, false or fraudulent. We may without prejudice to our rights under the policy make such investigation, negotiation or settlement of any such claim or suit as we deem expedient.

**9. Deferred Payments**

This policy covers direct physical loss or damage caused by a "covered cause of loss" to personal property of the type insurable under this policy, if the personal property is sold by you under a conditional sale or trust agreement or any installment or deferred payment plan, after such property has been delivered to the buyer. Coverage is limited to the unpaid balance for such property.

In the event of loss to property sold under deferred payment plans, you will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding amounts due or to regain possession of the property.

The most we will pay is **$10,000** or the amount stated in the Declarations.

There is no liability under this policy for loss:

**a.** Pertaining to products recalled including, but not limited to, the costs to recall, test or to advertise such recall by the Insured;

**b.** From theft or conversion by the buyer of the property after the buyer has taken possession of such property;

**c.** To the extent the buyer continues payments;

Not within the Territory of this policy.

**10. Docks, Piers, Wharves**

We cover direct physical loss of or damage to docks, piers, wharves, or other property located thereon when caused by action of water or ice or impact of watercraft. The most we will pay under this Additional Coverage in any one occurrence is **$250,000** or the amount stated in the Declarations.

**11. Earth Movement**

We will pay for direct physical loss or damage caused by or resulting from earth movement, but this Additional Coverage applies only when an earth movement limit of insurance is shown in the Declarations section of this policy.

**a.** Earth movement means loss or damage caused by earthquake, landslide, volcanic eruption or any other natural earth movement.

**b.** All earth movement within any one hundred sixty-eight (168) hour period will constitute a single event. The expiration of this policy will not reduce the 168-hour period.

**c.** This Additional Coverage does not insure against loss or damage caused by any of the following regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 56 of 174 PageID #: 60

        **(1)**    Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, spray from any of these all whether or not driven by wind (including storm surge), water that backs up or overflows or is otherwise discharged from a sewer, drain, sump pump or related equipment;

        **(2)**    Mine subsidence (meaning subsidence of a man-made mine), mudflow or mudslide even if caused by earth movement;

        **(3)**    Any earth movement occurring before the effective date and time of this policy;

        **(4)**    Earth movement at any Dependent Property Location, Miscellaneous Unnamed Location, Miscellaneous Non-owned Locations or Newly Acquired Location covered under the provisions of this policy.

If a cause of loss (such as fire) is covered by means of an exception to the Earth Movement Exclusion in this policy, we will also pay for the loss or damage caused by that other covered cause of loss. But the most we will pay, for the total of all loss or damage caused by earth movement and fire, is the limit of insurance applicable to such other covered cause of loss. We will not pay the sum of the two limits.

**12.**    **Electronic Data - Property Damage**

We will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted as a result of physical loss or damage insured by this policy. Insured physical loss or damage includes physical loss or damage caused by a "computer virus" or the malicious introduction of a harmful code or similar instruction into or enacted on a computer system or a network to which it is connected, designed to damage or destroy any part of the system or disrupts its normal operation.

To the extent that "electronic data" is not replaced or restored, the loss will be valued at the lesser of the value of the data or the cost of replacement of the "media" on which the "electronic data" was stored, with blank media of substantially identical type.

    **a.**    This Additional Coverage also covers the cost of the following reasonable and necessary actions taken by the insured:

        **(1)**    To temporarily protect and preserve insured "electronic data" programs or software;

        **(2)**    To expedite the permanent repair or replacement of such damaged property,

        provided such actions are taken due to actual insured physical loss or damage to "electronic data".

    **b.**    This Additional Coverage also covers the reasonable and necessary costs incurred by the insured to temporarily protect or preserve insured "electronic data" against immediately impending insured physical loss or damage to "electronic data". In the event that the physical loss or damage does not occur, the costs covered under this item b. will be subject to the deductible that would have applied if the physical loss or damage had occurred.

    **c.**    Costs recoverable under this Additional Coverage are excluded from coverage elsewhere in this policy.

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 57 of 174 PageID #: 61

**d.** This Additional Coverage excludes loss or damage to data, programs or software, when they are "stock-in-process", finished goods manufactured by the Insured, raw materials, supplies or other merchandise not manufactured by the Insured.

**e.** The exclusions in Section IV. Exclusions, of this policy, do not apply to "electronic data", except for A.1., A.2., A.3., A.4., A.5., A.7., B.6.a., B.6.b., and B.7. and B.9. In addition, as respects "electronic data", the following exclusions apply:

This policy does not insure:

**(1)** Errors or omissions in processing, or copying; all unless physical damage not excluded by this policy results, in which event, only that resulting damage is insured;

**(2)** Loss or damage to data, programs or software from errors or omissions in programming or machine instructions; all unless physical damage not excluded by this policy results, in which event, only that resulting damage is insured;

**(3)** Deterioration, inherent vice, vermin or wear and tear; all unless physical loss or damage not excluded by this policy results, in which event, only that resulting damage is insured;

**(4)** Loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system;

**(5)** Theft from your data records of confidential information without any alteration or other physical loss or damage to the records or programs.

The most we will pay under this Additional Coverage – Electronic Data –Property Damage is **$10,000** or the amount shown in the Declarations, for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of Insured Locations or computer systems involved.  If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after that policy year.  With respect to an occurrence, which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**13.**   **Equipment Breakdown**

This Additional Coverage applies only when an Equipment Breakdown limit of insurance is shown in the Declarations section of this policy.

If coverage is applicable, "Covered Cause of Loss" includes Equipment Breakdown as described and limited below.

**a.** We will pay for direct physical damage to covered property that is the direct result of an "accident".

**b.** Unless otherwise shown in the Declarations, the following coverages also apply to the direct result of an "accident".  These coverages do not provide additional amounts of insurance.

**(1)**   **Hazardous Substances**

We will pay for the additional cost to repair or replace covered property because of contamination by a "hazardous substance". This includes the additional expenses to clean up or dispose of such property. This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in **b. (2) (a) (ii)** below. As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

The most we will pay for loss, damage or expense under this coverage, including actual loss of Time Element you sustain and necessary Extra Expense you incur, if shown as covered, is **$25,000**, unless otherwise shown in the Declarations.

**(2)** **Perishable Goods**

    **(a)** We will pay:

        **(i)** For physical damage to "perishable goods" due to "spoilage";

        **(ii)** For physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;

        **(iii)** Any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

    **(b)** If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident," less discounts and expenses you otherwise would have had. Otherwise, our payment will be determined in accordance with the Valuation condition.

The most we will pay for loss, damage or expense under this coverage is **$25,000** unless otherwise shown in the Declarations.

**(3)** **Service Interruption**

    **(a)** Any insurance provided for Time Element or Perishable Goods is extended to apply to your loss, damage or expense caused by the interruption of utility services. The interruption must result from an "accident" to equipment, that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

    **(b)** Unless otherwise shown in the Declarations, Service Interruption coverage will not apply unless the failure or disruption of service exceeds **24 hours** immediately following the "accident".

    **(c)** The most we will pay in any one "accident" for loss, damage or expense under this coverage is the applicable limit for Time Element or Perishable Goods, except that if a limit is shown in the Declarations for

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 59 of 174 PageID #: 63

Service Interruption, that limit will apply to Time Element loss under this coverage.

14. **Errors And Omissions**

We will pay for direct physical loss of or damage to property which is not payable under this policy because of an unintentional omission or error at policy inception:

a. In the description of where covered property is physically located; or

b. To include any location:

    **(1)** Owned, leased or rented by you on the effective date of this policy; or

    **(2)** Purchased, leased or rented by you during the term of this policy.

This policy covers such physical loss or damage only to the extent this policy would have provided coverage had the error or unintentional omission not been made.

We will not pay under this Additional Coverage for loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this policy, contributing concurrently or in any other sequence to the loss:

a. Earth Movement; or

b. Flood.

It is a condition of this coverage that such errors or unintentional omissions shall be reported and corrected when discovered. The policy premium will be adjusted accordingly to reflect the date the premises should have been added had no error or omission occurred.

15. **Exhibition, Exposition, Fair Or Trade Show**

We will pay for loss or damage to your personal property situated temporarily on the premises of any exhibition, exposition, fair or trade show within the policy territory. The most we will pay in any one occurrence for loss to property on exhibition is **$300,000** or the amount stated in the Declarations.

16. **Expediting Expenses**

We will pay the reasonable extra costs, not to exceed **$5,000,000** or the amount stated in the declarations, for temporary repair of damaged property and for expediting the permanent repairs or permanent replacement of such damaged property, including overtime wages and the extra cost of express or other rapid means of transportation. The loss or damage must be caused by a "covered cause of loss" to Covered Property. Expediting expenses shall not include the costs incurred by the Insured for the permanent repair or replacement of damaged property.

This Additional Coverage does not cover costs recoverable elsewhere in this policy.

17. **Fine Arts**

We will pay for direct physical loss or damage caused by a "covered cause of loss" to your "Fine Arts" at an Insured Location.

a. We also cover your "Fine Arts" while:

       **(1)**    Temporarily on display or exhibit away from an Insured Location; or

       **(2)**    In transit between an Insured Location and a location where the "Fine Arts" will be temporarily on display or exhibit;

      If such fine arts property is not covered by other insurance.

  **b.**    In addition to the exclusions in the EXCLUSIONS section of this policy, as respects "Fine Arts", this Additional Coverage does not insure against loss or damage caused by:

       **(1)**    Breakage, marring, or scratching of covered fine arts property; or

       **(2)**    Any repairing, restoration, or retouching process performed on any "Fine Arts".

The most we will pay for loss to "Fine Arts" in anyone occurrence is **$2,000,000** or the amount stated in the Declarations.

**18.**    **Fire Department Service Charges**

We will pay for the reasonable additional expenses, resulting from costs of fire extinguishing materials expended, incurred by the Insured when the Fire Department Is called to save or protect covered property because of fire or explosion on or exposing an Insured Location. The Fire Department Service Charges are those:

  **a.**    Assumed by contract or agreement prior to loss or damage; or

  **b.**    Required by local ordinance.

**19.**    **Flood**

We will pay for direct physical loss or damage caused by or resulting from flood, but this Additional Coverage applies only when a flood limit of insurance is shown in the Declarations section of this policy.

  **a.**    The term flood means a general and temporary condition of partial or complete inundation of normally dry land areas due to:

       **(1)**    Flood, waves (including tidal wave and tsunami), tides, tidal water, overflow of streams or other bodies of water, or spray from any the foregoing, all whether driven by wind or not (including storm surge);

       **(2)**    The overflow of inland or tidal waters;

       **(3)**    The unusual or rapid accumulation or runoff of surface waters from any source; or

       **(4)**    Backup of water from a sewer, drain or sump pump caused in whole or part by flood;

       **(5)**    Mudslides or mudflows which are caused by flooding as defined in above.

All flooding in a continuous or protracted event will constitute a single flood.

**b.** This Additional Coverage does not insure against loss or damage caused by the following regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

Flood at any Dependent Property Location, Miscellaneous Unnamed Location, Miscellaneous Non-owned Location or Newly Acquired Location covered under the provisions of this policy.

**c.** If a cause of loss (such as fire) is covered by means of an exception to the Flood Exclusion, we will also pay for the loss or damage caused by that other "covered cause of loss". But the most we will pay, for the total of all loss or damage caused by flood and fire, is the limit of insurance applicable to such other covered cause of loss. We will not pay the sum of the two limits.

**20. Limited Coverage For "Fungus", Wet Rot Or Dry Rot**

We will pay up to **$15,000** for loss or damage to covered property caused by "fungus", wet or dry rot.

**a.** As used in this Limited Coverage, the term loss or damage means:

**(1)** Direct physical loss or damage to covered property caused by "fungus", wet or dry rot including the cost of removal of the "fungus", wet or dry rot;

**(2)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot; and

**(3)** The cost of testing performed after removal, repair, replacement, or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot are present.

**b.** The following, (1) or (2), applies only if Gross Earnings or Gross Profits and/or Extra Expense Coverage applies to the Insured Location(s) and only if the suspension of operations satisfies all terms and conditions of the Time Element Coverage section:

**(1)** If the loss which resulted in "fungus", wet or dry rot does not in itself necessitate a suspension of operations, but such suspension is necessary due to loss or damage to property caused by "fungus", wet or dry rot, then our payment under Gross Earnings or Gross Profits and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than thirty (30) days. The days need not be consecutive;

**(2)** If a covered suspension of operations was caused by loss or damage other than "fungus", wet or dry rot but remediation of "fungus", wet or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to thirty (30) days. The days need not be consecutive.

**c.** The "Fungus", Wet Rot or Dry Rot Limited Coverage as provided in this Additional Coverage only applies when the "fungus", wet or dry rot is the result of one or more of the following causes of loss that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

        **(1)**    A "specified cause of loss" other than fire or lighting or "accident", if Equipment Breakdown Coverage applies; or

        **(2)**    Flood, if Flood Coverage applies to the affected Insured Location.

    **d.**    The coverage described in this Additional Coverage – Limited Coverage For "Fungus", Wet Rot or Dry Rot is limited to **$15,000**. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of the causes of loss listed in c.(1) and c.(2) above which take place in a twelve (12) month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss, which results in "fungus", wet or dry rot, we will not pay more than a total of **$15,000** even if the "fungus", wet or dry rot continues to be present or active, or recurs, after the expiration of the term of this policy.

**21.**    **Miscellaneous Non-owned Locations:**

This policy covers direct physical loss or damage to the insured's Real and/or Personal Property:

    **a.**    Of the type covered in this policy;

    **b.**    At a Location(s) that is not specified in the Schedule of Locations and that is not owned, leased or occupied by the Insured; and

    **c.**    Within the policy Territory;

Subject to the following:

    **a.**    No coverage is provided under this provision on property while in transit or waterborne, nor while on the premises of any exhibition, exposition, fair or trade show;

    **b.**    The Additional Coverage excludes property insured under any other coverage in this policy; and

    **c.**    This Additional Coverage does not insure against loss or damage caused by or resulting from the following regardless any other cause or event that contributes concurrently or in any sequence to the loss:

        **(1)**    Earth Movement; or

        **(2)**    Flood.

Our liability for loss or damage under this Miscellaneous Non-owned Location provision arising out of any one occurrence shall not exceed **$250,000**.

**22.**    **Miscellaneous Unnamed Locations**

This policy covers direct loss or damage to the insured's Real and/or Personal Property:

    **a.**    Of the type covered in this policy;

    **b.**    At Locations that are not specified in the Schedule of Locations; and

    **c.**    Within the policy Territory;

Subject to the following:

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 63 of 174 PageID #: 67

a. No coverage is provided under this provision on property while in transit or waterborne, nor while on the premises of any exhibition, exposition, fair or trade show;

b. This Additional Coverage excludes property insured under any other coverage in this policy; and

c. This Additional Coverage does not insure against loss or damage caused by or resulting from the following regardless any other cause or event that contributes concurrently or in any sequence to the loss:

(1) Earth Movement; or

(2) Flood.

Our liability for loss or damage under this Miscellaneous Unnamed Location provision arising out of one occurrence shall not exceed **$1,000,000,** or the amount stated in the Declarations.

23. **Newly Acquired Property**

This policy is extended to cover property purchased, newly constructed, leased, or rented at locations within the policy territory for occupancy by the Insured, including business personal property while under the care, custody and control of the Insured at any such location, after the inception date of this policy.

Coverage under this Newly Acquired Property provision shall commence when the Insured first acquires an insurable interest at the location, and shall cease at the earliest of:

a. The expiration date of this policy; or

b. When the location is reported to and accepted by us; or

c. When the Time Limit as shown in the Time Limits of Liability section in the Declarations has been reached. The Time Limit begins on the date the Insured first acquires an interest in the Covered Property.

This Newly Acquired Property provision shall not apply to:

a. Property while in transit, waterborne, nor while on the premises of any exhibition, exposition, fair or trade show;

b. Property insured herein or by any other insurance policy;

c. Loss or damage directly or indirectly caused by or resulting from earth movement and/or flood.

Our liability for loss or damage under this Newly Acquired Property provision arising out of one occurrence shall not exceed **$1,000,000,** or the amount stated in the Declarations.

We will charge you additional premium for values reported from the date you acquire the property.

24. **Off-Premises Service Interruption - Property Damage**

This policy covers physical loss of or damage to covered property at an Insured Location when such physical loss or damage results from the interruption of an off premises incoming service consisting of electricity, gas, fuel, steam, water, refrigeration, the lack of outgoing sewerage service, or from the lack of communication services including telephone, radio, microwave, or television services such as communication transmission line, coaxial cables, and microwave radio relays except satellites.

a.  The lack of service must result from direct physical loss or damage of the type insured against under this policy to property at the facilities of the supplier of such service located within this policy's Territory, that immediately prevents in whole or in part the delivery of such usable services;

b.  If the Declarations indicate that overhead transmission lines are excluded, coverage under this Additional Coverage does not include loss to overhead transmission lines that deliver utility service to you.  Overhead transmission lines include, but are not limited to overhead transmission and distribution lines, overhead transformers and similar equipment, and supporting poles and towers;

c.  Exclusions:

"Perishable Stock" Exclusion - Coverage under this Additional Coverage does not include loss of "perishable stock" due to "spoilage".

d.  Additional General Conditions:

(1)  As soon as practicable, the Insured will notify the suppliers of services of any interruption of such services;

(2)  We will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services.

e.  Applicable Limit:

The most we will pay in any one occurrence under this Additional Coverage is **$10,000** or the combined amount stated in the Declarations.

Any coverage under this policy for Off-Premises Service Interruption-Property Damage does not apply to the Additional Coverage Equipment Breakdown Service Interruption coverage.

25.  **Ordinance Or Law - Demolition And Increased Cost Of Construction**

We will pay the following additional costs when there is direct physical damage as insured against to building(s) or structure(s) covered by this policy, and such additional costs are occasioned by the enforcement of any law or ordinance regulating the construction, repair, replacement, use or demolition of building(s) or structure(s) which is in force at the time of loss; or the ordinance or law is promulgated or revised after the loss but prior to commencement of reconstruction or repair and provided that such ordinance or law requires compliance as a condition precedent to obtaining a building permit or certificate of occupancy  and necessitates the following costs:

a.  Cost to demolish and clear the site of undamaged parts of the same building that sustained damage; and

b.  If the covered building is repaired, or rebuilt, the increased cost to repair, rebuild, or reconstruct both the damaged and undamaged portions whether or not those undamaged portions need to be demolished.

The covered building or structure may be repaired or rebuilt at the same premises, or the Insured may elect to rebuild at another premises; however, the most we will pay under this coverage for increased costs is the increased cost of construction at the same premises to comply with the minimum requirements of such law or ordinance.

If the covered building or structure is repaired or replaced, we will pay the lesser of:

a.  The amount you actually spend to demolish and clear the site, plus the actual increased costs expended to repair, rebuild, or construct the property; or

b.  **$5,000,000**, or the amount stated in the Declarations.

This Additional Coverage provision shall not:

a.  Cover any increase of loss associated with the enforcement of any law or ordinance which requires the Insured or others to test for, monitor, cleanup, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "pollutants".

b.  Increase any amounts or limits of insurance provided by this policy.

c.  Cover any loss due to any law or ordinance that the Insured was required to comply with before the loss, and failed to comply with.

**26. Ordinance Or Law - Undamaged Parts Of A Building**

When there is direct physical damage as insured against to building(s) or structure(s) covered by this policy, we will pay for the loss in value of any undamaged portion of the building or structure that is required to be demolished as a result of the enforcement of an ordinance, law or decree that:

a. Requires the demolition of undamaged parts of the same building or structure as a result of such insured physical loss or damage;

b. Regulates the construction or repair of a building or structure, or establishes building, zoning, or land use requirements at the described premises; and

c. Is in force at the time of loss or the ordinance or law is promulgated or revised after the loss but prior to commencement of reconstruction or repair and provided that such ordinance or law requires compliance as a condition precedent to obtaining a building permit or certificate of occupancy or .

When there is loss in value of an undamaged portion of a building to which this coverage applies, the loss payment for that building, including damaged and undamaged potions, will be determined as follows:

a. If the basis of recovery is replacement cost and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

    (1) The amount you would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

    (2) The limit of insurance applicable to the covered building.

b. If replacement cost is not the basis of coverage and/or the property is not repaired or replaced, we will not pay more than the lesser of:

    (1) The actual cash value of the building at the time of loss; or

    (2) The limit of insurance applicable to the covered building.

This Additional Coverage provision shall not cover any increase of loss associated with the enforcement of any law, ordinance, or decree that requires the insured or others to test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

This coverage shall not increase any amounts or limits of insurance provided by this policy.

**27. Pollutant Cleanup And Removal**

We will pay the necessary and reasonable expenses actually incurred by you to cleanup and remove "pollutants" from land or water confined to Insured Locations if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is directly caused by physical loss or damage not otherwise excluded, which occurs during the term of this policy. This coverage does not apply to any expense incurred by an insured to cleanup and remove:

Case 3:24-cv-00695      Document 1-1      Filed 06/05/24      Page 67 of 174 PageID #: 71

**a.** "Pollutants" from land or water at any location covered under the provisions of the Newly Acquired Property Coverage Extension provided in this section; or

**b.** "Pollutants" from land or water at any "Miscellaneous Unnamed Location".

Our liability for loss or damage under this Pollutant Cleanup and Removal provision arising out of one occurrence at each location, or in the aggregate for all such losses in any one policy year at each location, shall not exceed **$1,000,000** or the amount stated in the Declarations.

No liability shall exist under this Pollutant Cleanup and Removal provision unless such expenses are reported to us within one hundred eighty (180) days of the date of direct physical loss or damage, or the expiration of this policy, whichever shall be earlier.

### 28. Professional Fees

This policy covers the actual costs incurred by the Insured, for reasonable fees paid to the Insured's accountants, architects, auditors, engineers, or other professionals, and the cost of using the Insured's employees for producing and certifying any details contained in the Insured's books or documents, or such other proofs, information or evidence required by us resulting from loss or damage payable under this policy for which we have accepted liability.

This Additional Coverage will not include the fees and costs of attorneys, public adjusters, and loss appraisers, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them for the purpose of assisting them, nor the fees and costs of loss consultants who provide consultation on coverage or negotiate claims.

This coverage is subject to the deductible that applies to the loss.

### 29. Protection and Preservation Of Property

In the event of actual or imminent physical loss or damage as insured against, this policy is extended to cover the necessary and reasonable expenses incurred by you in recovering and temporarily safeguarding covered property. The expenses so incurred shall be paid by you and us proportionately to the extent of our respective interest. Our portion of such expenses shall be limited to the extent such expenses reduce loss or damage which would otherwise be payable under this policy. This provision does not increase any amounts of insurance which may be applicable and the deductible provisions shall apply to any expenses so incurred.

### 30. Recharge of Fire Extinguishing Equipment

We will pay up to **$25,000** to cover your incurred expenses to recharge your automatic fire extinguishing equipment or hand held fire extinguishing equipment when the equipment is discharged:

**a.** To fight a fire;

**b.** As a result of a covered peril; or

**c.** As a result of an accidental discharge.

However, we will not pay for your expenses to recharge equipment as a result of a discharge during testing or installation.

If it is less expensive to do so, we will pay your costs to replace your automatic fire extinguishing equipment or hand held fire extinguishing equipment rather than recharge the equipment.

### 31. Rewards

We will reimburse you for rewards you have incurred leading to:

a.  The successful return of undamaged stolen articles of Covered Property to a law enforcement agency; or

b.  The arrest or conviction of any person(s) who have damaged or stolen any of your Covered Property.

The most we will pay in any one occurrence under this Additional Coverage is 25% of the covered loss (prior to the application of any applicable deductible and recovery of undamaged stolen articles) up to a maximum of **$25,000** for the payments of rewards you make.  The reward payments must be documented.  No deductible applies to this Additional Coverage.

### 32. Sales Representative Samples

We will pay for direct physical loss or damage as insured against to:

a.  Samples of your stock in trade (including containers); while  the property is off the premises of an Insured Location and in the custody of your sales representatives and agents; and

b.  Similar business property of others when in the custody of your sales representatives, or agents (exclusively for your benefit), or yourself while acting as a sales representative while the property is off the premises of an Insured Location, or while in transit between an Insured Location and your sales representatives.

The most we will pay in any one occurrence for loss of or damage to samples of your stock in trade is **$50,000**.

### 33. Spoilage

We will pay for direct physical loss of "perishable stock" due to "spoilage" caused by a "covered cause of loss" while at an Insured Location.

Only with respect to this Additional Coverage - Spoilage:

a.  A "covered cause of loss" means:

(1)  Breakdown or Contamination - We cover changes in temperature or humidity resulting from mechanical breakdown or mechanical failure of refrigerating, cooling or humidity control apparatus or equipment, only while such equipment or apparatus is at an Insured Location;

(2)  Refrigerant Contamination - We cover loss of "perishable stock" due to refrigerant contamination from the release of refrigerant, including but not limited to ammonia;

(3)  Power Disruption - We cover changes in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described Insured Location, due to conditions beyond your control.

**b.** Property located on buildings or in the open or in vehicles is considered to be Property Not Covered.

**c.** The following Exclusions are added:

We will not pay for loss or damage caused by or resulting from:

**(1)** The disconnection of any refrigerating, cooling or humidity control system from the source of power.

**(2)** The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

**(3)** The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

**(a)** Lack of fuel; or

**(b)** Governmental order.

**(4)** The inability of a power source at the Insured Location to provide sufficient power due to lack of generating capacity to meet demand.

**(5)** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

**d.** The following condition applies in addition to the General Policy Conditions:

**REFRIGERATION MAINTENANCE AGREEMENTS**

You must maintain a refrigeration maintenance or service agreement. If you voluntarily terminate this agreement and do not notify us, the insurance provided by this Additional Coverage will be automatically suspended at the involved location.

The most we will pay in any one occurrence is **$1,000,000** or the amount stated in the Declarations.

Any coverage under this policy for Spoilage does not apply to the Additional Coverage Equipment Breakdown Perishable Goods coverage.

34. **Temporary Removal Of Property**

When covered property is removed from an Insured Location for the purpose of being repaired or serviced or in order to avoid threatened physical loss or damage of the type insured by this policy, this policy covers such property for up to 365 days after the property is first moved, but does not extend past the date on which this policy expires, subject to a limit of liability of **$100,000**:

**a.** While at the location to which such property has been moved; and

**b.** For physical loss or damage as provided at the Insured Location from which such property was removed.

This provision shall not apply to personal property removed from the Insured Location for normal storage, processing or preparation for sale or delivery; nor to property covered by other insurance.

SHPR 00 100 (0519)                                                                                   Page 32 of 68

35. **Transit Coverage**

This Additional Coverage applies only when a Transit limit of insurance is shown in the Declarations section of this policy. If a Transit limit of insurance is shown in the Declarations:

This policy is extended to cover personal property of the Insured, including the Insured's interest in and the Insured's liability for personal property of others, while in the custody of the Insured, while such property is in due course of transit within and between the United States of America, its territories and possessions, Puerto Rico and Canada, but subject to the limit of liability and deductible amount shown under the Declarations.

This Additional Coverage is also subject to the following:

a. **Additional Property Exclusions** - This Additional Coverage does not insure against loss or damage to:

(1) The conveyance used as the mode of transportation (including any part of equipment thereof) or containers;

(2) Property insured under any marine import or export policy;

(3) Property shipped by mail or parcel post from the time it passes into the custody of the Postal Service;

(4) Property while waterborne except while on the navigable inland waters of the United States, Puerto Rico or Canada;

(5) Samples of merchandise while in the care, custody or control of the named Insured's salesmen or sales representatives;

(6) Property of others, including the Insured's legal liability for it, hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier.

b. **Additional Exclusions** - This Additional Coverage does not insure against loss:

(1) With respect to vehicles operated by the named Insured, by theft from a vehicle while unattended unless the portion of the vehicle containing the insured property is of entirely closed construction and, at the time of loss, the doors of which shall have been securely locked and the windows of which shall have been firmly closed, and the loss is a direct result of forcible entry of which there shall be visible evidence;

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 71 of 174 PageID #: 75

(2) Due to any fraudulent, dishonest or criminal act or omission by the named Insured or a partner of the named Insured; or by theft by any employee of the named Insured, while working or otherwise, or by any person to whom the property is entrusted, but this exclusion does not apply to property in the custody of a carrier for hire;

(3) Resulting from interruption of business, delay, loss of market or use, or indirect or consequential loss of any kind;

(4) Caused directly or indirectly by seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

c.  **Additional Conditions**

(1) Benefit to Bailee - This insurance shall not inure directly or indirectly to the benefit of any carrier or other bailee.

(2) As respects this Additional Coverage, all subrogation provisions of this policy are superseded by the following:

(a) Impairment Of Recovery Rights - Any act or agreement by the named Insured before or after loss whereby any right of the named Insured to recover in whole or in part for loss to property against any carrier for hire, bailee, or other party liable there for, is released, impaired or lost, shall render the insurance null and void, but the Company's right to retain or recover the premium shall not be affected. The named Insured, however, may, without prejudice to this insurance, accept the ordinary limited liability form receipts or bills of lading issued by carriers for hire. The Company is not liable for any loss, which, without the written consent of the Company, has been settled or compromised by the named Insured;

(b) Right To Institute Legal Proceedings In Name Of Insured - Upon payment of any loss or advancement or loan of money concerning the same, the Insured will, at the request and expense of the Company and through such counsel as the Company may designate, make claim upon and institute legal proceedings against any carrier, bailee or other parties believed to be liable for such loss, and will use all proper and reasonable means to recover the same.

(3) General Average and Salvage - This Additional Coverage covers general average and salvage charges on shipments covered while waterborne.

(4) Attachment of Liability - Coverage attaches from the time the property leaves the initial point of shipment until it is delivered at destination. This insurance covers only such shipments, the transportation of which begins within the term of this policy, even though said transportation is not completed within such time and loss or damage may occur after the end of such time.

(5) Export and Import Shipments - Coverage provided by this Additional Coverage shall apply to export shipments only until "on board" bills of lading are issued or coverage under ocean marine policy attaches. This insurance shall also cover import shipments, but only after coverage on such shipments under ocean marine policies has ceased, or, if not insured under ocean marine policies, after discharge from overseas vessel.

      **(6)**    F.O.B. Shipments – Coverage shall apply to the Insured's contingent interest in shipments of property sold F.O.B. (free on board) point of shipment or otherwise; provided that any loss recoverable in this coverage to such property is not collectible from any other insurance.

      **(7)**    Fraudulent Bills of Lading – This Additional Coverage shall also apply to loss of merchandise occasioned by the unintentional acceptance of fraudulent bills of lading, shipping or messenger receipts.

Section B, IV. Exclusions A.2.and A.3.of this policy are deleted with respect only to property in transit.

**36.**    **Trees, Shrubs, and Plants**

We cover direct physical loss (and debris removal expenses) to outdoor trees, shrubs, plants and lawns caused by a "covered cause of loss" at an Insured Location.

The most we will pay for loss of or damage to trees, shrubs, plants, and lawns in any one occurrence is **$100,000** or the amount stated in the Declarations.

Coverage under this Additional Coverage does not apply to property held for sale by you.

**37.**    **Valuable Papers and Records**

We will pay for direct physical loss or damage to Valuable Papers and Records that are your property or property of others in your care, custody or control while at an Insured Location.

We will pay:

**a.**    Your reasonable and necessary costs to research, replace or restore the lost information on Valuable Papers and Records for which duplicates do not exist; and

**b.**    The cost of blank materials for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records.

The most we will pay to research, replace or restore the lost information is **$25,000** per occurrence or the amount shown in the declarations.

Valuable Papers and Records mean written, printed or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, all of which must be of value to you.

But Valuable Papers and Records does not mean money or securities, converted data, programs or instructions used in your data processing operations, including the materials on which the data is recorded.

This Additional Coverage excludes loss or damage to property held as samples, or for sale, or for delivery after sale if such property cannot be replaced with other of like kind and quality, unless specifically declared to the Company.

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 73 of 174 PageID #: 77

**38.    Voluntary Parting**

We will pay for voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

The most we will pay under this Additional Coverage is **$100,000** in any one occurrence.

## IV.    EXCLUSIONS

A.    This policy excludes loss or damage directly or indirectly caused by or resulting from any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

1.    **Ordinance Or Law And Interference** - This policy does not insure against any loss or increased cost caused by:

   a.    Enforcement of any code, ordinance, or law regulating the use, construction, or repair of any building or structure; or requiring the demolition of any building or structure including the cost of removing debris, except as provided under Ordinance or Law and Decontamination in the Additional Coverages section of this policy.

   b.    Interference at an Insured Location by strikers or other persons, with rebuilding, repairing, or replacing property, or with the resumption or continuation of business.

2.    **Earth Movement** - This policy does not insure against loss or damage caused by any earth movement (other than sinkhole collapse) or caused by eruption, explosion, or effusion of a volcano, except as provided under Earth Movement in the Additional Coverages section of this policy.  Earth movement includes, but is not limited to: earthquake; landslide; mine subsidence; or sinking, rising, or shifting of earth.

   This exclusion does not apply to loss or damage from resulting fire, explosion, or volcanic action; however, we shall be liable only for the ensuing direct damage from the fire, explosion, or volcanic action.

   Volcanic action means airborne volcanic blast or airborne shock waves ash, dust, or particulate matter; or lava flow.  It does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

   This exclusion does not apply to any loss or damage covered under the Additional Earth Movement Coverage section of this policy.

3.    **Water** - This policy does not insure against loss or damage caused by:

   a.    Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not (including storm surge);

   b.    Mudslide or mudflow; or

   c.    Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

   d.    Waterborne material carried or otherwise moved by any of the water referred to in Paragraph a., b., c., or d. ;

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 74 of 174 PageID #: 78

except as provided under the Flood Additional Coverages section of this policy.

If any of the above, in Paragraphs 3.a. through 3.d. results in fire, explosion, or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion, or sprinkler leakage.

4.  **Nuclear Hazard** - This policy does not insure against loss or damage caused by or resulting from nuclear reaction or nuclear radiation, or radioactive contamination.

    However:

    a.  If physical damage by fire or sprinkler leakage results, then only that resulting damage is insured; but not including any loss or damage due to nuclear reaction, radiation or radioactive contamination; but

    b.  This policy does insure physical damage directly caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the Insured Location, provided that on the date of loss, there is neither a nuclear reactor nor any new or used nuclear fuel on the Insured Location.

5.  **War And Military Action** – This policy does not insure against loss or damage caused directly or indirectly by the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    a.  War, including undeclared or civil war; or

    b.  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority, using military personnel or other agents; or

    c.  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

6.  **Governmental Action** – This policy does not insure against loss or damage caused by seizure or destruction of property by order of governmental authority.

    However, we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

7.  **Off Premises Utility Services** – This policy does not insure against loss or damage caused by the failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises, except as provided in the Off-Premises Service Interruption clauses in the Property Damage and Time Element sections of this policy.  Failure includes lack of sufficient capacity and reduction in supply.

    However, if the failure of power or other utility service results in physical damage not otherwise excluded by this policy to property situated at an Insured Location, then we shall be liable for only such resulting physical damage.

8. **"Fungus", Wet Rot, Dry Rot** – This policy does not insure against loss or damage caused by the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot.

   But if "fungus", wet or dry rot results in a "specified cause of loss" or "accident", if Equipment Breakdown Coverage applies, we will pay for the loss or damage caused by that "specified cause of loss" or "accident".

   This exclusion does not apply:

   a.  When "fungus", wet or dry rot results from fire or lightning; or

   b.  To the extent that coverage is provided under Limited Coverage For "Fungus", Wet Rot Or Dry Rot in the Additional Coverages section of this policy, with respect to loss or damage by a cause of loss other than fire or lightning.

9. **Loss Due To Virus Or Bacteria** - This policy does not insure against loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease; however, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot, dry rot. Such loss or damage is addressed in a separate exclusion in this policy.

   This exclusion applies to all coverage under all forms and endorsements that comprise this policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover gross earnings, extra expense or action of civil authority.

   With respect to any loss or damage subject to this exclusion, such exclusion supersedes any exclusion relating to "pollutants".

10. **Absolute Asbestos** - This policy does not insure against loss or damage caused by, resulting from, in any way related to or caused by exposure to asbestos.

B.  This policy will not pay for loss or damage caused by or resulting from any of the following unless specifically stated elsewhere in this policy:

   1.  **Electrical Currents** - Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires. But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

      This exclusion does not apply:

      a.  To "computers"; or

      b.  To the extent that coverage is provided in the Equipment Breakdown or Spoilage Additional Coverages.

   2.  **Mechanical Breakdown** - Mechanical or machinery breakdown, including rupture or bursting caused by centrifugal force and the rupture, bursting or operation of pressure relief devices.

      This exclusion does not apply:

      a.  To "computers"; or

      b.  To the extent that coverage is provided in the Equipment Breakdown or Spoilage Additional Coverages.

3. **Steam Explosion** - Explosion of steam boilers, steam pipes, steam engines, or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   This exclusion does not apply to the extent that coverage is provided in the Additional Coverage Equipment Breakdown.

4. **Consequential Loss** - Delay, loss of use, or loss of market.

5. **Other Types Of Losses** - This policy does not insure against the following types of loss or damage:

   a. Indirect or remote loss or damage;

   b. Interruption of business, unless otherwise provided hereon;

   c. Wear and tear;

   d. Rust, corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

   e. Accumulated effects of smog, smoke, vapor, gas, liquid and dust;

   f. Settling, cracking, shrinking, bulging or expansion of foundations, floors, pavements, walls, ceilings, or roofs;

   g. Nesting or infestation, or discharge or release of waste products or secretions by insects, birds, rodents or other animals;

   h. To business personal property or "perishable stock" caused by the following causes of loss:

      (1) Dampness or dryness of atmosphere;

      (2) Changes in or extremes of temperatures;

      except as provided under the Off- Premises Service Interruption or Spoilage Additional Coverages;

   i. Marring or scratching to business personal property; or

   j. To the interior portion of buildings under construction from rain, sleet, or snow, whether or not driven by wind, when the installation of the roof, walls and windows of such buildings has not been completed.

6. **Certain Computer-Related Losses** - We will not pay for the failure, malfunction or inadequacy of:

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 77 of 174 PageID #: 81

a.    Any of the following, whether belonging to any Insured or to others:

   (1)    "Computer" hardware, including microprocessors;

   (2)    "Computer" application software;

   (3)    "Computer" operating systems and related software;

   (4)    "Computer" networks;

   (5)    Microprocessors ("computer" chips) not part of any "computer" system; or

   (6)    Any other computerized or electronic equipment or components; or

b.    Any other products, and any services, data or functions, that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph 6.a. above;

due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times.  An example is the inability of "computer" software to recognize the year 2000.

We will not pay for repair, replacement or modification of any items in this exclusion to correct any deficiencies or change any features.

7.    **Water Seepage Or Leakage** - We will not pay for continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

8.    **Dishonesty** - We will not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by:

a.    You;

b.    Your partners, members, officers, managers, employees including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

   (1)    Acting alone or in collusions with others; or

   (2)    Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees), but theft by employees (including leased employees) is not covered.

9.    **Voluntary Parting** - We will not pay for voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense, except as provided in the Voluntary Parting Additional Coverage section of this policy.

10.    **Pollution** - This policy does not insure against loss or damage due to the  discharge, dispersal, seepage, migration, release or escape of "pollutants" except as provided in the Additional Coverage section of this policy, unless the discharge, dispersal, seepage, migration, release or escape is directly caused by physical loss or damage not otherwise excluded.

11. **Collapse** - This policy does not insure against loss or damage caused by collapse, except as provided in the Collapse Additional Coverage section of this policy. But if collapse results in a "covered cause of loss" at an insured Location, we will pay for the loss or damage caused by that covered cause of loss.

12. **Missing Property** - This policy does not insure against missing property when the only proof of loss is unexplained, or mysterious disappearance or shortage discovered on taking inventory, or other instance where there is no physical evidence to show what happened to the property.

C. We will not pay for loss or damage caused by or resulting from the following unless it results from other direct physical loss or damage not excluded by this policy:

1. **"Contamination"** - We will not pay for any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the actual not suspected presence of contaminants directly results from other physical damage not excluded by this policy, then only physical damage caused by such contamination may be insured.

   This exclusion does not apply to radioactive contamination which is excluded elsewhere in this policy.

2. Shrinkage, evaporation, leakage of contents, change in flavor or texture or finish, decay or other spoilage, unless such loss or damage results directly from other physical damage not excluded in this policy.

D. We will not pay for loss or damage caused by or resulting from any of the following, but if an excluded cause of loss results in a covered cause of loss, we will pay for the loss or damage caused by that covered cause of loss:

1. **Defects, Errors, and Omissions** - This policy does not insure against loss or damage resulting from any act, error, or omission (whether by the insured or others) in:

   a. Planning, zoning, surveying, siting or developing property;

   b. Establishing or enforcing building codes or standards for construction or materials;

   c. The cost of correcting or making good an error in design;

   d. Designing, establishing the specifications, furnishing work, materials, parts or equipment, or constructing or maintaining the following property or facilities:

      (1) Buildings or structures;

      (2) Improvements or changes in or additions to land or other property; or

      (3) Roads, water mains, sewers, drainage ditches, levees, dams or other facilities; all whether or not such property or facilities are:

         (a) Covered by this policy, or

         (b) Away from the premises covered by this policy.

   In addition, we do not pay for loss to business personal property caused by deficiencies or defects in design, specifications, materials, or workmanship, or caused by latent or inherent defects.

**E.** **Equipment Breakdown** -- In addition to all other Exclusions found in **Section B – PROPERTY DAMAGE COVERAGE PART, IV. EXCLUSIONS,** we will not pay under the Additional Coverage Equipment Breakdown for loss or damage caused by or resulting from:

1. Any of the following tests;

   a. A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or an electrical insulation breakdown test of any type of electrical equipment; or

2. Any of the following:

   a. Any defect, programming error, programming limitation, "computer virus", malicious code, loss of "electronic data", loss of access, loss of use, loss of functionality or other condition within or involving "electronic data" or "media" of any kind; or

   b. Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

   c. Wear and tear, rust, corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

   d. Accumulated effects of smog, smoke, vapor, gas, liquid and dust.

   e. The cost of correcting or making good an error in design.

   f. Any deficiencies or defects in the design, specifications, materials or workmanship of "covered property".

   However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident".

3. With respect to Service Interruption coverage, we will also not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except as specifically provided in the Definitions Section E, 1.c.; smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood or earth movement.

4. With respect to Time Element and Service Interruption coverages, we will also not pay for:

   a. Loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business; or

   b. Any increase in loss resulting from an agreement between you and your customer or supplier.

Case 3:24-cv-00695     Document 1-1     Filed 06/05/24     Page 80 of 174 PageID #: 84

## SECTION C - TIME ELEMENT COVERAGE PART

This policy insures against "Time Element" loss as provided in the Time Element Coverages and Time Element Coverage Extensions of this section of the policy, subject to the following:

**I.     TIME ELEMENT COVERAGE PROVISIONS**

    **A.**    Coverage for "Time Element" loss is provided only when a limit of insurance or the word "Included" is shown the Declarations section of this policy.

    **B.**    Time Element Coverages and Time Element Coverage Extensions are subject to the applicable limit of liability that applies to the insured physical loss or damage but in no event for more than any limit of liability that is stated as applying to the specific Time Element Coverage and/or Extension.

    **C.**    A Time Element Coverage and/or Extension may indicate an applicable limit of insurance in this section of the policy. This limit may also be shown in the Declarations. If a different limit is indicated in the Declarations, that limit will apply instead of the limit shown in this section.

    **D.**    The Time Element Coverages and Time Element Coverage Extensions provided in this section of the policy:

        **1.**    Are subject to the policy provisions, including applicable exclusions and deductibles; and

        **2.**    Will not increase the Policy Limit of Liability.

"Time Element" Coverages, also known as Business Income Insurance or Business Interruption insurance, can mean, but is not limited to, any of the following in any combination: Gross Earnings or Gross Profits, Earnings, Earnings Only, Extra Expense, Leasehold Interest, and Rental Insurance.

**II.     LOSS INSURED**

    **A.**    If applicable, this policy insures "Time Element" loss the Insured sustains as provided in the Time Element Coverages. The Time Element loss must result from the necessary "suspension" of the Insured's business activities at an Insured Location during the Period of Restoration. The "suspension" must be due to direct physical loss of or damage to property of the type insurable under this policy, and the loss or damage must be caused by a "covered cause of loss" as insured against in this policy.

        There is recovery only to the extent that the Insured is:

        **1.**    Unable to make up lost production within a reasonable period of time not limited to the period during which production is suspended;

        **2.**    Unable to continue such operations or services during the Period of Restoration; and

        **3.**    Able to demonstrate a loss of revenue for the operations, services or production suspended.

    **B.**    This policy insures "Time Element" loss only to the extent it cannot be reduced through:

        **1.**    The Insured resuming business activities in whole or part;

**2.** The use of any property or service owned or controlled by the Insured;

**3.** Using the services or property of others;

**4.** Working extra time or overtime; or

**5.** The use of inventory,

all whether at an Insured Location or at any other location. We will include in any calculation the combined operating results of all Insured Locations and associated or affiliated companies of the Insured in determining the "Time Element" loss.

**C.** This policy covers expenses reasonably and necessarily incurred by the Insured to reduce the loss otherwise payable under this section of this policy. The amount of such recoverable expenses will not exceed the amount by which the loss has been reduced.

**D.** In determining the amount of loss payable, we will evaluate the experience of the business before and after the loss or damage and the probable experience had no direct physical loss or damage occurred at an Insured Location during the Period of Restoration.

## III. TIME ELEMENT COVERAGES

### A. Gross Earnings

We will pay for the actual loss of Gross Earnings sustained by the Insured due to the necessary "suspension" of the Insured's business activities during the Period of Restoration. The "suspension" must be due to physical loss or damage of the type insured against to real or personal property of the type covered, at Insured Locations.

**1.** Recovery in the event of loss shall be the actual loss sustained, less charges and expenses that do not necessarily continue during the suspension of the Insured's business activities. Consideration shall be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume the Insured's business activities with the same quality of service that existed immediately preceding the loss.

**2.** For the purpose of this insurance, Gross Earnings is determined as follows:

    **a.** The sum of:

        **(1)** For manufacturing operations: the total net sales value of production;

        **(2)** For mercantile or non-manufacturing operations: the total net sales of merchandise;

        **(3)** Other earnings derived from operations of the business.

    **b.** Less the cost of the following:

        **(1)** "Raw stock" used in production;

        **(2)** Supplies consisting of materials consumed directly in conversion of "raw stock" into "finished stock" or in supplying the service(s) sold by the insured;

        **(3)** Merchandise sold, including related packaging materials; and

        **(4)** Services purchased from outsiders (not insured's employees) for resale,

which do not continue under contract.

Any amount recovered under Property Damage coverage at selling price for loss or damage to merchandise will be considered to have been sold to the Insured's regular customers and will be credited against net sales.

**B.     Extra Expense**

We will pay for the reasonable and necessary Extra Expense incurred by the Insured, to resume and continue as nearly as practicable the Insured's "normal" business activities that otherwise would be suspended, due to direct physical loss of or damage caused by a "covered cause of loss" to property at an Insured Location.

Extra Expense, wherever used in this policy, means that amount spent during the Period of Restoration to continue the Insured's business activities, over and above the expenses the Insured would normally have incurred had there been no necessary suspension of the Insured's business activities.

1.     Recovery in the event of loss will be the reasonable and necessary extra costs incurred by the Insured of the following during the Period of Restoration:

   a.     Extra expenses to avoid or minimize the "suspension" of business and to continue operations at the Insured Location, or at replacement locations, or temporary locations, including relocation expenses and costs to equip and operate the replacement or temporary location; and

   b.     Extra costs to minimize the "suspension" of business if it is not possible to continue operating during the Period of Restoration;

   less any value remaining at the end of the Period of Restoration for property obtained in connection with the above.

2.     Extra Expense(s) does not include any of the following:

   a.     Any Gross Earnings or other income loss;

   b.     Costs that normally would have been incurred in conducting the business during the same period had no physical loss or damage occurred;

   c.     Cost of permanent repair or replacement of property that has been damaged or destroyed;

   d.     Any expense recoverable elsewhere in this policy.

Case 3:24-cv-00695     Document 1-1     Filed 06/05/24     Page 83 of 174 PageID #: 87

**C. Rental Value**

We will pay the Rental Value loss, if any, sustained by the Insured resulting directly from necessary untenantability, caused by direct physical loss or damage of the type insured against to property at Insured Locations.

Rental Value means income that would have been earned or incurred as rental income from tenant occupancy, including fair rental value of any portion of the premises which is occupied by the Insured, and continuing "normal" operating expenses incurred in connection with the property at the Insured Location.

1. Recovery in the event of loss is the actual loss sustained by the Insured of the following during the Period of Restoration:

   a. The fair rental value of any portion of the property occupied by the Insured;

   b. The total anticipated rental income from tenant occupancy of the Insured Location as furnished and equipped by the Insured; and

   c. The rental income from the rented portions of such property according to bona fide leases, contracts or agreements in force at the time of loss,

   all not to include non-continuing charges and expenses.

2. As respects Rental Value, item VI.A. of the Time Element Exclusions section of this policy does not apply and the following applies instead:

   a. This policy does not insure any loss of rental income during any period in which the insured property would not have been tenantable for any reason other than an insured loss.

**D. Leasehold Interest**

We will pay the actual Leasehold Interest loss incurred by the Insured (as lessee) resulting from direct physical loss of or damage caused by a "covered cause of loss" to a building (or structure) which is leased and not owned by the Insured.

1. The recoverable Leasehold Interest is as follows:

   a. If the building (or structure) becomes wholly untenantable or unusable and the lease agreement requires continuation of the rent, we will pay the Insured the actual rent payable for the unexpired term of the lease, not including any options;

   b. If the building (or structure) becomes partially untenantable or unusable and the lease agreement requires continuation of the rent, we will pay the Insured the proportion of the rent payable for the unexpired term of the lease; or

   c. If the lease is cancelled by the lessor pursuant to the terms of the lease agreement or by operation of law, this policy will pay the Insured for their Lease Interest for the first three (3) months following the loss or damage and for their Net Lease Interest for the remaining unexpired term of the lease.

   The Insured must use any suitable property or service owned, controlled, or obtainable from any source to reduce the loss.

2. In addition to the exclusions elsewhere in this policy, the following exclusions apply to Leasehold Interest:

This policy does not insure any increase in loss resulting from the suspension, lapse or cancellation of any lease, or from the Insured exercising an option to cancel the lease; or from any act or omission of the Insured that constitutes a default under the lease.

In addition, there is no coverage for the Insured's loss of Leasehold Interest directly resulting from physical loss or damage to personal property.

3. The following term(s) mean:

    a. Lease Interest - The excess rent paid for the same or similar replacement property over actual rent payable plus cash bonuses or advance rent paid (including maintenance or operating charges) for each month during the unexpired term of the Insured's lease;

    b. Net Lease Interest - That sum which placed at 6% interest rate compounded annually would equal the Lease Interest (less any amounts otherwise payable hereunder).

## IV. TIME ELEMENT COVERAGE EXTENSIONS

If this policy insures "Time Element" loss, as provided by the Time Element Coverages of this policy, the Time Element Coverage Extensions apply as described below.

### A. Dependent Locations

We will pay the actual loss sustained by the Insured, during the Period of Restoration, as a direct result of the necessary "suspension" of operations at Insured Locations. The necessary suspension of operations at the Insured Locations must be a result of loss or damage by a "covered cause of loss", to Property (of the type insurable under this policy), at a direct Dependent Location as specified below.

1. A Dependent Location means a location operated by others that the Insured depends upon. Dependent Locations include but is not limited to:

    a. Contributing locations - these are the Insured's direct suppliers designated on the Schedule of Dependent Locations attached to this policy, that deliver materials or services to the Insured or to others for the account of the Insured. An indirect supplier is not a Contributing location;

    b. Recipient locations - these are locations designated on the Schedule of Dependent Locations attached to this policy, that receive the Insured's products. An indirect recipient is not a Recipient location;

    c. Any other Contributing or Recipient Locations not operated by the Insured, wherever located within the United States (including its territories and possessions), Canada, and Puerto Rico and not elsewhere. But in no event shall the Company be liable for loss caused by damage to any such property not specifically named and described herein for any amount in any one occurrence exceeding **$100,000**.

    d. Leader locations - these are locations that attract customers to the Insured's business;

    e. Manufacturing or contract service provider locations - these are locations that make products for delivery to the Insured's customers under contract of sale; or

**f.** A Location of a company under a royalty, licensing fee or commission agreement with the Insured.

Dependent Locations do not include locations of any company directly or indirectly supplying:

**(1)** Water supply services;

**(2)** Power supply services; or

**(3)** Communication supply services, including services relating to internet access or access to any electronic network.

**2.** Recovery in the event of loss shall be the actual Gross Earnings loss sustained and necessary Extra Expense incurred by the Insured resulting directly from such interruption of business, less charges and expenses which do not necessarily continue during the interruption of business, Due consideration shall be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately preceding the loss.

The Insured will influence and cooperate with the Dependent Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies or locations, to effect mitigation of the loss payable hereunder.

In determining the indemnity payable hereunder, we will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

The most we will pay in any one occurrence is the amount stated in the Declarations section of this policy.

**3.** As respects Dependent Locations, the following additional exclusions apply:

**a.** We will not pay for loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this policy, contributing concurrently or in any other sequence to the loss:

**(1)** Earth movement; or

**(2)** Flood.

**b.** Coverage does not apply when the only loss to the Dependent Property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property sustains loss or damage to "electronic data" and other property, coverage will not continue once the other property is repaired, rebuilt or replaced.

**B.**     **Electronic Data - Time Element**

We will pay the actual loss sustained by the Insured, during the period of restoration, when the Insured's business is "suspended" due to insured physical loss or damage resulting in destruction or corruption of the Insured's "electronic data" programs or software at an Insured Location. Insured physical loss or damage includes physical loss or damage caused by a "computer virus" or the malicious introduction of a harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.

1.     This coverage will only apply when the period of restoration exceeds the time shown as "Waiting Period" in the Waiting Period clause of the Declarations section. If the Waiting Period is exceeded, then this policy will pay for the amount of loss in excess of the applicable deductible, but not more than the limit applying to this coverage.

2.     The most we will pay under this Time Element Coverage Extension is the amount shown in the Declarations for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

3.     We do not cover Time Element loss under this coverage that results from:

   a.     Loss of exclusive use of any data records or proprietary programs that have been copied, scanned, or altered; or

   b.     Loss of or reduction in economic or market value of any data records or proprietary programs that have been copied, scanned, or altered.

This Electronic Data Time Element Coverage Extension does not apply to loss sustained or expense incurred after the end of the period of restoration, even if the amount of insurance stated in paragraph **2.** above has not been exhausted.

**C.**     **Extended Period Of Indemnity**

This policy extends coverage as provided by Gross Earnings and/or Rental Value to cover the additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss occurred. This coverage commences:

1.     On the date the covered property that incurred the loss (except "finished stock") is rebuilt, repaired or replaced and business is resumed or tenant ability is restored; and

2.     Ends on the earlier of:

   a.     The date the Insured could restore business, with reasonable speed, to the level which would generate the earnings amount or rents that would have existed had no loss or damage occurred; or

   b.     **30 consecutive days** after the date determined in **C.1.** above (unless otherwise indicated in the Declarations section of this policy).

**D. Ingress/Egress**

We will pay the actual Gross Earnings loss sustained by the Insured, resulting from the necessary "suspension" of the Insured's business activities, when existing ingress to or egress from an Insured Location is prevented. The physical prevention of ingress to or egress from an Insured Location must be due to direct physical loss or damage caused by a "covered cause of loss", to property of the type insured against by this policy, within one mile of an Insured Location.

As respects Ingress/Egress, the following exclusions are applicable:

This policy does not insure loss resulting from:

1. Lack of incoming or outgoing service consisting of electric, fuel, gas, water, steam, refrigerant, sewerage and voice, data or video.

2. Picketing or other action by strikers except for physical damage not excluded by this policy.

This Coverage Extension provides coverage for a period not to exceed **thirty (30) consecutive days** from the date of the direct physical loss or damage.

This coverage does not apply if ingress to or egress from the Insured Location is prohibited by order of civil or military authority.

**E. Interruption By Civil Authority**

This policy is extended to cover the actual Gross Earnings loss sustained and Extra Expense incurred while access to an Insured Location is specifically denied by order of civil authority. This order must be a result of direct physical loss of or damage to property, other than at an Insured Location, and must be caused by a "covered cause of loss".

Unless otherwise indicated in the Declarations, this coverage extension is limited to **thirty (30) consecutive days** from the date of the order.

**F. Impounded Water**

This policy covers the actual Gross Earnings loss sustained and Extra Expense incurred by the Insured during the Period of Restoration, resulting from the necessary "suspension" of the Insured's business activities at an Insured Location if the suspension is caused by the lack of a supply of water from a water supply stored behind dams or in reservoirs on the Insured Location. The water supply must be used as a raw material or for generation of power or for other manufacturing purposes. The inadequate supply of water must result from the release of the water from the water supply and be caused by direct physical damage of the type insured by this policy to the dam, reservoir, or connected equipment.

We will pay the actual loss sustained by the Insured resulting from the lack of adequate water supply from such sources, in excess of the deductible up to the limit applying to this coverage, but not to exceed **thirty (30) consecutive days** after the damaged dam, reservoir or connected equipment has been repaired or replaced, with the exercise of due diligence and dispatch.

**G. Off-Premises Service Interruption  - Time Element**

This policy is extended to cover the actual Gross Earnings  loss sustained and Extra Expense incurred by the Insured during the Period of Service Interruption at Insured Locations when the loss is caused by the interruption of  incoming services consisting of electricity, gas, fuel, steam, water, refrigeration, the lack of outgoing sewerage service, or from the lack of communication services including telephone, radio, microwave, or television services such as communication transmission lines, coaxial cables, and microwave radio relays, except satellites.

1. The lack of service must result from direct physical loss or damage of the type insured against under this policy to property at the facilities of the supplier of such service located within this policy's Territory, that immediately prevents in whole or in part the delivery of such usable services;

2. In no event shall any Time Element loss exist (or be adjusted) unless the duration of the interruption of service exceeds twenty-four (24) consecutive hours, or excess of the time shown as Waiting Period in the Waiting Period clause of the Declarations section of this policy;

3. Period of Service Interruption means the period starting with the time when an interruption of specified services occurs; and ending when with due diligence and dispatch the service could be wholly restored and the location receiving the service could or would have resumed normal operations following the restorations of service under the same or equivalent physical and operating conditions as provided by the Period of Restoration clause in this section of the policy.

   The Period of Service Interruption is limited to only those hours during which the Insured would or could have used service(s) if it had been available.

   The Period of Service Interruption does not extend to include the interruption of operations caused by any reason other than interruption of the specified service(s).

4. Additional General Conditions:

   a. As soon as practicable, the Insured will notify the suppliers of services of any interruption of such services;

   b. We will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services.

5. Applicable limit:

   The most we will pay in any one occurrence under this Coverage Extension is **$10,000** or the amount stated in the Declarations.

Any coverage under this policy for Off-Premises Service Interruption-Time Element does not apply to the Additional Coverage Equipment Breakdown Service Interruption coverage.

**H. Research and Development**

We will pay, under Gross Earnings, for the fixed charges and expenses (including  Payroll) actually incurred by the insured during the Period of Restoration directly attributable to the interruption of research and development projects that would not have produced income.  The loss must result from the necessary "suspension" of business activities at an Insured Location that is caused by direct physical loss or damage caused by a "covered cause of loss" to research and development projects.

Case 3:24-cv-00695     Document 1-1     Filed 06/05/24     Page 89 of 174 PageID #: 93

We will not pay for any other Time Element loss under this coverage. Loss under this coverage does not include any fixed charges and/or expenses (including Ordinary Payroll) otherwise payable elsewhere in this policy.

The Period of Restoration for this Time Element Extension will be the period from the time of direct physical loss or damage of the type insured by this policy, to the time when the property could be repaired or replaced and made ready for operations, but not to be limited by the date of expiration of this policy.

## V.   PERIOD OF RESTORATION

   **A.**   Period of Restoration for all Time Element coverages, unless otherwise stated, and subject to any Time Limit provided in the Declarations section, means that period of time that:

       **1.**   Begins immediately after the time of direct physical loss or damage caused by or resulting from a "covered cause of loss" to property at an Insured Location; and

       **2.**   Ends on the earlier of:

           **a.**   The date when the property at the Insured Location should be repaired, rebuilt, replaced or restored with reasonable speed and similar quality; or

           **b.**   The date when business is resumed at a new, permanent location.

       The expiration of this policy will not limit the Period of Restoration.

   **B.**   The Period of Restoration for:

       **1.**   Property in the course of construction: The equivalent of the above period of time will be applied to the level of business that reasonably would have been achieved after construction and startup would have been completed had no physical damage happened. Due consideration will be given to the actual experience of the business after completion of the construction and startup.

       **2.**   Dependent Locations: Means the time it should reasonably take to resume your business activities starting from the date of direct physical loss of or damage to a dependent location caused by a "covered cause of loss", and ending on the date:

           **a.**   The property at the dependent location should be rebuilt, repaired, or replaced; or

           **b.**   Business is resumed at a new, permanent location.

       **3.**   Off Premises Utility Service Interruption: Means the time it should reasonably take to resume your business activities:

           **a.**   Starting from the date of direct physical loss or damage caused by a "covered cause of loss" to property not located at an Insured Location and that is owned by a utility, a landlord, or another utility supplier; and

           **b.**   Ending on the date when the utility is restored.

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 90 of 174 PageID #: 94

4.   Impounded water:  Means our liability for the actual interruption of production or suspension of operations or services due to inadequate water supply will not extend beyond 30 consecutive days after the damaged dam, reservoir or connected equipment has been repaired or replaced.

5.   Physically damaged exposed films, records, manuscripts and drawings:  The time required to copy from backups or from originals of a previous generation.  This time does not include research, or any other time necessary to restore or recreate lost information.

6.   Physically damaged or destroyed property covered under "electronic data", the time starting when the Insured's data, programs, or software is damaged and ending when with due diligence and dispatch, the Insured's lost or damaged information could be replaced or restored.

The expiration of this policy will not limit the Period of Restoration.

C.   The Period of Restoration does not include any additional time due to the Insured's inability to resume operations for any reason, including but not limited to:

1.   Making changes to data, programs, software or equipment.

2.   Making changes to the building or structures except as provided in the Demolition and Increased Cost of Construction Coverages in the Property Damage section of this policy.

3.   Re-staffing or retraining employees.

## VI.   TIME ELEMENT EXCLUSIONS

In addition to the exclusions elsewhere in this policy, the following exclusions apply to Time Element loss:

This policy does not insure against:

A.   Any loss during any idle period, including but not limited to when production, operations, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

1.   Physical loss or damage not insured by this policy on or off of the Insured Location.

2.   Planned or rescheduled shutdown.

3.   Strikes or other work stoppage.

4.   Any other reason other than physical loss or damage insured by this policy.

B.   Any increase in Time Element loss due to:

1.   Suspension, cancellation or lapse of any lease, contract, license or orders.  But if the suspension, cancellation or lapse is directly caused by the "suspension" of business, then we will cover such loss as affects your Gross Earnings during, and limited to, the period of indemnity covered under this policy.

2.   Fines or damages for breach of contract or for late or non-completion of orders.

3.   Penalties of any nature.

4.   Any other consequential or remote loss.

Case 3:24-cv-00695     Document 1-1     Filed 06/05/24     Page 91 of 174 PageID #: 95

**C.**      Any loss resulting from loss or damage to "finished stock" manufactured by the Insured, nor the time required for their reproduction.

**D.**      Any Time Element loss resulting from transit.

## VII.    TIME ELEMENT INTERDEPENDENCY

If there is a loss at an Insured Location that involves interdependency at one or more other Insured Locations, the loss, including any resulting interdependency loss, will be adjusted based on the Time Element Coverage that applies at the Insured Location where the direct physical loss or damage insured by this policy occurred.

# SECTION D - GENERAL POLICY CONDITIONS

## I.   CANCELLATION AND NON-RENEWAL

**A.**   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**B.**   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    **1.**   Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **2.**   Sixty (60) days before the effective date of cancellation if we cancel for any other reason.

**C.**   This policy may be non-renewed by us by giving the Insured not less than sixty (60) days written notice of non-renewal.

**D.**   We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**E.**   Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**F.**   If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

**G.**   If notice is mailed, proof of mailing will be sufficient proof of notice.

If under the laws of the jurisdiction in which the property is located such cancellation or non-renewal terms or conditions are different, then cancellation terms or conditions will be as permitted by such laws.

## II.   CONCEALMENT, MISREPRESENTATION OR FRAUD

This policy is void as to all Insured's in any case of fraud by any Insured as it relates to this policy at any time.  It is also void if any Insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**A.**   This Policy;

**B.**   The Covered Property;

**C.**   The Insured's interest in the Covered Property; or

**D.**   A claim under this Policy

## III.   CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

SHPR 00 100 (0519)                                                                 Page 55 of 68

The breach of any condition of this policy at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## IV.  CONTROL OF DAMAGED GOODS

In the event of insured direct physical loss of or damage to "finished stock"; this policy gives control of the physically damaged property as follows, all subject to paragraph **D.** of this clause:

**A.**  The insured will have full rights to the possession and control of damaged property in the event of insured direct physical loss or damage to such property provided we agree that the property is physically damaged.

**B.**  The insured using reasonable judgment will decide if the physically damaged property can be reprocessed or sold.

**C.**  Property so judged by the Insured to be unfit for reprocessing or selling will not be sold or disposed of except by the Insured, or with the Insured's consent.

**D.**  The salvage value of property that is claimed damaged shall be determined at the time of loss. The Insured will allow us to deduct from the amount of loss otherwise payable, the fair market value of such salvage, which could have been obtained on any sale or other disposition of goods or products through normal insurance industry salvage practices.

## V.  ENVIRONMENTAL, SAFETY AND EFFICIENCY IMPROVEMENTS

If "covered equipment" requires replacement due to an "accident," we will pay your additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

However, we will not pay more than 125% of what the cost would have been to replace with like kind and quality.  This condition does not increase any of the applicable limits.

This condition does not apply to any property to which Actual Cash Value applies.

## VI.  INSPECTIONS AND SURVEYS

**A.**  We have the right but not the obligation to make inspections and surveys at any time, to give the Insured reports on the conditions found, and to recommend changes.

**B.**  Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public, nor do we represent that conditions are safe, healthful, or comply with laws, regulations, codes or standards.

Paragraph **B.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 94 of 174 PageID #: 98

## VII.   JURISDICTION

This policy will be governed by United States of America Law.  Any disputes arising hereunder will be exclusively subject to United States of America jurisdiction.

## VIII.   JURISDICTIONAL INSPECTIONS

If any property that is "covered equipment" under this policy requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

## IX.   LIBERALIZATION

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the extended or broadened insurance will inure to the benefit of the Insured within such jurisdiction, effective the date of the change specified in such statute.

## X.   LOSS ADJUSTMENT/PAYABLE

Loss, if any, will be adjusted with and payable to the First Named Insured as shown in the Declarations or as may be directed by the First Named Insured.  Additional insured interests will also be included in loss payment as their interests may appear when named as additional named insured, lender, mortgagee and/or loss payee in this policy.

## XI.   LOSS CONDITIONS

### A.   Duties In The Event Of Loss Or Damage

The Insured must see that the following are done in the event of direct physical loss or damage to Covered Property:

1.   Give immediate written notice to us of any loss;

2.   Protect the property from further loss or damage;

3.   Promptly separate the damaged and undamaged property; put it in the best possible order; and furnish a complete inventory of the lost, destroyed, damaged and undamaged property showing in detail the quantities, costs, actual cash value, replacement value and amount of loss claimed;

4.   Give a signed and sworn proof of loss to us within 90 days after the loss, unless that time is extended in writing by us. The proof of loss must state the knowledge and belief of the Insured as to:

    a.   The time and origin of the loss;

    b.   The Insured's interest and that of all others in the property;

    c.   The actual cash value and replacement value of each item and the amount of loss to each item; all encumbrances; and all other contracts of insurance, whether valid or not, covering any of the property;

    d.   Any changes in the title, use, occupation, location, possession or exposures of the property since the effective date of this policy.

     **e.**     By whom and for what purpose any location insured by this policy was occupied on the date of loss, and whether or not it then stood on leased ground.

  **5.**     Include a copy of all the descriptions and schedules in all policies and, if required, provide verified plans and specifications of any buildings, fixtures, machinery or equipment destroyed or damaged;

  **6.**     Further, the Insured, will as often as may be reasonably required:

     **a.**     Exhibit to any person designated by us all that remains of any property;

     **b.**     Submit to examination under oath by any person designated by us and sign the written records of examinations; and

     **c.**     Produce for examination at the request of us:

        **(1)**     All books of accounts, business records, bills, invoices and other vouchers; or

        **(2)**     Certified copies if originals are lost,

        at such reasonable times and places that may be designated by us or our representative and permit extracts and machine copies to be made.

**B.**    **Abandonment**

There may be no abandonment of any property to us.

**C.**    **Subrogation**

The Insured is required to cooperate in any subrogation proceedings. To the extent of our payment, the Insured's rights of recovery against any party are transferred to us. We are allowed to pursue suits in the name of the Insured.

We acquire no rights of recovery that the Insured has expressly waived prior to a loss, nor will such waiver affect the Insured's rights under this policy.

Any recovery from subrogation proceedings, less costs incurred by us in such proceedings, will be payable to the Insured in the proportion that the amount of any applicable deductible and/or any provable uninsured loss, bears to the entire provable loss amount.

**D.**    **Appraisal**

If the Insured and us fail to agree on the value of the property or the amount of loss, each will, on the written demand of either, select a competent, disinterested, and impartial appraiser, who has no direct or indirect financial interest in the claim. Each will notify the other of the appraiser selected within 20 days of such demand. The Insured may not invoke appraisal unless it has first fully complied with all provisions of this policy, including Duties In The Event Of Loss or Damage and has provided us with a signed and sworn statement of loss.

The appraisers will first select a competent, disinterested and impartial umpire. If the appraisers fail to agree upon an umpire within 15 days then, on the request of the Insured or us, a judge of a court of record in the jurisdiction in which the appraisal is pending will select the umpire. The appraisers will then appraise the value of the property or the amount of loss. They will state separately, the actual cash value and replacement cost value, as of the date of loss and the amount of loss, each item of physical of physical loss or damage or, if for "Time Element" loss, the amount of loss for each Time Element Coverage of this policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award stating separately the actual cash value and replacement cost value, as of the date of loss and the amount of loss for each item of physical loss or damage or, if for "Time Element" loss, the amount of loss for each Time Element Coverage of this policy agreed to in writing by any two will determine the amount of loss.

Once there is an award, we retain the right to apply all policy terms and conditions (including but not limited to deductibles, exclusions, and Limits of Liability) to the award. We further retain the right to deny the claim in whole or in part.

The Insured and us will each pay its chosen appraiser and bear equally the other expenses of the appraisal and umpire.

**E.**   **Suit Against the Company**

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless the Insured has fully complied with all the provisions of this policy. Legal action must be started within (24) twenty-four months after the date of direct physical loss or damage to Covered Property or to other property as set forth herein.

## XII.   MORTGAGE PROVISIONS

If a mortgagee (mortgage holder) is named in this policy, loss to building property will be paid to the mortgagee and you as their interest appear. If more than one mortgagee is named, they will be paid in order of precedence.

The insurance for the mortgagee continues in effect even when your insurance may be void because of your acts, neglect, or failure to comply with the coverage terms. The insurance for the mortgagee does not continue in effect if the mortgagee is aware of changes in ownership or substantial increase in risk and does not notify us.

If we cancel this policy, we will notify the mortgagee at least ten days before the effective date of cancellation if we cancel for your nonpayment of premium, or 30 days before the effective date of cancellation if we cancel for any other reason.

We may request payment of the premium from the mortgagee if you fail to pay the premium.

If we pay the mortgagee for a loss where your insurance may be void, the mortgagee's right to collect that portion of the mortgage debt from you then belongs to us. This does not affect the mortgagee's right to collect the remainder of the mortgage debt from you.

As an alternative, we may pay the mortgagee the remaining principal and accrued interest in return for a full assignment of the mortgagee's interest and any instruments given as security for the mortgage debt.

If we choose not to renew this policy, we will give written notice to the mortgagee at least ten days before the expiration date of this policy.

## XIII.   REDUCTION BY LOSS

SHPR 00 100 (0519)                                                                Page 59 of 68

Loss or damage shall not reduce the amount of insurance recoverable, except where an "annual aggregate" applies. The reinstatement of any exhausted "annual aggregate" is not permitted unless authorized by us in writing.

## XIV.   OTHER INSURANCE

We will not be liable if, at the time of loss or damage, there is any other insurance that would attach in absence of this insurance; except that this insurance shall apply only as excess and in no event as contributing insurance, and then only after all other insurance has been exhausted.

This provision shall not apply if this policy is written in coordination with other insurance that is intended to pay proportionally with this insurance as part of a property insurance plan or program expressly written with other participants subject to the same terms, conditions and provisions as those in this policy.

We give the Insured permission to purchase insurance for all or any part of the deductibles in this policy, and the existence of underlying insurance shall not prejudice the Insured's rights under this policy. If the limits of underlying insurance exceed the deductible that would apply, then the Insurance provided by this policy shall apply only as excess after that portion which exceeds the deductible has been exhausted.

The Insured can purchase excess insurance commencing on or after the inception of this policy that is specifically excess over the limits of insurance set forth in this policy without prejudice to this policy and the existence of such insurance shall not reduce any liability under this policy.

## XV.   POLICY MODIFICATION

This policy contains all of the agreements between the Insured and us concerning this insurance. The Insured and the Company may request changes to this policy. Only endorsements issued by the Company and made a part of this policy can change this policy.

## XVI.   SETTLEMENT OF CLAIMS

The amount of loss, except for Accounts Receivable coverage, for which we may be liable, will be paid within 30 days after:

**A.**   Proof of loss as described in this policy is received by us; and

**B.**   When a resolution of the amount of loss is made either by:

     **1.**   Written agreement between the Insured and us; or

     **2.**   An appraisal award has been made.

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 98 of 174 PageID #: 102

XVII. **SUSPENDED PROPERTY**

When Covered Property is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend this insurance for that property. This can be done by delivering or mailing a written notice to the First Named Insured's mailing address or to the address where the Covered Property is located. Once suspended, this insurance can be reinstated only by an endorsement. Any unearned premium due will be returned by us. But, suspension will be effective even if we have not yet made or offered a refund.

XVIII. **TITLES OF PARAGRAPHS**

The titles of the various paragraphs of this form (and of endorsements and supplemental contracts, if any, now or hereafter attached to this policy) are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

XIX. **TRANSFER OF RIGHTS AND DUTIES**

The Insured's rights and duties under this policy may not be transferred without our written consent.

XX. **VACANCY - UNOCCUPANCY**

The Insured has permission to cease operations or remain vacant or unoccupied provided fire protection, watch and alarm services are maintained, and written notice is given to us prior to the one hundred twentieth (120th) consecutive day of cessation of operation, vacancy or unoccupancy. The Insured's building is considered vacant or unoccupied when it does not contain enough Covered Property to conduct customary business operations.

XXI. **VALUATION**

In the event of any claim for direct physical loss of or damage to Covered Property adjustment of the physical loss amount under this policy will be computed as of the date of loss at the location of the loss, and for no more than the interest of the insured, subject to the following:

A.   The basis of adjustment is on a replacement cost basis unless a specific valuation applies. Replacement cost shall be the cost to repair, rebuild or replace the damaged property (without deduction for depreciation) with materials of like kind, quality and capacity at the same or another site, but no more than the lesser of:

   1.   The cost to repair;

   2.   The cost to rebuild or replace on the same site with new materials of like size, kind and quality;

   3.   The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss; or

   4.   The limit of insurance applicable to the lost or damaged property.

   If there is direct physical loss of or damage to Covered Property which is not repaired, rebuilt or replaced within two (2) years from the date of direct physical loss or damage, we will not be liable for more than the actual cash value of the property destroyed.

SHPR 00 100 (0519)

**B.** The following property shall be valued as specified below:

    **1.** For "stock- in- process", the value of raw materials and labor expended plus the proper proportion of overhead charges.

    **2.** For "finished stock" manufactured by the insured, the regular cash selling price at the location where the loss happens, less all discounts and charges to which the finished goods would have been subject had no loss happened.

    **3.** For "raw materials", supplies and other "merchandise" not manufactured by the insured:

        **a.** If repaired or replaced, the actual expenditure incurred in repairing or replacing the damaged or destroyed property; or

        **b.** If not repaired or replaced, the actual cash value.

    **4.** For exposed films, records, manuscripts and drawings, that are not Valuable Papers and Records, the blank value plus the cost of copying information from back-up or from originals of a previous generation. These costs will not include research, engineering or any costs of restoring or recreating lost information.

    **5.** For property covered under Electronic Data;

        **a.** The cost to repair, replace or restore data, programs or software including the costs to recreate and research, provided that if the insured attempts but is unable to recreate or restore the lost information, then the reasonable and necessary costs incurred to make the determination that the lost information cannot be recreated or restored;

        **b.** If not repaired, replaced or restored within two years from the date of loss, the blank value of the media.

    **6.** For property covered under Deferred Payments, the lesser of the:

        **a.** Total amount of unpaid installments less finance charges;

        **b.** Actual cash value of the property at the time of loss;

        **c.** Cost to repair or replace with material of like size, kind and quality.

    **7.** For Fine Arts articles, the lesser of:

        **a.** The reasonable and necessary cost to repair or restore such property to the physical condition that existed on the date of loss;

        **b.** The cost to replace the article with substantially identical property;

        **c.** The value, if any stated on a schedule on file with the Company.

    If the Fine Arts article cannot be replaced and an appraisal is not available, the valuation shall be market value based on prevailing conditions at the time of loss or damage.

    **8.** For Property in Transit:

a. Property shipped to or for the account of the insured will be valued at actual invoice to the insured. Included in the value are accrued costs and charges legally due. Charges may include the Insured's commission as selling agent;

b. Property sold by the insured and shipped to or for the purchaser's account will be valued at the Insured's selling invoice amount. Prepaid or advanced freight costs are included;

c. Property not under invoice will be valued:

    (1) For property of the insured, at the valuation provisions of this policy applying at the location from which the property is being transported; or

    (2) For other property, at the actual cash market value at the destination point on the date of occurrence,

    Less any charges saved which would have become due and payable upon arrival at destination.

9. The selling price of real property or machinery and equipment, other than stock, offered for sale on the date of loss.

10. The cost to replace un-repairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages, represents an improvement in function, or forms part of a program of system enhancement.

11. Improvements and Betterments:

a. If repaired or replaced at the expense of the insured within a reasonable time after such loss, the replacement cost of the damaged Improvements and Betterments;

b. If not repaired or replaced within a reasonable time after such loss, that proportion of the original cost at time of installation of the damaged Improvements and Betterments which the unexpired term of the lease at the time of loss bears to the period(s) from the date(s) such Improvements and Betterments were made to the expiration date of the lease;

c. If repaired or replaced at the expense of others for the use of the Insured; there shall be no liability hereunder.

12. For property that is useless to the Insured or obsolete, the actual cash value.

13. The Actual Cash Value for automobiles, motor trucks, tractors, trailers, and similar conveyances designed and used for the over-the-road transportation of people or cargo while at the Insured Location(s) described in the Declarations of this policy or within 1,000 feet as provided in the Additional Coverages section of this policy.

The Insured may elect not to repair or replace the damaged Covered Property, however, if loss settlement proceeds are expended on other capital expenditures related to the business activities of the Insured within two years from the date of loss, the lesser of the repair or replacement cost of such property will be paid. As a condition of collecting under this clause, such expenditure must be unplanned as of the date of loss and be made at an Insured Location under this policy. This clause does not extend to Demolition and Increased Cost of Construction.

The term Actual Cash Value, wherever used in this policy, means the amount it would cost to repair or replace covered property, on the date of loss, with material of like kind and quality, with proper deduction for obsolescence and physical depreciation.

## SECTION E - DEFINITIONS

These definitions relate solely to Section B. III. Additional Coverages, B.13. Equipment Breakdown:

1. **"Accident"** - a fortuitous event that causes direct physical damage to "covered equipment". The event must be one of the following:

   a. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

   b. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

   c. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

   d. Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

   e. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

2. **"Average Daily Value"** - if a deductible is expressed as a number times ADV (Average Daily Value), that amount will be calculated as follows:

   The ADV will be the Gross Earnings (as defined in any Time Element coverage that is part of this policy) that would have been earned during the period of interruption of business had no "accident" occurred, divided by the number of working days in that period.

   No reduction shall be made for the Gross Earnings not being earned, or in the number of working days, because of the "accident" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to the Gross Earnings value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the period of restoration.

   The number indicated in the Declaration will be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

3. **"Boilers and Vessels"**-

   a. Any boiler, including attached steam, condensate and feedwater piping; and

   b. Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.

   This term does not appear elsewhere in this policy, but may appear in the Declarations.

4. **"Covered Equipment"** - unless otherwise specified in the Declarations, covered property:

   a. That generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

   b. Which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

   None of the following is "covered equipment":

SHPR 00 100 (0519)                                             Page 65 of 68

a. Structure, foundation, cabinet, compartment;

b. Insulating or refractory material;

c. Sewer piping, buried vessels or piping, or piping forming a part of a sprinkler or fire suppression system;

d. Water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

e. "Vehicle" or any equipment mounted on a "vehicle";

f. Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

g. Dragline, excavation or construction equipment; or

h. Equipment manufactured by you for sale.

5. **"Hazardous Substance"** - any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

6. **"Production Machinery"** - any machine or apparatus that processes or produces a product intended for eventual sale. However, "production machinery" does not mean any fired or unfired pressure vessel other than a cylinder containing a moveable plunger or piston.

This term does not appear elsewhere in this policy, but may appear in the Declarations.

The following terms wherever used in this policy shall mean:

7. **"Annual Aggregate"** - the maximum amount of loss or damage payable in any one (1) policy year regardless of the number of occurrences within the same policy year.

8. **"Computer Virus"** - a virus or malicious self-replicating harmful code or similar instruction introduced into or enacted on a "computer" (including electronic data) or a network to which it connects, designed to damage or destroy any part of the system or disrupt its normal operation. But it does not mean loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair, or replace your "computers".

9. **"Computers"** -:

a. Your programmable electronic equipment that is used to receive, process, store, retrieve or send "electronic data". It includes their component parts and air conditioning, fire suppression equipment and electrical equipment used exclusively in your "computer" operations; and

b. Associated peripheral equipment that provides communication including input and output functions such as printing or auxiliary functions such as data transmission.

c. As respects only to Additional Coverage Equipment Breakdown, "Computers" does not include those used to control or operate machinery or equipment.

It does not include "electronic data" and "media".

10. **"Contamination"** - any condition of property due to the actual presence of any foreign substance, impurity, chemical, "pollutant", hazardous material, poison, toxin, pathogen or pathogenic organism, except "fungus" wet rot or dry rot.

SHPR 00 100 (0519)

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 104 of 174 PageID #: 108

11. **"Covered Cause of Loss"** – all risks of direct physical loss of or damage from any cause unless excluded.

12. **"Electronic Data"** – information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of "electronic data" means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send "electronic data".

13. **"Fine Arts"** – includes, but is not limited to, bona fide works of art, works of rarity, works of historical values, works of artistic merit, photographs, lithographs, illustrations, gallery proofs, art glass windows, tapestries and similar property.

14. **"Finished Stock"** – stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

15. **"Fungus"** – any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

16. **"Limit"** – the amount of coverage that applies.

17. **"Media"** – material on which "electronic data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.

18. **"Merchandise"** – goods kept for sale by the Insured which are not raw stock, stock in process or finished stock.

19. **"Mobile Equipment":**

    a.    Contractors' equipment and similar items of a mobile nature;

    b.    Unlicensed vehicles which are not operated on public roadways; however, are built for public roadway use; and

    c.    Self propelled vehicles built and utilized for carrying equipment attached to them.

20. **"Moderate Flood Hazard Areas" (MFHA)** labeled Zone B or Zone X (shaded, are the areas between the limit of the 100 year and 500 year flood areas).

21. **"Normal"** – the condition that would have existed had no loss occurred.

22. **"Perishable Goods"** – personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

23. **"Perishable Stock"** – personal property preserved and maintained under controlled conditions and susceptible to loss or damage if the controlled conditions change.

24. **"Pollutants"** - any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

25. **"Raw Materials"** - material in the state in which the Insured receives it for conversion by the Insured into stock in process or finished stock.

26. **"Special Flood Hazard Area" (SFHA)** - an area having special flood, mudflow, or flood-related erosion hazards, and shown on a Flood Hazard Boundary Map or Flood Insurance Rate Map as Zone A, AO, A1 - A30, AE, A99, AH, AR, AR/A, AR/AE, AR/AH, AR/AO, AR/A1 - A30, V1-V30, VE, or V.

27. **"Specified Causes of Loss"**: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

28. **"Specified Perils"** - fire, lightning, explosion, riot or civil commotion, aircraft, or smoke.

29. **"Spoilage"** – any detrimental change in physical state of "perishable stock". Detrimental change includes, but is not limited to, thawing of frozen goods, warming of refrigerated goods, solidification of liquid or molten material, chemical reactions to material in process, and reduction in value of time sensitive materials.

30. **"Stock"** - merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

31. **"Stock-in-Process"** – raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture at the described premises but which has not become finished stock.

32. **"Suspension"**:

    a.   The slowdown or cessation of the Insured's business activities; or

    b.   As respects rental income that a part or all of the Insured Location is rendered untenantable.

33. **"Time Element"** – a general term referring to those coverages that protect against indirect losses resulting from damage to described property, where the amount of such losses depends upon the length of time over which such losses accumulate.

34. **"Vehicle"** - as respects the Equipment Breakdown Additional Coverage only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

    However, any property that is stationary, permanently installed at an Insured Location and that receives electrical power from an external power source will not be considered a "vehicle".

# APPENDIX A

## PACIFIC NORTHWEST SEISMIC ZONE

**Oregon counties of –**    Benton, Clackamas, Clatsop, Columbia, Coos, Curry, Douglas, Jackson, Josephine, Klamath, Lake, Lane, Lincoln, Linn, Marion, Multnomah, Polk, Tillamook, Washington, Yamhill

**Washington counties of –**    Chelan, Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Kittitas, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Skamania, Snohomish, Thurston, Wahkiakum, Whatcom

## APPENDIX B

## NEW MADRID SEISMIC ZONE

**Arkansas, counties of –**   Arkansas, Ashley, Chicot, Clay, Craighead, Crittenden, Cross, Desha, Drew, Fulton, Grant, Greene, Independence, Izard, Jackson, Jefferson, Lawrence, Lee, Lincoln, Lonoke, Mississippi, Monroe, Phillips, Poinsett, Prairie, Pulaski, Randolph, Saline, Sharp, St. Francis, White, Woodruff

**Illinois, counties of –**   Alexander, Bond, Calhoun, Christian, Clark, Clay, Clinton, Coles, Crawford, Cumberland, Edwards, Effingham, Fayette, Franklin, Gallatin, Greene, Hamilton, Hardin, Jackson, Jasper, Jefferson, Jersey, Johnson, Lawrence, Macoupin, Madison, Marion, Massac, Monroe, Montgomery, Morgan, Perry, Pike, Pope, Pulaski, Randolph, Richland, Saline, Sangamon, Scott, Shelby, St. Clair, Union, Wabash, Washington, Wayne, White, Williamson

**Indiana, counties of –**   Crawford, Daviess, Dubois, Gibson, Greene, Knox, Lawrence, Martin, Orange, Perry, Pike, Posey, Spencer, Sullivan, Vanderburgh, Warrick

**Kentucky, counties of –**   Ballard, Breckinridge, Butter, Caldwell, Calloway, Carlisle, Christian, Crittenden, Daviess, Fulton, Graves, Hancock, Henderson, Hickman, Hopkins, Livingston, Logan, Lyon, Marshall, McCracken, McLean, Muhlenberg, Ohio, Simpson, Todd, Trigg, Union, Warren, Webster

**Mississippi, counties of –**   Alcorn, Benton, Bolivar, Calhoun, Carroll, Chickasaw, Choctaw, Clay, Coahoma, De Soto, Grenada, Holmes, Humphreys, Issaquena, Itawamba, Lafayette, Lee, Leflore, Lowndes, Marshall, Monroe, Montgomery, Oktibbeha, Panola, Pontotoc, Prentiss, Quitman, Sharkey, Sunflower, Tallahatchie, Tate, Tippah, Tishomingo, Tunica, Union, Warren, Washington, Webster, Yalobusha, Yazoo

**Missouri, counties of –**   Audrain, Bollinger, Butler, Callaway, Cape Girardeau, Carter, Cole, Crawford, Dent, Dunklin, Franklin, Gasconade, Howell, Iron, Jefferson, Lincoln, Madison, Maries, Marion, Miller, Mississippi, Montgomery, New Madrid, Oregon, Osage, Pemiscot, Perry, Phelps, Pike, Pulaski, Rails, Reynolds, Ripley, Scott, Shannon, St. Charles, St. Francois, St. Louis, St. Louis City, St. Genevieve, Stoddard, Texas, Warren, Washington, Wayne

**Tennessee, counties of –**   Benton, Carroll, Cheatham, Chester, Crockett, Decatur, Dickson, Dyer, Fayette, Gibson, Hardeman, Hardin, Haywood, Henderson, Henry, Hickman, Houston, Humphreys, Lake, Lauderdale, Lawrence, Lewis, Madison, McNairy, Montgomery, Obion, Perry, Robertson, Shelby, Stewart, Tipton, Wayne, Weakley

## APPENDIX C

## TIER I AND TIER II WIND ZONES

**Tier I Wind Zone Counties:**

| | |
|---|---|
| **Alabama** | Counties of Baldwin, Mobile |
| **Florida** | Entire State |
| **Georgia** | Counties of Bryan, Camden, Chatham, Glynn, Liberty, McIntosh |
| **Hawaii** | Entire State (all Islands) |
| **Louisiana** | Parishes of Ascension, Assumption, Calcasieu, Cameron, Iberia, Jefferson, Lafourche, Livingston, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Martin (South), St. Martin (North), St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion, Washington |
| **Mississippi** | Counties of George, Hancock, Harrison, Jackson, Pearl River, Stone |
| **North Carolina** | Counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrell, Washington |
| **Puerto Rico** | Entire Territory |
| **South Carolina** | Counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Hampton, Horry, Jasper |
| **Texas** | Counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kennedy, Kleberg, Liberty, Matagorda, Newton, Nueces, Orange, Refugio, San Patricio, Victory, Willacy |
| **US Virgin Islands** | Entire Territory, including St. Croix, St. John, St. Thomas |
| **Virginia** | Counties of Accomack, Gloucester, Hampton City, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, York; Independent Cities of Chesapeake, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach, Williamsburg. |

**Tier II Wind Zone Counties:**

| | |
|---|---|
| **Georgia** | Counties of Brantley, Charlton, Effingham, Long, Wayne |
| **Louisiana** | Parishes of Acadia, East Baton Rouge, Iberville, Jefferson Davis, Lafayette, West Baton Rouge |
| **North Carolina** | Counties of Bladen, Duplin, Gates, Hertford, Lenoir, Martin, Pitt |
| **South Carolina** | Counties of Florence, Marion, Williamsburg |
| **Texas** | Counties of Bee, Brooks, Fort Bend, Goliad, Hardin, Hidalgo, Jasper, Jim Wells, Liberty, Newton, Victoria, Wharton |

*This Endorsement Changes the Policy. Please Read It Carefully.*

## ENABLING ENDORSEMENT

This endorsement modifies coverage provided under the following:

COMPREHENSIVE ALL RISK FORM

The provisions of any forms or endorsements that make reference to the COMMERCIAL PROPERTY COVERAGE PART, BUILDING AND PERSONAL PROPERTY COVERAGE FORM or the CAUSES OF LOSS SPECIAL FORM are applicable to the COMPREHENSIVE ALL RISK FORM.

**This endorsement forms a part of**
**Policy Number:** HPR40033H0             **Effective Date:** 05-01-2019
**Insured:** CENTRAL GLASS AMERICA, INC.

**SHPR 01 113 (0115)**       Includes copyrighted material of Insurance Services Office, Inc., with its permission.       Page 1 of 1

*This Endorsement Changes the Policy. Please Read It Carefully.*

## LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

COMPREHENSIVE ALL RISK FORM

### SCHEDULE

| Location Number: | 010 | Building Number: | 001 | Applicable Clause (Enter B., C., D., or E.): | E |
|---|---|---|---|---|---|
| **Description Of Property:** | 7200 CENTENNIAL BLVD., NASHVILLE, TN | | | | |
| **Loss Payee Name:** | DCT/SFP COMMERCE FARMS; DCT INDUSTRIAL OPERATING PARTNERSHIP LP | | | | |
| **Loss Payee Address:** | DCT PROPERTY MGMT., LLC & CASSIDY TURLEY MIDWEST 340, BRIDGESTONE PARKWAY LEBANON, TN 37090 | | | | |
| **Location Number:** | ALL | **Building Number:** | ALL | Applicable Clause (Enter B., C., D., or E.): | B,C |
| **Description Of Property:** | BLANKET AS REQUIRED BY WRITTEN CONTRACT | | | | |
| **Loss Payee Name:** | | | | | |
| **Loss Payee Address:** | | | | | |
| **Location Number:** | | **Building Number:** | | Applicable Clause (Enter B., C., D., or E.): | |
| **Description Of Property:** | | | | | |
| **Loss Payee Name:** | | | | | |
| **Loss Payee Address:** | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

A.   Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the Loss Adjustment/Payable Condition, as indicated in the Declarations or in the Schedule above:

SHPR 02 002 (12/2011)                                                                                      **Page 1 of 4**

**B.** **Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**C.** **Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgage holder or trustee, whose interest in Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   c. If we deny your claim because of your acts or because you have failed to comply with the terms of the policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      (1) Pays any premium due under this policy at our request if you have failed to do so;

      (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

      (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this policy will then apply directly to the Loss Payee.

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 113 of 174 PageID #: 117

      **d.**    If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

          **(1)**    The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

          **(2)**    The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

          At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

   **3.**    If we cancel this policy, we will give written notice to the Loss Payee at least:

      **a.**    10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

      **b.**    30 days before the effective date of cancellation if we cancel for any other reason.

   **4.**    If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D.**    **Contract Of Sale Clause**

   **1.**    The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

   **2.**    For Covered Property in which both you and the Loss Payee have an insurable interest we will:

      **a.**    Adjust losses with you; and

      **b.**    Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

   **3.**    The following is added to the **Other Insurance** Condition:

      For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E.**    **Building Owner Loss Payable Clause**

   **1.**    The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 114 of 174 PageID #: 118

2.   We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3.   We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

This endorsement forms a part of Policy Number:   HPR40033H0                    Effective date:   05/01/2019
Insured:   CENTRAL GLASS AMERICA, INC.

*This Endorsement Changes the Policy. Please Read It Carefully.*

## ORDINARY PAYROLL LIMITATION OR EXCLUSION

This endorsement modifies coverage provided under the following:

COMPREHENSIVE ALL RISK FORM

### SCHEDULE

| |
|---|
| Number Of Days (If Ordinary Payroll Coverage is provided): |
| 90 |
| Additional Exemptions - Job Classifications(s) Or Employee(s): |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.**   Gross Earnings includes ordinary payroll expenses only up to the number of days shown in this Schedule. The number of days need not be consecutive but must fall within the "period of restoration" or extension of the "period of restoration" if an extension is provided under this policy. **If the Schedule does not indicate number of days, then ordinary payroll expenses are excluded.**

**B.**   In determining the operating expenses for the policy year, payroll expenses will not include ordinary payroll expenses, except for ordinary payroll expenses incurred during the number of days shown in the Schedule. If the ordinary payroll expenses for the policy year vary during the year, the period of greatest ordinary payroll expenses will be used.

**C.**   Ordinary payroll expenses means payroll expenses for all your employees except:

   **1.**   Officers;

   **2.**   Executives;

   **3.**   Department managers;

   **4.**   Employees under contract; and

   **5.**   Additional Exemptions, shown in the Schedule as Job Classifications or Employees.

   Ordinary payroll expenses include:

   **(1)**   Payroll;

SHPR 02 003 (12/2011)                                                                                           Page 1 of 2

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 116 of 174 PageID #: 120

(2)     Employee benefits, if directly related to payroll;

(3)     FICA payments you pay;

(4)     Union dues you pay; and

(5)     Workers compensation premiums.

This endorsement forms a part of Policy Number:     HPR40033H0          Effective date:   05/01/2019
Insured:    CENTRAL GLASS AMERICA, INC.

**SHPR 02 003 (12/2011)**                                                           **Page 2 of 2**

Case 3:24-cv-00695     Document 1-1     Filed 06/05/24     Page 117 of 174 PageID #: 121

*This Endorsement Changes the Policy. Please Read It Carefully.*

## STANDARD FIRE POLICY PROVISIONS

This endorsement modifies insurance provided under the following:

COMPREHENSIVE ALL RISK FORM

The provisions of the Standard Fire Policy are stated below. <u>State law requires that they be attached to all policies.</u> If any conditions of this form are construed to be more liberal than any other policy conditions relating to the perils of fire, lightning or removal, the conditions of this form will apply.

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO, AND OF THE PREMIUM SPECIFIED in the Declarations or in endorsements made a part hereof, this Company, for the term of *years specified in the Declarations* from *inception date shown in the Declarations* At Noon (Standard Time) to *expiration date shown in the Declarations* At Noon (Standard Time) at location of property involved, to an amount not exceeding the limit of liability specified in the Declarations, does insure *the Insured named in the Declarations* and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described in the Declarations while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

| | | |
|---|---|---|
| 1 | **Concealment,** | This entire policy shall be void if, whether |
| 2 | **fraud.** | before or after a loss, the insured has wil- |
| 3 | | fully concealed or misrepresented any ma- |
| 4 | terial fact or circumstance concerning this insurance or the | |
| 5 | subject thereof, or the interest of the insured therein, or in case | |
| 6 | of any fraud or false swearing by the insured relating thereto. | |
| 7 | **Uninsurable** | This policy shall not cover accounts, bills, |
| 8 | **and** | currency, deeds, evidences of debt, money or |
| 9 | **excepted property.** | securities; nor, unless specifically named |
| 10 | | hereon in writing, bullion or manuscripts. |
| 11 | **Perils not** | This Company shall not be liable for loss by |
| 12 | **included.** | fire or other perils insured against in this |
| 13 | | policy caused, directly or indirectly, by: (a) |

14  enemy attack by armed forces, including action taken by mili-
15  tary, naval or air forces in resisting an actual or an immediately
16  impending enemy attack; (b) invasion; (c) insurrection; (d)
17  rebellion; (e) revolution; (f) civil war; (g) usurped power; (h)
18  order of any civil authority except acts of destruction at the time
19  of and for the purpose of preventing the spread of fire, provided
20  that such fire did not originate from any of the perils excluded
21  by this policy; (i) neglect of the insured to use all reasonable
22  means to save and preserve the property at and after a loss, or
23  when the property is endangered by fire in neighboring prem-
24  ises; (j) nor shall this Company be liable for loss by theft.
25  **Other insurance.**          Other insurance may be prohibited or the
26                               amount of insurance may be limited by en-
27  dorsement attached hereto.
28  **Conditions suspending or restricting insurance. Unless other-**
29  **wise provided in writing added hereto this Company shall not**
30  **be liable for loss occurring**
31  (a) while the hazard is increased by any means within the con-
32  trol or knowledge of the insured; or
33  (b) while a described building, whether intended for occupancy
34  by owner or tenant, is vacant or unoccupied beyond a period of
35  sixty consecutive days; or
36  (c) as a result of explosion or riot, unless fire ensue, and in
37  that event for loss by fire only.
38  **Other perils**             Any other peril to be insured against or sub-
39  **or subjects.**             ject of insurance to be covered in this policy
40                               shall be by endorsement in writing hereon or
41  added hereto.
42  **Added provisions.**        The extent of the application of insurance
43                               under this policy and of the contribution to
44  be made by this Company in case of loss, and any other pro-
45  vision or agreement not inconsistent with the provisions of this
46  policy, may be provided for in writing added hereto, but no pro-
47  vision may be waived except such as by the terms of this policy
48  is subject to change.
49  **Waiver**                   No permission affecting this insurance shall
50  **provisions.**              exist, or waiver of any provision be valid,
51                               unless granted herein or expressed in writing
52  added hereto. No provision, stipulation or forfeiture shall be
53  held to be waived by any requirement or proceeding on the part
54  of this Company relating to appraisal or to any examination
55  provided for herein.
56  **Cancellation**             This policy shall be cancelled at any time
57  **of policy.**               at the request of the insured, in which case
58                               this Company shall, upon demand and sur-
59  render of this policy, refund the excess of paid premium above
60  the customary short rates for the expired time. This pol-
61  icy may be cancelled at any time by this Company by giving
62  to the insured a five days' written notice of cancellation with
63  or without tender of the excess of paid premium above the pro
64  rata premium for the expired time, which excess, if not ten-
65  dered, shall be refunded on demand. Notice of cancellation shall
66  state that excess premium (if not tendered) will be re-
67  funded on demand.

SHPR 02 013 (12/2011)          Includes copyrighted material of Insurance Services Office,          Page 2 of 4
                                           Inc., with its permission.

Case 3:24-cv-00695     Document 1-1     Filed 06/05/24     Page 119 of 174 PageID #: 123

| 68 | **Mortgagee** | If loss hereunder is made payable, in whole |
|---|---|---|
| 69 | **interests and** | or in part, to a designated mortgagee not |
| 70 | **obligations.** | named herein as the insured, such interest in |
| 71 | | this policy may be cancelled by giving to such |
| 72 | | mortgagee a ten days' written notice of can- |

73 cellation.
74 If the insured fails to render proof of loss such mortgagee, upon
75 notice, shall render proof of loss in the form herein specified
76 within sixty (60) days thereafter and shall be subject to the pro-
77 visions hereof relating to appraisal and time of payment and of
78 bringing suit. If this Company shall claim that no liability ex-
79 isted as to the mortgagor or owner, it shall, to the extent of pay-
80 ment of loss to the mortgagee, be subrogated to all the mort-
81 gagee's rights of recovery, but without impairing mortgagee's
82 right to sue; or it may pay off the mortgage debt and require
83 an assignment thereof and of the mortgage. Other provisions
84 relating to the interests and obligations of such mortgagee may
85 be added hereto by agreement in writing.

| 86 | **Pro rata liability.** | This Company shall not be liable for a greater |
|---|---|---|
| 87 | | proportion of any loss than the amount |

88 hereby insured shall bear to the whole insurance covering the
89 property against the peril involved, whether collectible or not.

| 90 | **Requirements in** | The insured shall give immediate written |
|---|---|---|
| 91 | **case loss occurs.** | notice to this Company of any loss, protect |
| 92 | | the property from further damage, forthwith |

93 separate the damaged and undamaged personal property, put
94 it in the best possible order, furnish a complete inventory of
95 the destroyed, damaged and undamaged property, showing in
96 detail quantities, costs, actual cash value and amount of loss
97 claimed; **and within sixty days after the loss, unless such time**
98 **is extended in writing by this Company, the insured shall render**
99 **to this Company a proof of loss,** signed and sworn to by the
100 insured, stating the knowledge and belief of the insured as to
101 the following: the time and origin of the loss, the interest of the
102 insured and of all others in the property, the actual cash value of
103 each item thereof and the amount of loss thereto, all encum-
104 brances thereon, all other contracts of insurance, whether valid
105 or not, covering any of said property, any changes in the title,
106 use, occupation, location, possession or exposures of said prop-
107 erty since the issuing of this policy, by whom and for what
108 purpose any building herein described and the several parts
109 thereof were occupied at the time of loss and whether or not it
110 then stood on leased ground, and shall furnish a copy of all the
111 descriptions and schedules in all policies and, if required, verified
112 plans and specifications of any building, fixtures or machinery
113 destroyed or damaged. The insured, as often as may be reason-
114 ably required, shall exhibit to any person designated by the
115 Company all that remains of any property herein described, and
116 submit to examinations under oath by any person named by this
117 Company, and subscribe the same; and, as often as may be
118 reasonably required, shall produce for examination all books of
119 accounts, bills, invoices and other vouchers, or certified copies
120 thereof if originals be lost, at such reasonable time and place as
121 may be designated by this Company or its representative, and
122 shall permit extracts and copies thereof to be made.

| | | |
|---|---|---|
| 123 | **Appraisal.** | In case the insured and this Company shall |
| 124 | | fail to agree as to the actual cash value or |
| 125 | the amount of loss, then, on the written demand of either, each | |
| 126 | shall select a competent and disinterested appraiser and notify | |
| 127 | the other of the appraiser selected within twenty days of such | |
| 128 | demand. The appraisers shall first select a competent and dis- | |
| 129 | interested umpire; and failing for fifteen days to agree upon | |
| 130 | such umpire, then, on request of the insured or this Company, | |
| 131 | such umpire shall be selected by a judge of a court of record in | |
| 132 | the state in which the property covered is located. The ap- | |
| 133 | praisers shall then appraise the loss, stating separately actual | |
| 134 | cash value and loss to each item; and, failing to agree, shall | |
| 135 | submit their differences, only, to the umpire. An award in writ- | |
| 136 | ing, so itemized, of any two when filed with this Company shall | |
| 137 | determine the amount of actual cash value and loss. Each | |
| 138 | appraiser shall be paid by the party selecting him and the ex- | |
| 139 | penses of appraisal and umpire shall be paid by the parties | |
| 140 | equally. | |

| | | |
|---|---|---|
| 141 | **Company's** | It shall be optional with this Company to |
| 142 | **options.** | take all, or any part, of the property at the |
| 143 | | agreed or appraised value, and also to re- |
| 144 | pair, rebuild or replace the property destroyed or damaged with | |
| 145 | other of like kind and quality within a reasonable time, on giv- | |
| 146 | ing notice of its intention so to do within thirty days after the | |
| 147 | receipt of the proof of loss herein required. | |

| | | |
|---|---|---|
| 148 | **Abandonment.** | There can be no abandonment to this Com- |
| 149 | | pany of any property. |

| | | |
|---|---|---|
| 150 | **When loss** | The amount of a loss for which this Company |
| 151 | **payable.** | may be liable shall be payable sixty days |
| 152 | | after proof of loss, as herein provided, is |
| 153 | received by this Company and ascertainment of the loss is made | |
| 154 | either by agreement between the insured and this Company ex- | |
| 155 | pressed in writing or by the filing with this Company of an | |
| 156 | award as herein provided. | |

| | | |
|---|---|---|
| 157 | **Suit.** | No suit or action on this policy for the recov- |
| 158 | | ery of any claim shall be sustainable in any |
| 159 | court of law or equity unless all the requirements of this policy | |
| 160 | shall have been complied with, and unless commenced within | |
| 161 | twelve months next after inception of the loss. | |

| | | |
|---|---|---|
| 162 | **Subrogation.** | This Company may require from the insured |
| 163 | | an assignment of all right of recovery against |
| 164 | any party for loss to the extent that payment therefore is made | |
| 165 | by this Company. | |



SOMPO
INTERNATIONAL

Policy Number
HPR40033H0

SCHEDULE OF DEPENDENT LOCATIONS

## Sompo America Insurance Company

Named Insured  CENTRAL GLASS AMERICA, INC.

Effective Date: 05-01-2019
12:01 A.M., Standard Time

Agent Name   WILLIS OF TENNESSEE, INC.

Agent No.    A20TN

**This Schedule forms a part of Policy Number:** HPR40033H0

| Location Number | Name, Address, and Occupancy of Dependent Location |
|---|---|
| | THE SCHEDULED DEPENDENT LOCATION COVERAGE SUBLIMIT IS ONLY APPLICABLE IF THE NAME AND ADDRESS OF THE DEPENDENT |
| | LOCATION(S) IS SCHEDULED AND ON FILE WITH SOMPO AMERICA INSURANCE COMPANY PRIOR TO LOSS. |
| | NO SCHEDULE IS ON FILE AT TIME OF POLICY ISSUANCE. |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

### Type of Location (check if applicable)

| Location No. | Contributing | Recipient | Leader | Manufacturing |
|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |

SHPR DS 003 (12/2011)

Page 1 of 1

*This Endorsement Changes the Policy. Please Read It Carefully.*

## ARIZONA CHANGES

This endorsement modifies coverage provided under the following:

**COMPREHENSIVE ALL RISK FORM**

**A.**     The following exclusion and related provisions are added to item **IV – Exclusions** of section **B.** Property Damage Coverage:

    **1.**     We will not pay for loss or damage arising out of any act committed:

        **a.**     By or at the direction of any insured; and

        **b.**     With the intent to cause a loss.

    **2.**     However, this exclusion will not apply to deny an insured's claim for an otherwise covered property loss under this policy if such loss is caused by an act of domestic violence by another insured under this policy and the insured making this claim:

        **a.**     Did not cooperate in or contribute to the creation of the loss; and

        **b.**     Cooperates in any investigation relating to the loss.

    We may apply reasonable standards of proof for such claims.

    **3.**     If we pay a claim pursuant to section **IV. B**, our payment to the insured is limited to that insured's insurable interest in the property as reduced by any payments we first made to a mortgagee or other party with a secured interest in the property. In no event will we pay more than the Limit of Insurance.

**B.**     The following is added to the **Transfer Of Rights And Duties** General Policy Condition:

    If we pay an insured for a loss described in Paragraph **A.2.**, the rights of the insured to recover damages from the perpetrator of domestic violence are transferred to us to the extent of our payment. Following the loss, the insured may not waive such rights to recover against the perpetrator of the domestic violence.

**C.**     The **Concealment, Misrepresentation Or Fraud** General Policy Condition is replaced by the following:

    We will not pay for any loss or damage in any case involving misrepresentations, omissions, concealment of facts or incorrect statements:

    **A.**     That are fraudulent;

**SHPR 01 006**
**(01-2011 ed.)**
      Includes copyrighted material of Insurance Services Office, Inc., with its permission.
      **Page 1 of 2**

**B.** That are material either to the acceptance of the risk, or to the hazard assumed by us; and

**C.** Where, if the true facts had been known to us as required either by the application for the policy or otherwise, we in good faith would either:

    **1.** Not have issued the policy;

    **2.** Not have issued the policy in as large an amount; or

    **3.** Not have provided coverage with respect to the hazard resulting in the loss.

This endorsement forms a part of Policy Number:   HPR40033H0        Effective date:   05/01/2019
Insured:   CENTRAL GLASS AMERICA, INC.

**SHPR 01 006**        Includes copyrighted material of Insurance Services Office, Inc., with its        **Page 2 of 2**
**(01-2011 ed.)**                      permission.

*This Endorsement Changes the Policy. Please Read It Carefully.*

## ARIZONA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies coverage provided under the following:

**COMPREHENSIVE ALL RISK FORM**

**A.**    The following is added to the **Cancellation And Non-Renewal** General Policy Condition (and applies except in situations where **B.**, below, applies):

    **H.**    **Cancellation Of Policies In Effect For 60 Days Or More**

        If this Policy has been in effect for 60 days or more, or if this Policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

        **1.**    Nonpayment of premium;

        **2.**    Your conviction of a crime arising out of acts increasing the hazard insured against;

        **3.**    Acts or omissions by you or your representative constituting fraud or material misrepresentation in the procurement of this Policy, in continuing this Policy or in presenting a claim under this Policy;

        **4.**    Substantial change in the risk assumed, except to the extent that we should have reasonably foreseen the change or contemplated the risk in writing the contract;

        **5.**    Substantial breach of contractual duties or conditions;

        **6.**    Loss of reinsurance applicable to the risk insured against resulting from termination of treaty or facultative reinsurance initiated by our reinsurer or reinsurers;

        **7.**    Determination by the Director of Insurance that the continuation of the Policy would place us in violation of the insurance laws of this state or would jeopardize our solvency; or

        **8.**    Acts or omissions by you or your representative which materially increase the hazard insured against.

        If we cancel this Policy based on one or more of the above reasons, we will mail by certified mail or by first-class mail using Intelligent Mail barcode or another similar tracking method used or approved by the United States Postal Service to the first Named Insured, and mail to the agent, if any, written notice of cancellation stating the reasons for cancellation. We will mail this notice to the last mailing addresses known to us, at least:

1. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

2. 60 days before the effective date of cancellation if we cancel for any of the other reasons.

**B.** If this Policy provides coverage for:

1. Real property which is used predominantly for residential purposes and consists of one through four dwelling units; and/or

2. Personal property (except business or farm personal property) of a person residing in such real property;

the following provisions apply (instead of those provided in Item **A.** above) with respect to cancellation of such coverage:

If this Policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

a. Nonpayment of premium;

b. Your conviction of a crime arising out of acts increasing the hazard insured against;

c. Acts or omissions by you or your representative constituting fraud or material misrepresentation in obtaining the Policy, continuing the Policy, or presenting a claim under the Policy;

d. Discovery of grossly negligent acts or omissions by you substantially increasing any of the hazards insured against;

e. Substantial change in the risk assumed by us, since the Policy was issued, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

f. A determination by the Director of Insurance that the continuation of the Policy would place us in violation of the insurance laws of this state; or

g. Your failure to take reasonable steps to eliminate or reduce any conditions in or on the insured premises which contributed to a loss in the past or will increase the probability of future losses.

If we cancel this Policy based on one or more of these reasons, we will mail written notice of cancellation, stating the reason(s) for cancellation, to the first Named Insured. We will mail this notice to the last mailing address known to us, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

(2) 30 days before the effective date of cancellation, if we cancel for any of the other reasons.

**C.** Item **C** of the **Cancellation And Non-Renewal** General Policy Condition is replaced by the following (and applies except in situations where **D.**, below, applies):

**C. NONRENEWAL**

1. If we elect not to renew this Policy, we will mail by certified mail or by first-class mail using Intelligent Mail barcode or another similar tracking method used or approved by the United States Postal Service to the first Named Insured, and mail to the agent, if any, written notice of nonrenewal. We will mail this notice to the last mailing addresses known to us at least 60 days prior to the expiration of this policy.

2. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. If either one of the following occurs, we are not required to provide written notice of nonrenewal:

   a. We or a company within the same insurance group has offered to issue a renewal policy; or

   b. You have obtained replacement coverage or agreed in writing to do so.

4. If written notice of nonrenewal is mailed less than 60 days prior to expiration of this Policy and neither 3.a. nor 3.b. applies, the coverage shall remain in effect until 45 days after the notice is mailed. Earned premium of any period of coverage that extends beyond the expiration date of this Policy shall be considered pro rata based upon the previous year's rate.

**D.** If this Policy provides coverage for:

1. Real property which is used predominantly for residential purposes and consists of one through four dwelling units; and/or

2. Personal property (except business or farm personal property) of a person residing in such real property;

the following provisions apply (instead of those provided in Item **C.** above) with respect to nonrenewal of such coverage:

1. If we elect not to renew, we will mail written notice of nonrenewal, to the first Named Insured. We will mail this notice to the last mailing address known to us, at least 30 days before the end of the policy period. Proof of mailing will be sufficient proof of notice.

2. If either one of the following occurs, we are not required to provide notice of nonrenewal:

   a. You have agreed to nonrenewal; or

   b. You have accepted replacement coverage.

3. If our nonrenewal is based on the condition of the premises, you will be given 30 days' notice to remedy the identified conditions. If the identified conditions are remedied, coverage will be renewed. If the identified conditions are not remedied

to our satisfaction, you will be given an additional 30 days, upon payment of premium, to correct the defective condition.

**E.**    The following Condition is added:

**RENEWAL**

1.    If we elect to renew this Policy and the renewal is subject to any of the following:

    **a.**    Increase in premium;

    **b.**    Change in deductible;

    **c.**    Reduction in limits of insurance; or

    **d.**    Substantial reduction in coverage;

we will mail or deliver written notice of the change(s) to the first Named Insured, at the last mailing address known to us, at least 60 days before the anniversary or expiration date of the Policy.

2.    If renewal is subject to any condition described in **1.a.** through **1.d.** above, and we fail to provide notice 60 days before the anniversary or expiration date of this Policy, the following procedures apply:

    **a.**    The present policy will remain in effect until the earlier of the following:

        **(1)**    60 days after the date of mailing or delivery of the notice; or

        **(2)**    The effective date of replacement coverage obtained by the first Named Insured.

    **b.**    If the first Named Insured elects not to renew, any earned premium for the period of extension of the terminated policy will be calculated pro rata at the lower of the following rates:

        **(1)**    The rates applicable to the terminated policy; or

        **(2)**    The rates presently in effect.

    **c.**    If the first Named Insured accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

**This endorsement forms a part of**
**Policy Number:** HPR40033H0                    **Effective Date:** 05-01-2019
**Insured:** CENTRAL GLASS AMERICA, INC.

**SHPR 01 007 (0315)**         Includes copyrighted material of Insurance Services         **Page 4 of 4**
Office, Inc., with its permission.

*This Endorsement Changes the Policy. Please Read It Carefully.*

# GEORGIA CHANGES

This endorsement modifies coverage provided under the following:

**COMPREHENSIVE ALL RISK FORM**

**A.** The following exclusion and related provisions are added to item **IV – Exclusions** of section **B.** Property Damage Coverage:

    **1.** We will not pay for loss or damage arising out of any act committed:

        **a.** By or at the direction of any insured; and

        **b.** With the intent to cause a loss.

    **2.** However, this exclusion will not apply to deny coverage to an innocent co-insured, provided the loss:

        **a.** Is otherwise covered under this policy; and

        **b.** Arose out of an act of family violence by an insured against whom a family violence complaint is brought for such act.

    **3.** If we pay a claim pursuant to section **IV. B.,** our payment to the insured is limited to that insured's legal interest in the property less any payments we first made to a mortgageholder or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**B.** The following explanation is added with respect to application of the **Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria** and the **Limited Coverage** of the same title:

With respect to the portion of Covered Property that would still have required repair or replacement had there been no "fungus", wet or dry rot or bacteria, this Exclusion and Limited Coverage will not serve to limit the amount of recovery for such repair or replacement.

However, the Exclusion and Limited Coverage shall continue to apply to:

    **1.** The cost to treat, contain, remove or dispose of "fungus", wet rot, dry rot or bacteria beyond that which is required to repair or replace Covered Property;

    **2.** The cost of testing as described in the Limited Coverage; and

    **3.** Any increase in loss under Business Income and/or Extra Expense Forms resulting from **1.** or **2.** above.

SHPR 01 019
(01-2011 ed.)
    Includes copyrighted material of Insurance Services Office, Inc., with its permission.
    Page 1 of 2

Regardless of whether the Exclusion and Limited Coverage apply to a loss, the Limit of Insurance on Covered Property is not increased. The maximum recoverable, for the total of the cost to repair or replace Covered Property and any additional covered cost to treat, contain remove, dispose of or test for "fungus", wet or dry rot or bacteria, is the applicable Limit of Insurance on the affected Covered Property.

This endorsement forms a part of Policy Number:    HPR40033H0              Effective date:    05/01/2019
Insured:   CENTRAL GLASS AMERICA, INC.

**SHPR 01 019**          Includes copyrighted material of Insurance Services Office, Inc.,          **Page 2 of 2**
**(01-2011 ed.)**                          with its permission.

*This Endorsement Changes the Policy. Please Read It Carefully.*

## GEORGIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies coverage provided under the following:

**COMPREHENSIVE ALL RISK FORM**

The following changes are made to the **Cancellation and Non-Renewal** General Policy Condition:

**A.**    Paragraph **A.** is replaced by the following:

    **A.**    The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

        **1.**    If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

        **2.**    If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

        Our notice will state the effective date of cancellation, which will be the later of the following:

           **a.**    10 days from the date of mailing or delivering our notice; or

           **b.**    The effective date of cancellation stated in the first Named Insured's notice to us.

**B.**    Paragraph **F.** is replaced by the following:

    **F.**    **Premium Refund**

        **1.**    If this policy is cancelled, we will send the first Named Insured any premium refund due.

        **2.**    If we cancel, the refund will be pro rata, except as provided in **3.** below.

        **3.**    If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata.

Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

4. If the first Named Insured cancels, the refund may be less than pro rata.

5. The cancellation will be effective even if we have not made or offered a refund.

C. Paragraph **C.** is replaced by the following:

If we decide to:

1. Cancel or nonrenew this policy; or

2. Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

3. Change any policy provision which would limit or restrict coverage;

then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** or **E.** below, we will mail or deliver notice at least:

1. 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

2. 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

3. 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

D. The following provisions apply to insurance covering residential real property only provided under the Comprehensive All Risk Form if the named insured is a natural person.

With respect to such insurance, the following is added and supersedes any provisions to the contrary except as applicable as described in Paragraph **E.**:

1. When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

2. When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons:

   a. Nonpayment of premium, whether payable to us or to our agent;

Case 3:24-cv-00695      Document 1-1      Filed 06/05/24      Page 132 of 174 PageID #: 136

      **b.**     Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

      **c.**     Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

      **d.**     Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

     We may cancel by providing notice to the first Named Insured at least:

      **(1)**    10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      **(2)**    45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b., c.** or **d.** above.

**E.**    With respect to a policy that is written to permit an audit, the following is added to the Cancellation General Policy Condition:

     If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

     **1.** We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing for delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

     **2.** If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery wit return receipt requested.

---

This endorsement forms a part of Policy Number:    HPR40033H0         Effective date:   05/01/2019
Insured:   CENTRAL GLASS AMERICA, INC.

**SHPR 01 020 (0315)**       Includes copyrighted material of Insurance Services Office,       **Page 3 of 3**
Inc., with its permission.

*This Endorsement Changes the Policy. Please Read It Carefully.*

# INDIANA CHANGES

This endorsement modifies coverage provided under the following:

COMPREHENSIVE ALL RISK FORM

**A.** The **Transfer Of Rights And Duties** General Policy Condition is replaced by the following:

**TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. Our right to recover damages from another may be enforced even if the person or organization to or for whom we make payment has not been fully compensated for damages.

The person or organization to or for whom we make payment must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

    **1.** Prior to a loss to your Covered Property or Covered Income.

    **2.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

        **a.** Someone insured by this insurance;

        **b.** A business firm:

            **(1)** Owned or controlled by you; or
            **(2)** That owns or controls you; or

        **c.** Your tenant.

This will not restrict your insurance.

**B.** **The Concealment, Misrepresentation or Fraud** General Policy Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case of:

    **1.** Concealment or misrepresentation of a material fact or

    **2.** Fraud committed by an insured at any time and relating to a claim under this policy.

This endorsement forms a part of
**Policy Number:** HPR40033H0        **Effective Date:** 05-01-2019
**Insured:** CENTRAL GLASS AMERICA, INC.

**SHPR 01 026 (1014)**        Includes copyrighted material of
Insurance Services Office, Inc., with
its permission.        Page 1 of 1

*This Endorsement Changes the Policy. Please Read It Carefully.*

## INDIANA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies coverage provided under the following:

**COMPREHENSIVE ALL RISK FORM**

**A.** Paragraph **B.** of the **Cancellation And Non-Renewal** General Policy Condition is replaced by the following:

**B.** **Cancellation Of Policies In Effect**

    **1.** **90 Days Or Less**

        If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

        **b.** 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

        **c.** 30 days before the effective date of cancellation if we cancel for any other reason.

    **2.** **More Than 90 Days**

        If this policy has been in effect for more than 90 days, or is a renewal of a policy we issued, we may cancel this policy, only for one or more of the reasons listed below, by mailing or delivering to the first Named Insured written notice of cancellation at least:

        **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

        **b.** 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

        **c.** 45 days before the effective date of cancellation if:

            **(1)** There has been a substantial change in the scale of risk covered by this policy;

            **(2)** Reinsurance of the risk associated with this policy has been cancelled; or

            **(3)** You have failed to comply with reasonable safety recommendations.

**SHPR 01 027**
**(01-2011 ed.)**

Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

**Page 1 of 2**

**B.** Paragraph **C.** of the **Cancellation and Non-Renewal** General Policy Condition is replaced by the following:

**C.**    **NONRENEWAL**

    **1.**    If we elect not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days before:

        **a.**    The expiration date of this policy, if the policy is written for a term of one year or less; or

        **b.**    The anniversary date of this policy, if the policy is written for a term of more than one year.

    **2.**    We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

This endorsement forms a part of Policy Number:    HPR40033H0          Effective date:   05/01/2019
Insured:   CENTRAL GLASS AMERICA, INC.

SHPR 01 027          Includes copyrighted material of Insurance Services Office, Inc.,          **Page 2 of 2**
**(01-2011 ed.)**                         with its permission.

*This Endorsement Changes the Policy. Please Read It Carefully.*

## MICHIGAN CHANGES

This endorsement modifies coverage provided under the following:

**COMPREHENSIVE ALL RISK FORM**

**A.**   Paragraphs **A., B., D.** and **F.** of the **Cancellation and Non-Renewal** General Policy Condition is replaced by the following:

    **A.**   The first Named Insured shown in the Declarations may cancel this policy by giving us or our authorized agent notice of cancellation.

    **B.**   We may cancel this policy by mailing or delivering to the first Named Insured, with postage fully prepaid, written notice of cancellation at least:

        **1.**   10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        **2.**   30 days before the effective date of cancellation if we cancel for any other reason.

    **D.**   We will mail or deliver our notice to the first Named Insured's last mailing address known to us or our authorized agent.

    **F.**   If this policy is cancelled, we will send the first Named Insured any pro rata premium refund due. The minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.**   The following is added to the:

    **1.**   **Loss Adjustment/Payable** General Policy condition; and

    **2.**   **Mortgage Provisions** General Policy condition:

    If a municipality has elected to apply the provisions of 1998 Michigan Public Act 217, a part of our payment for fire, explosion, vandalism, windstorm or hail, or riot or civil commotion loss or damage to your covered real property in that municipality will be withheld if the loss or damage is subject to the provisions of the Act. The withheld amount will be paid either to:

        **(a)**   The municipality;

        **(b)**   You and the mortgageholder, if any; or

        **(c)**   With your consent, the licensed contractor hired by you to perform repair, replacement, or removal services on the lost or damaged real property;

    according to the provisions of Public Act 217. We will notify you, any mortgageholder and the municipality of any loss subject to the provisions of Public Act 217.

SHPR  01 043 (0917)    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **Page 1 of 2**

If a municipality has elected to apply the provisions of MICH. COMP. LAWS § 500.3011, any further payment for claims for loss or damage to your covered property caused by fire or explosion of $2,000 or more will be withheld if you have failed to submit a required report to the fire and law enforcement authority designated by the municipality.

C.  The following is added to the **Suit Against The Company** loss condition:

The time for commencing an action against us is tolled from the time you notify us of the loss or damage until we formally deny liability for the claim.

D.  The **Appraisal** loss condition is replaced by the following:

**APPRAISAL**

If we and you disagree on the value of the property or the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and independent appraiser. The two appraisers will select a competent and impartial umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1.  Pay its chosen appraiser; and

2.  Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

As respects Time Element Coverages, the **Appraisal** loss condition is replaced by the following:

**APPRAISAL**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and independent appraiser. The two appraisers will select a competent and impartial umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1.  Pay its chosen appraiser; and

2.  Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

This endorsement forms a part of
Policy Number: HPR40033H0                                              Effective Date: 05/01/2019
Insured: CENTRAL GLASS AMERICA, INC.

SHPR 01 043 (0917)      Includes copyrighted material of Insurance Services Office, Inc.,      Page 2 of 2
                                         with its permission.

*This Endorsement Changes the Policy. Please Read It Carefully.*

## MISSISSIPPI CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies coverage provided under the following:

**COMPREHENSIVE ALL RISK FORM**

A.    Paragraph **H.** Is added to the **Cancellation And Non-Renewal** General Policy Condition:

    **H.**    If:

        **1.**    The first Named Insured cancels this policy we will notify any named creditor loss payee.

        **2.**    We cancel this policy we will mail or deliver our written notice of cancellation to any named creditor loss payee in the same manner and at the same time as notification is given to the first Named Insured, as stated in this Condition.

        The provisions of Paragraphs **1** and **2.** above do not apply to any mortgageholder.

B.    The following replaces condition **C.** in the **Cancellation and Non-Renewal** General Policy Condition:

    **C.**    **Nonrenewal**

        **1.**    If the first Named Insured does not renew this policy, we will notify any named creditor loss payee.

        **2.**    If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and any named creditor loss payee, at least:

            **a.**    10 days before the effective date of nonrenewal, if the nonrenewal is due to nonpayment of premium; or

            **b.**    30 days before an anniversary date or the expiration date of the policy, if the nonrenewal is for any other reason.

        We will notify the first Named Insured and any named creditor loss payee by mailing or delivering the notice of nonrenewal to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

        The provisions of Paragraphs **1.** and **2.** above do not apply to any mortgageholder.

C.    The requirements for notification of cancellation or nonrenewal of this policy, as stated in Paragraphs **A.**, and **B.** above, supersede any other notification requirements to any named creditor loss payee and any

**SHPR 01 073**
**(01-2011 ed.)**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 1 of 2**

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 139 of 174 PageID #: 143

mortgageholder, stated in this policy, including any endorsement attached to the policy.

**D.**   Any named creditor loss payee and any mortgageholder may elect not to receive notification of cancellation or nonrenewal by providing us with a written release.

This endorsement forms a part of Policy Number:   HPR40033H0              Effective date:   05/01/2019
Insured:   CENTRAL GLASS AMERICA, INC.

**SHPR 01 073**          Includes copyrighted material of Insurance Services Office, Inc.,          **Page 2 of 2**
**(01-2011 ed.)**                          with its permission.

*This Endorsement Changes the Policy. Please Read It Carefully.*

## MISSISSIPPI CHANGES

This endorsement modifies coverage provided under the following:

**COMPREHENSIVE ALL RISK FORM**

The **Suit Against the Company** Loss Condition in the General Policy Conditions is replaced by the following:

**SUIT AGAINST THE COMPANY**

No one may bring a legal action against us under this Policy unless:

1.  There has been full compliance with all of the terms of this Policy; and

2.  The action is brought within 3 years after the date on which the direct physical loss or damage occurred.

This endorsement forms a part of Policy Number:   HPR40033H0          Effective date:   05/01/2019
Insured:   CENTRAL GLASS AMERICA, INC.

**SHPR 01 074**          Includes copyrighted material of Insurance Services Office, Inc.,          **Page 1 of 1**
**(01-2011)**                                with its permission.

Case 3:24-cv-00695     Document 1-1     Filed 06/05/24     Page 141 of 174 PageID #: 145

*This Endorsement Changes the Policy. Please Read It Carefully.*

## TENNESSEE CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies coverage provided under the following:

**COMPREHENSIVE ALL RISK FORM**

**A.**   Paragraph **F.** of the **Cancellation And Non-Renewal** General Policy Condition is replaced by the following:

**A.**   If this policy is cancelled, we will send the first Named Insured any premium refund due.

The refund will be pro rata if:

**1.**   We cancel; or

**2.**   The policy is cancelled at the request of a premium finance company that has financed this policy under a premium finance agreement.

The refund may be less than pro rata if the first Named Insured cancels the policy.

The cancellation will be effective even if we have not made or offered a refund.

**B.**   The following is added to the **Cancellation And Non-Renewal** General Policy Condition:

**CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**1.**   Nonpayment of premium, including any additional premium, calculated in accordance with our current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

**2.**   Your conviction of a crime increasing any hazard insured against;

**3.**   Determination by the insurance commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of Tennessee or any other state;

**4.**   Your violation or breach of any policy terms or conditions; or

**5.**   Other reasons that are approved by the insurance commissioner.

Notice of cancellation will state the reason for cancellation.

**SHPR 01 088**
**(01-2011 ed.)**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 1 of 2**

**C.**    Paragraph **C.** of the **Cancellation And Non-Renewal** General Policy Condition is replaced by the following:

**C.    NONRENEWAL**

    **1.**  If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, at least 60 days before the expiration date unless:

        **a.**  We have offered to issue a renewal policy; or

        **b.**  You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

    **2.**  Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the policy. If notice is mailed, proof of mailing will be sufficient proof of notice.

This endorsement forms a part of Policy Number:     HPR40033H0                    Effective date:   05/01/2019
Insured:   CENTRAL GLASS AMERICA, INC.

SHPR 01 088                    Includes copyrighted material of Insurance Services Office, Inc.,                    Page 2 of 2
(01-2011 ed.)                                            with its permission.

*This Endorsement Changes the Policy. Please Read It Carefully.*

## WASHINGTON CHANGES - EXCLUDED CAUSES OF LOSS

This endorsement modifies coverage provided under the following:

**COMPREHENSIVE ALL RISK FORM**

A.   In section **B. Property Damage Coverage**, item **A.** under **IV. Exclusions** is replaced by the following:

   A.   We will not pay for loss or damage caused by any of the excluded events described below. Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event:

      1.   Directly and solely results in loss or damage; or

      2.   Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.

B.   The following exclusion replaces the **Water** exclusion section **B.** Property Damage Coverage:

   **Water** – This policy does not insure against loss or damage caused by:

      a.   Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

      b.   Mudslide or mudflow;

      c.   Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

      d.   Water under the ground surface pressing on, or flowing or seeping through:

         (1)   Foundations, walls, floors or paved surfaces;

         (2)   Basements, whether paved or not; or

         (3)   Doors, windows or other openings; or

      e.   Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **a.**, **c.** or **d.**, or material carried or otherwise moved by mudslide or mudflow.

   This exclusion applies if any of the above, in Paragraphs **a.** through **e.**:

      1.   Occurs independently;

**SHPR 01 097**
**(01-2011 ed.)**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 1 of 2**

Case 3:24-cv-00695   Document 1-1   Filed 06/05/24   Page 144 of 174 PageID #: 148

**2.** Is caused by an act of nature;

**3.** Is caused by an act or omission of humans or animals; or

**4.** Is attributable to the failure, in whole or in part, of a dam, levee, seawall or other boundary or containment system.

But if any of the above, in Paragraphs **a.** through **e.,** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

This endorsement forms a part of Policy Number:     HPR40033H0                    Effective date:    05/01/2019
Insured:   CENTRAL GLASS AMERICA, INC.

*This Endorsement Changes the Policy. Please Read It Carefully.*

## WASHINGTON CHANGES - DOMESTIC ABUSE

This endorsement modifies coverage provided under the following:

**COMPREHENSIVE ALL RISK FORM**

**A.**   The following exclusion and related provisions are added to section **IV – Exclusions** of Property Damage Coverage:

    **1.**   We will not pay for loss or damage arising out of any act committed:

        **a.**   By or at the direction of any insured; and

        **b.**   With the intent to cause a loss.

    **2.**   However, this exclusion or the Concealment, Misrepresentation Or Fraud Condition will not apply to deny an insured's claim for an otherwise covered property loss if such loss is caused by an act of "domestic abuse" by another insured under the policy, and the insured making claim:

        **a.**   Files a police report and cooperates with any law enforcement investigation relating to the act of "domestic abuse"; and

        **b.**   Did not cooperate in or contribute to the creation of the loss.

    **3.**   If we pay a claim pursuant to Paragraph **A.2.**, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**B.**   The following is added to the **Transfer Of Rights And Duties** General Policy Condition:

If we pay an insured, who is a victim of "domestic abuse", for a loss caused by an act of "domestic abuse", the rights of that insured to recover damages from the perpetrator of the abuse are transferred to us to the extent of our payment. That insured may not waive such rights to recover against the perpetrator of the "domestic abuse".

**C.**   As used in this endorsement, "domestic abuse" means:

    **1.**   Physical harm, bodily injury, assault or the infliction of fear of imminent physical harm, bodily injury or assault between family or household members;

    **2.**   Sexual assault of one family or household member by another;

    **3.**   Stalking, as defined in RCW 9A.46.110 of one family or household member by another family or household member; or

**SHPR 01 098**
**(01-2011)**

Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

**Page 1 of 2**

4. Intentionally, knowingly or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

This endorsement forms a part of Policy Number:     HPR40033H0                          Effective date:   05/01/2019
Insured:   CENTRAL GLASS AMERICA, INC.

**SHPR 01 098**                              Includes copyrighted material of Insurance Services Office, Inc.,                          **Page 2 of 2**
**(01-2011)**                                                            with its permission.

*This Endorsement Changes the Policy. Please Read It Carefully.*

## WASHINGTON CHANGES

This endorsement modifies coverage provided under the following:

**COMPREHENSIVE ALL RISK FORM**

The following changes are made to Section **D**. General Policy Conditions:

**A.** Under **Cancellation and Non - Renewal** – items **B** through **G** are replaced by the following:

**B.** We may cancel this policy by mailing or delivering to the first Named Insured and the first Named Insureds agent or brother written notice of cancellation, including the actual reason for the cancellation, to the last mailing address known to us, at least:

   **1.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **2.** 45 days before the effective date of cancellation if we cancel for any other reason;

except as provided in paragraphs **C** and **D** below.

**C.** We may cancel this Comprehensive All Risk Policy by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation at least 5 days before the effective date of cancellation for any structure where two or more of the following conditions exist:

   **1.** Without reasonable explanation, the structure is unoccupied for more than 60 consecutive days, or at least 65% of the rental units are unoccupied for more than 120 consecutive days unless the structure is maintained for seasonal occupancy or is under construction or repair;

   **2.** Without reasonable explanation, progress toward completion of permanent repairs to the structure has not occurred within 60 days after receipt of funds following satisfactory adjustment or adjudication of loss resulting from a fire;

   **3.** Because of its physical condition, the structure is in danger of collapse;

   **4.** Because of its physical condition, a vacation or demolition order has been issued for the structure, or it has been declared unsafe in accordance with applicable law,

   **5.** Fixed and salvageable items have been removed from the structure, indicating an intent to vacate the structure;

**SHPR 01 099**
**(01-2011 ed.)**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 1 of 3**

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 148 of 174 PageID #: 152

6. Without reasonable explanation, heat, water, sewer, and electricity are not furnished for the structure for 60 consecutive days; or

7. The structure is not maintained in substantial compliance with fire, safety and building codes.

D. We will also mail or deliver to any mortgage holder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at their last mailing address known to us, written notice of cancellation, prior to the effective of cancellation. If cancellation is for reasons other than those contain in Paragraph **A.3.** above,, this notice will be the same as that mailed or delivered to the first Named Insured. If cancellation is for a reason contained in Paragraph **A.3.**, above, we will mail or deliver this notice at least 20 days prior to the effective date of cancellation.

E. Notice of Cancellation will state the effective date of cancellation. The policy period will end on that date:

F. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be less than pro rata. If the first Named Insured cancels, the refund will be at least 90% of the pro rata refund.

G. If notice is mailed, proof of mailing will be sufficient proof of notice.

Item H. is added as follows:

H. **Nonrenewal**

1. We may elect not to renew this policy by mailing or delivering written notice of nonrenewal, stating the reasons for nonrenewal to the first Named Insured and the first Named Insured's agent or broker, at their last mailing address known to us. We will also mail to any mortgagee holder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy at their last mailing address known to us written notice of nonrenewal. We will mail or deliver these notices at least 45 days before the:

a. Expiration date of the policy; or

b. Anniversary date of this policy if this policy has been written for a term of more than one year.

Otherwise, we will renew this policy unless:

a. The first Named Insured fails to pay the renewal premium after we have expressed our willingness to renew, including a statement of the renewal premium, to the first Named Insured and the first Named Insured's agent or broker, at least 20 days before the expiration date;

SHPR 01 099 (01-2011 ed.)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 2 of 3

    **b.**   Other coverage acceptable to the insured has been procured prior to the expiration date of the policy; or

    **c.**   The policy clearly states that it is not renewable, and is for a specific line, the subclassification, or type of coverage that is not offered on a renewable basis.

**B.**  The **Transfer or Rights and Duties** General Policy Condition is replaced by the following:

   Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**C.**  The following replaces the last paragraph of General Policy Condition **Valuation**:

   The term actual cash value means:

    **A.**   When the damage to property is economically repairable, actual cash value means the cost of repairing the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

    **B.**   When the loss or damage to property creates a total loss, actual cash value means the market value of property in a used condition equal to that of the destroyed property, if reasonably available on the used market.

    **C.**   Otherwise, actual cash value means the market value of new, identical or nearly identical property less reasonable deduction for wear and tear, deterioration and obsolescence.

This endorsement forms a part of Policy Number: HPR40033H0     Effective date: 05/01/2019
Insured: CENTRAL GLASS AMERICA, INC.

**SHPR 01 099**     Includes copyrighted material of Insurance Services Office, Inc.,    **Page 3 of 3**
**(01-2011 ed.)**         with its permission.

*This Endorsement Changes the Policy. Please Read It Carefully.*

## INDIANA CHANGES – AMENDMENT OF DEFINITION OF POLLUTANTS

This endorsement modifies coverage provided under the following:

**COMPREHENSIVE ALL RISK FORM**

**SCHEDULE**

| | |
|---|---|
| **Specifically identified substances or materials** | |

In this Policy, the definition of "pollutants" is replaced by the following:

"Pollutants" means any substance or material that is a solid, liquid, gaseous or thermal irritant or contaminant including but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste and any substances or materials identified in the Schedule. Waste includes materials to be recycled, reconditioned or reclaimed.

The definition of "pollutants" applies whether or not the irritant or contaminant has any function in your business, operations, premises, site or location.

**This endorsement forms a part of**
**Policy Number:** HPR40033H0       **Effective Date:** 05-01-2019
**Insured:** CENTRAL GLASS AMERICA, INC.

**SHPR 01 111 (1014)**      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      **Page 1 of 1**

*This Endorsement Changes the Policy. Please Read It Carefully.*

## JOINT OR DISPUTED LOSS AGREEMENT

This endorsement modifies coverage provided under the following:

COMPREHENSIVE ALL RISK FORM

Under this endorsement, any reference to Boiler and Machinery means Boiler and Machinery and/or Equipment Breakdown policy.

A. This endorsement is intended to facilitate payment of insurance proceeds when:

    1. Both a boiler and machinery policy and this commercial property policy are in effect;

    2. Damage occurs to Covered Property that is insured by the boiler and machinery policy and this commercial property policy; and

    3. There is disagreement between the insurers as to whether there is coverage or as to the amount of the loss to be paid, if any, by each insurer under its own policies.

B. This endorsement does not apply if:

    1. Both the boiler and machinery insurer(s) and we do not admit to any liability; and

    2. Neither the boiler and machinery insurer(s) nor we contend that coverage applies under the other insurer's policy.

C. The provisions of this endorsement apply only if all of the following requirements are met:

    1. The boiler and machinery policy carried by the named insured, insuring the Covered Property, contains a similar provision at the time of the loss or damage, with substantially the same requirements, procedures and conditions as contained in this endorsement;

    2. The damage to the Covered Property was caused by a loss for which:

        a. Both the boiler and machinery insurer(s) and we admit to some liability for payment under the respective policies; or

        b. Either:

            (1) The boiler and machinery insurer(s) does not admit to any liability for payment, while we contend that:

                (a) All liability exists under the boiler and machinery policy; or

        **(b)**    Some liability exists under both the boiler and machinery policy and this commercial property policy;

    **(2)**    We do not admit to any liability for payment, while the boiler and machinery insurer(s) contends that:

        **(a)**    All liability exists under this commercial property policy; or

        **(b)**    Some liability exists under both the boiler and machinery policy and this commercial property policy; or

    **(3)**    Both the boiler and machinery insurer(s) and we:

        **(a)**    Do not admit to any liability for payment; and

        **(b)**    Contend that some or all liability exists under the other insurer's policy; and

  **3.**    The total amount of the loss is agreed to by you, the boiler and machinery insurer(s) and us.

**D.**    If the requirements listed in Paragraph **C.** above are satisfied, we and the boiler and machinery insurer(s) will make payments to the extent, and in the manner, described as follows:

  **1.**    We will pay, after your written request, the entire amount of loss that we have agreed as being covered, if any, by this commercial property policy and one-half (1/2) the amount of the loss that is in disagreement.

  **2.**    The boiler and machinery insurer(s) will pay, after your written request, the entire amount of loss that they have agreed as being covered, if any, by the boiler and machinery policy and one-half (1/2) the amount of loss that is in disagreement.

  **3.**    Payments by the insurers of the amounts that are in disagreement, as described in Paragraphs **1.** and **2.**, do not alter, waive or surrender any rights of any insurer against any other with regard to the portion of the loss for which each insurer is liable.

  **4.**    The amount in disagreement to be paid by us under this endorsement shall not exceed the amount payable under the equivalent Loss Agreement(s) of the boiler and machinery policy.

  **5.**    The amount to be paid under this endorsement shall not exceed the amount we would have paid had no boiler and machinery policy been in effect at the time of loss. In no event will we pay more than the applicable Limit of Insurance shown in the Declarations.

  **6.**    Acceptance by you of sums paid under this endorsement does not alter, waive or surrender any other rights against us.

**E.     Arbitration**

    1.    If the circumstances described in Paragraph **C.2.a.** exist and the boiler and machinery insurer(s) and we agree to submit our differences to arbitration, the boiler and machinery insurer(s) and we will determine the amount each will pay and will pay the insured within 90 days. Arbitration will then take place within 90 days after payment of the loss under the terms of this endorsement.

    2.    If any of the circumstances described in Paragraph **C.2.b.** exist, then the boiler and machinery insurer(s) and we agree to submit our differences to arbitration within 90 days after payment of the loss under the terms of this endorsement.

    3.    You agree to cooperate with any arbitration procedures. There will be three arbitrators: one will be appointed by us, and another will be appointed by the boiler and machinery insurer(s). The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction.

**F.     Final Settlement Between Insurers**

The insurer(s) found responsible for the greater percentage of the ultimate loss must return the excess contribution to the other insurer(s). In addition, the insurer(s) found responsible for the greater portion of the loss must pay Liquidated Damages to the other insurer(s) on the amount of the excess contribution of the other insurer(s). Liquidated Damages are defined as interest from the date the insured invokes this Agreement to the date the insurer(s) that contributed the excess amount is reimbursed. The interest is calculated at 1.5 times the highest prime rate from the Money Rates column of the Wall Street Journal during the period of the Liquidated Damages. Arbitration expenses are not a part of the excess contribution for which liquidated damages are calculated. Arbitration expenses will be apportioned between insurers on the same basis that the ultimate loss is apportioned.

This endorsement forms a part of Policy Number:    HPR40033H0            Effective date:   05/01/2019
Insured:   CENTRAL GLASS AMERICA, INC.

SHPR 02 019 (12/2011)            Includes copyrighted material of Insurance Services          Page 3 of 3
                                    Office, Inc., with its permission.

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 154 of 174 PageID #: 158

*This Endorsement Changes the Policy.   Please Read It Carefully.*

# WASHINGTON – AMENDMENT OF TERRORISM EXCLUSIONS

This endorsement modifies insurance provided under the following:

COMPREHENSIVE ALL RISK FORM

If this policy (or an endorsement to this policy) excludes loss or damage caused by a "certified act of terrorism", an "other act of terrorism", or "terrorism", the following paragraph is added to such exclusion(s) and supersedes any provision to the contrary:

Loss or damage will be considered to have been caused by such excluded event if the occurrence of that event:

1.  Directly and solely results in loss or damage; or

2.  Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.

*This Endorsement Changes the Policy. Please Read It Carefully.*

## WASHINGTON CHANGES – DEFENSE COSTS

This endorsement modifies coverage provided under the following:

**COMPREHENSIVE ALL RISK FORM**

If we initially defend an insured or an insured's defense but later determine that none of the claims for which we provided a defense or defense costs are covered under their insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

This endorsement forms a part of Policy Number:   HPR40033H0                          Effective date:   05/01/2019
Insured:   CENTRAL GLASS AMERICA, INC.

**SHPR 01 110 (0714)**          Includes copyrighted material of Insurance Services Office,          **Page 1 of 1**
                                                Inc., with its permission.

Policy Number: HPR40033H0

Sompo America Insurance Company

| | |
|---|---|
| Named Insured CENTRAL GLASS AMERICA, INC. | Effective Date: 05-01-2019<br>12:01 A.M., Standard Time |
| Agent Name WILLIS OF TENNESSEE, INC. | Agent No. A20TN |

*This Endorsement Changes the Policy. Please Read it Carefully*

**COVERAGE TERRITORY AMENDMENT**

This endorsement modifies coverage provided under the following:

COMPREHENSIVE ALL RISK FORM

**SECTION A DECLARATIONS, item IV. COVERAGE TERRITORY** is deleted and replaced with the following:

**IV. <u>COVERAGE TERRITORY</u>**

This policy covers loss or damage occurring at any Insured Location within the United States of America (including its territories and possessions), Canada and Puerto Rico. As respects Dependent Locations, the coverage territory is amended to include Dependent Locations located anywhere in the world except for loss or damage in any country or jurisdiction where trade relations are unlawful as determined by the Government of the United States of America or its agencies.

|  | Policy Number: |
| --- | --- |
| | HPR40033H0 |

Sompo America Insurance Company

| | | | |
| --- | --- | --- | --- |
| Named Insured | CENTRAL GLASS AMERICA, INC. | Effective Date: | 05-01-2019 |
| | | | 12:01 A.M., Standard Time |
| Agent Name | WILLIS OF TENNESSEE, INC. | Agent No. | A20TN |

### BUILDER'S RISK - NEW BUILDINGS AND ADDITIONS UNDER CONSTRUCTION

This endorsement modifies coverage provided under the following:

COMPREHENSIVE ALL RISK FORM

The following is added under **SECTION B - PROPERTY DAMAGE COVERAGE PART**, item **III. ADDITIONAL COVERAGES**:

We will pay for direct physical loss or damage to covered property from a "covered causes of loss", unless otherwise excluded or subject to limitations elsewhere in this policy.

1.  Covered Property

    Except as excluded elsewhere in this policy, this policy insures the following property at an Insured Location or as otherwise set forth herein, to the extent of the interest of the Insured in such property:

    a.  Property, including materials, supplies, machinery, fixtures and equipment which will become a permanent part of a building or structure in the course of construction. We will also cover the cost of:

        (1)  Excavations, grading or filling; and

        (2)  Underground flues, pipes, drains, piers or pilings;

    b.  Scaffolding, construction forms and temporary structures. This may be your property or the property of others which are in your care, custody and control.

2.  Where Coverage Applies

    a.  At a construction site located at an Insured Location;
    b.  Temporarily at other locations; and
    c.  In transit.

    But scaffolding, construction forms and temporary structures are covered only at a construction site at an Insured Location.

3.  When Coverage Begins and Ends

    Subject to the term of this policy, coverage for covered property begins at the time the covered property is at a location as described in item 2. above. However, coverage under this policy ends

Case 3:24-cv-00695    Document 1-1    Filed 06/05/24    Page 158 of 174 PageID #: 162

| | Policy Number: |
| | |
| | HPR40033H0 |

Sompo America Insurance Company

| | | |
|---|---|---|
| Named Insured | CENTRAL GLASS AMERICA, INC. | Effective Date: 05-01-2019 |
| | | 12:01 A.M., Standard Time |
| Agent Name | WILLIS OF TENNESSEE, INC. | Agent No.    A20TN |

at the earlier of the following:

   a.   After the owner or buyer accepts the covered property;

   b.   When your interest in the covered property ceases;

   c.   Beyond 90 days after a certificate of occupancy for the building or structure has been applied for;

   d.   After the building or structure  is occupied or put to its intended use (but you may install, store or test machinery and equipment); or

   e.   When this policy expires or is cancelled.

4.   Property Not Covered

The policy does not insure against loss or damage to:

   a.   Existing buildings or structures to which improvements, alterations, repairs or additions are being made;

   b.   Property while waterborne.  But we will insure covered property in transit to the construction site on land conveyance while on a regular ferry;

   c.   Contractor's machinery, tools, equipment and similar property which will not become a permanent part of the building or structure;

   d.   Land (including land on which covered property is located), water, lawns, trees, shrubs and plants;

   e.   Automobiles, motor trucks, trailers or other vehicles; aircraft or watercraft;

   f.   Accounts, bills, currency, deeds, evidence of debt, manuscripts, money, notes and securities; and

   g.   Contraband or property in the course of illegal transportation or trade.

The applicable sublimit per occurrence for this Additional Coverage is **$10,000,000** as indicated in Form SHPR 00 100 Section A – Declarations, Item F.  All other terms and conditions remain the same.

# Exhibit 2


**SOMPO INTERNATIONAL**
INSURANCE

November 1, 2023

**VIA EMAIL**

Alex Rotolo
Chief Financial Officer
Central Glass America, Inc.
7200 Centennial Blvd.
Nashville, TN 37209-1013
ARotolo@carlex.com

Sheri Wilson
SVP, National Property Claim Director
Lockton Companies
2100 Ross Avenue, Suite 1400
Dallas, TX 75201
SWilson@lockton.com

Re:  **Insured:**        **Central Glass America, Inc.**
     **Policy No.:**     **HPR40033H0**
     **Date of Loss:**   **March 3, 2020**
     **Insurer:**        **Sompo America Insurance Company**
     **Period:**         **May 1, 2019 – May 1, 2020**
     **Claim No.:**      **10469768**

Dear Mr. Rotolo and Ms. Wilson:

Sompo America Insurance Company ("Sompo") has completed its investigation of the time element portion of the above-referenced claim under Policy No. HPR40033H0 (the "Policy") issued to Central Glass America, Inc. ("Central Glass") for the policy period of May 1, 2019 to May 1, 2020. After careful consideration of the information provided, pertinent policy provisions, and applicable law, Sompo must respectfully deny coverage for Central Glass's claimed time element losses. The following discusses.

### I.     FACTUAL BACKGROUND

Central Glass claims that, on March 3, 2020, a tornado damaged its glass production plant in Nashville, Tennessee, causing structural damage and business interruption. We understand that Sompo has paid $17,768,200 for the property damage caused by the loss, and this portion of the claim is no longer at issue.

With respect to time element coverage, Central Glass has submitted a business interruption claim in the amount of $46,236,462, which Central Glass claims includes the total cost to rebuild the tin bath. This is comprised of $506,825 of property damage repairs and replacement, and $45,729,637 of extra expenses for internal hourly labor ($26,880), yield loss to date ($17,282,160), yield loss projected until the repair is completed ($4,872,000), the cost to buy glass outside ($9,142,578), quality RMAs ($142,490), repair estimate ($11,877,604), consulting fees ($25,488), and the prior claim loss float production ($2,360,437).

Central Glass has also submitted an alternative loss calculation totaling $68,198,792 in the event that it does not rebuild the tin bath. This amount is comprised of $506,825 of property damage repairs and replacement, and $67,691,967 of extra expenses for internal hourly labor ($26,880), yield loss to date ($17,282,160), quality

**Sompo International Insurance**
Hayes Building, 11405 North Community House Road, Suite 600, Charlotte, NC 28277, U.S.
+1.704.759.2200

www.sompo-intl.com



RMAs ($142,490), annual yield loss without repair for 9.5 years ($47,880,000), and the prior claim loss float production ($2,360,437). Central Glass also calculated the annual cost of 10% lower float yields if the tin bath is not repaired to be $5,040,000.00.

## II.   PARTIAL COVERAGE DENIAL

Based on the documents submitted by the insured, there is no coverage for the claimed time element losses. Sompo has already paid for the generator rental costs and generator fuel costs, and Central Glass did not provide any support for its claim of professional fees. No coverage exists for the claimed lost profits because Central Glass has submitted no evidence of any actual lost sales, there is no indication that the claimed lost sales resulted from the suspension of Central Glass's business, and there is no indication that any suspension of business was due to the physical damage caused by the tornado. Moreover, Central Glass has not shown any sales data for the relevant periods preceding and following the claimed loss, Central Glass chose not to sell its existing inventory due to low business demand related to Covid-19 and not as a result of the tornado, and Central Glass did not deduct the cost of its production materials as required by the Policy.

Similarly, no coverage exists for the claimed cancelled orders. Central Glass did not submit any evidence of cancelled orders from customers or any other parties, only from its own Lebanon plant. Further, the claimed cancellations occurred during the period of the mandated Covid-19 closure and were likely not caused by the tornado damage. In addition, there is no indication that the cancelled orders resulted from the suspension of Central Glass's business or that such suspension was due to physical damage caused by the tornado. Moreover, the loss could have been reduced by the use of Central Glass's existing inventory, and Central Glass did not deduct the cost of the raw materials on site from its loss calculations. Coverage for the cancelled orders is further precluded by the Policy's time element exclusion for cancellation of orders.

No coverage exists for the claimed excess freight charges, either. Central Glass did not show how these freight charges are related to the tornado damage. Moreover, these charges were incurred during the period of the Covid-19 shutdown, indicating that they were caused by the Covid-19 pandemic and not by the tornado damage. The claim for excess freight charges also fails to meet the Policy's requirements for time element loss coverage. Coverage for the excess freight charges is further precluded by the time element exclusion for idle periods.

Finally, no coverage exists for the claimed extra expenses for costs relating to repair and replacement of the tin bath because these expenses have not been incurred. Even if they are later incurred, they would be outside the "period of restoration" and they would not be for the purpose of resuming Central Glass's normal business operations, as Central Glass has already resumed operations. Furthermore, the claimed expenses do not "result from" the suspension of Central Glass's business operations. In addition, the Policy expressly excludes the "cost of permanent repair or replacement of property that has been damaged" from the definition of "extra expense." Accordingly, the Policy does not cover Central Glass's claimed extra expenses.

**Sompo International Insurance**
Hayes Building, 11405 North Community House Road, Suite 600, Charlotte, NC 28277, U.S.
+1.704.759.2200

www.sompo-intl.com



**A.** **Sompo Already Paid for the Generator Rental Costs and Generator Fuel Costs, and Central Glass Did Not Provide any Support for its Claim of Professional Fees.**

We understand that Sompo already compensated Central Glass for the generator rental costs and generator fuel costs as part of the settled property damage portion of this claim. We also understand that Central Glass did not provide any supporting documentation or explanation for its claim of professional fees. Therefore, Sompo does not owe any additional amounts for these items.

**B.** **No Coverage Exists for the Claimed Lost Profits.**

The Policy's Time Element Coverage Part provides: "If applicable, this policy insures 'Time Element' loss the Insured sustains as provided in the Time Element Coverages. The Time Element loss must result from the necessary 'suspension' of the insured's business activities at an Insured Location during the Period of Restoration. The 'suspension' must be due to direct physical loss of or damage to property of the type insurable under this policy, and the loss or damage must be caused by a 'covered cause of loss' as insured against in this policy."[1] "There is recovery only to the extent that the Insured is: 1. Unable to make up lost production within a reasonable period of time not limited to the period during which production is suspended; 2. Unable to continue such operations or services during the Period of Restoration; and 3. Able to demonstrate a loss of revenue for the operations, services or production suspended."[2]

"This policy insures 'Time Element' loss only to the extent it cannot be reduced through: 1. The Insured resuming business activities in whole or part; 2. The use of any property or service owned or controlled by the Insured; . . . or 5. The use of inventory, all whether at an Insured Location or at any other location."[3] "In determining the amount of loss payable, we will evaluate the experience of the business before and after the loss or damage and the probable experience had no direct physical loss or damage occurred at an Insured Location during the Period of Restoration."[4]

For lost income claims, the Policy further provides: "We will pay for the actual loss of Gross Earnings sustained by the Insured due to the necessary 'suspension' of the Insured's business activities during the Period of Restoration. The 'suspension' must be due to physical loss or damage of the type covered, at Insured Locations. . . . Recovery in the event of loss shall be the actual loss sustained, less charges and expenses that do not necessarily continue during the suspension of the Insured's business activities."[5] "For the purpose of this insurance, Gross Earnings is determined as follows: a. The sum of: (1) For manufacturing operations: the total net sales value of production; . . . b. Less the cost of the following: (1) 'Raw stock' used in production; (2) Supplies consisting of materials consumed directly in conversion of 'raw stock' into 'finished stock' or in supplying the service(s) sold by the insured; . . . ."[6]

---

[1] Policy, SHPR 00 100 (0519), p. 43.

[2] *Id.*

[3] *Id.*, pp. 43-44.

[4] *Id.*, p. 44.

[5] *Id.*

[6] *Id.*

**Sompo International Insurance**
Hayes Building, 11405 North Community House Road, Suite 600, Charlotte, NC 28277, U.S.
+1.704.769.2200

www.sompo-intl.com



**SOMPO INTERNATIONAL**
INSURANCE

"Period of Restoration for all Time Element coverages, unless otherwise stated, and subject to any Time Limit provided in the Declarations section, means that period of time that: 1. Begins immediately after the time of direct physical loss or damage caused by or resulting from a 'covered cause of loss' to property at an Insured Location; and 2. Ends on the earlier of: a. The date when the property at the Insured Location should be repaired, rebuilt, replaced or restored with reasonable speed and similar quality; or b. The date when business is resumed at a new, permanent location."[7] "The Period of Restoration does not include any additional time due to the Insured's inability to resume operations for any reason . . . ."[8] "Covered cause of loss" means "all risks of direct physical loss or damage from any cause unless excluded."[9] "Suspension" means "[t]he slowdown or cessation of the Insured's business activities."[10]

Central Glass is claiming lost profit for its windshield and slide glass production lines. However, Central Glass has submitted no evidence of any actual lost sales. In fact, it appears Central Glass had an inventory of glass products throughout the claimed period of lost profits. Even if there were actual lost profits, there is no indication that the lost profits resulted from the "necessary 'suspension' of the insured's business activities," and there is no indication that any such "suspension" was "due to" the "physical damage" caused by the tornado. To the extent the tin bath was inoperative during the replacement of the refractory lip, the replacement of the lip was necessitated by a crack that was caused by an electrical power outage on June 16, 2019, well before the March 3, 2020 tornado. Moreover, the shutdown of Central Glass's plant after completion of the lip replacement was caused by the Covid-19 pandemic, not by the tornado. When the Covid-19 shutdown was lifted, Central Glass decided not to restart the ribbon and to hot hold the furnace and bath because business demand was low as a result of Covid-19 – not as a result of the tornado. Central Glass has not identified any period of time during which its operations were suspended as a result of the March 2020 tornado.

Furthermore, Central Glass has not "demonstrate[d] a loss of revenue for the operations, services or production suspended" caused by the tornado, as required by the Policy. In determining this amount, the Policy requires an evaluation of "the experience of the business before and after the loss or damage and the probable experience had no direct physical loss or damage occurred at an Insured Location during the Period of Restoration."[11] The claimed loss amount is based on the average daily production from October 1, 2018 through March 24, 2019, not on the actual production prior to and after the loss. According to the data provided, Central Glass's sales after it restarted operations continued to be low due to Covid-19 conditions affecting the automobile industry. This indicates that Central Glass's Oct. 2018 – March 2019 sales data are not reflective of the revenue that would have been generated during the Covid-19 pandemic. It is the net income that would have been generated during the period of the suspension of operations – not during only the preceding period – that determines the amount of business interruption coverage.

In addition, the Policy insures "time element" loss "only to the extent it cannot be reduced through . . . [t]he use of inventory."[12] Here, Central Glass had inventory on hand throughout the period of its claimed

---

[7] *Id.*, p. 52.
[8] *Id.*, p. 53.
[9] *Id.*, p. 67.
[10] *Id.*, p. 68.
[11] *Id.*, p. 44.
[12] Policy, SHPR 00 100 (0519), pp. 43-44.

**Sompo International Insurance**
Hayes Building, 11405 North Community House Road, Suite 600, Charlotte, NC 28277, U.S.
+1.704.759.2200

www.sompo-intl.com


suspension of business, yet chose not to sell it. It appears that Central Glass's decision to not sell its inventory was based on a business strategy of waiting until demand for its glass products rose after the Covid-19 pandemic, not as a necessary consequence of the March 2020 tornado.

Also, Central Glass's calculation did not deduct the cost of the production materials as required by the Policy.[13] This deduction is necessary to determine the "actual loss" sustained by Central Glass as a result of the suspension of its business operations.

### C.   No Coverage Exists for the Claimed Cancelled Orders.

Central Glass also seeks time element loss coverage for cancelled orders. This portion of the claim includes $302,104 of unfilled back orders, which is based on the reported quantities on hand at the date of loss, and $59,517 of cancelled orders from Central Glass's Lebanon plant. All of these cancellations occurred in April 2020, during the mandated Covid-19 closure.

However, Central Glass did not submit any evidence of cancelled orders from customers or any other parties – only from its own Lebanon plant. Moreover, the claimed cancellations are during the period of the mandated Covid-19 closure. Thus, they were caused by the Covid-19 pandemic, not by the tornado damage.

Further, as Central Glass seeks coverage for these cancelled orders under the Policy's time element coverage part, this portion of its claim suffers from many of the same deficiencies as the lost profits portion of the claim discussed above. Even if Central Glass was able to show that there were cancelled orders, there is no indication that the cancelled orders resulted from the "necessary 'suspension' of the insured's business activities," and there is no indication that any such "suspension" was "due to" the "physical damage" caused by the tornado. Central Glass also had inventory on hand, which means that the claimed time element loss could have been reduced by the use of its inventory. In addition, Central Glass did not deduct the cost of the raw materials on site as required by the Policy.

Even if Central Glass's claim met all the above criteria, which it did not, coverage for cancelled orders is precluded by the Policy's time element exclusion for cancellation of orders. Under "Time Element Exclusions," the Policy provides: "This policy does not insure against . . . [a]ny increase in Time Element loss due to: 1. Suspension, cancellation or lapse of any . . . orders."[14] Accordingly, coverage for Central Glass's cancellation of orders claim is further precluded by the cancellation of orders exclusion.

### D.   No Coverage Exists for the Excess Freight Charges.

Central Glass also seeks coverage for excess freight charges for its Lebanon plant for the period of March and April 2020. However, Central Glass did not show how these freight charges are related to the tornado damage. In fact, these freight charges are for delivery to another Central Glass plant, not to any customers. Moreover, the freight charges are for the period of the Covid-19 shutdown, indicating they were not caused by the tornado. In addition, the claim for excess freight charges does not meet the Policy's time element loss

---

[13] *Id.*, p. 44.
[14] *Id.*, p. 53.

**Sompo International Insurance**
Hayes Building, 11405 North Community House Road, Suite 600, Charlotte, NC 28277, U.S.
+1.704.759.2200

www.sompo-intl.com



coverage requirements for the reasons discussed above in the context of Central Glass's other time element loss claims.

Even if coverage was triggered for the excess freight charges, coverage is precluded by the idle periods exclusion. The Policy's time element exclusions provide: "This policy does not insure against: A. Any loss during any idle period, including but not limited to when production, operations, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to: . . . 2. Planned or rescheduled shutdown. . . . 4. Any other reason other than physical loss or damage insured by this policy."[15] Here, the excess freight charges were incurred during March and April 2020, when the business was shut down by the Covid-19 pandemic. Thus, coverage for the freight charges is further precluded by the idle periods exclusion.

**E.      No Coverage is Triggered for the Claimed Extra Expenses.**

Central Glass also seeks a significant amount of extra expense coverage, which it presents in two alternative calculations. Its first calculation, which includes the cost to rebuild the tin bath, is in the amount of $46,236,462, and it is comprised of $506,825 of property damage repairs and replacement, and $45,729,637 of extra expenses for internal hourly labor ($26,880), yield loss to date ($17,282,160), yield loss projected until the repair is completed ($4,872,000), the cost to buy glass outside ($9,142,578), quality RMAs ($142,490), repair estimate ($11,877,604), consulting fees ($25,488), and the prior claim loss float production ($2,360,437). Its second, alternative, calculation, which it presents as the cost of *not* rebuilding the tin bath, is in the amount of $68,198,792. This amount is comprised of $506,825 of property damage repairs and replacement, and $67,691,967 of extra expenses for internal hourly labor ($26,880), yield loss to date ($17,282,160), quality RMAs ($142,490), annual yield loss without repair for 9.5 years ($47,880,000), and the prior claim loss float production ($2,360,437). Central Glass also calculated the annual cost of 10% lower float yields if the tin bath is not repaired to be $5,040,000.00.

"Extra Expense" is a subcategory of "time element" coverage, so it is subject to all the requirements listed above with respect to time element losses. The specific provision relating to extra expense coverage provides: "We will pay for the reasonable and necessary Extra Expense incurred by the Insured, to resume and continue as nearly as practicable the Insured's 'normal' business activities that otherwise would be suspended, due to direct physical loss or damage caused by a 'covered cause of loss' to property at an Insured Location."[16] "Extra Expense, wherever used in this policy, means that amount spent during the Period of Restoration to continue the Insured's business activities, over and above the expenses the Insured would normally have incurred had there been no necessary suspension of the Insured's business activities."[17] "Extra Expense(s) does not include . . . [c]ost of permanent repair or replacement of property that has been damaged or destroyed."[18]

The "extra expenses" submitted by Central Glass do not meet these criteria. First, the expenses submitted by Central Glass have not been incurred. Second, if they are later incurred, they will be outside the "period of restoration," as Central Glass has already resumed operations. Third, any expense later incurred

---

[15] *Id.*
[16] *Id.*, p. 45.
[17] *Id.*
[18] *Id.*

**Sompo International Insurance**
Hayes Building, 11405 North Community House Road, Suite 600, Charlotte, NC 28277, U.S.
+1.704.759.2200

www.sompo-intl.com



would not be for the purpose of resuming Central Glass's normal business activities, as Central Glass has already resumed its business activities. Fourth, the claimed expenses do not meet the requirements for "time element" coverage because they do not "result from" the suspension of Central Glass's business activities.[19] Finally, "extra expense" does not include the "cost of permanent repair or replacement of property that has been damaged or destroyed," and this is exactly what Central Glass is seeking – the cost to permanently repair or replace the damaged tin bath. Accordingly, no coverage is triggered for Central Glass's claimed extra expenses.

### III.    CONCLUSION

For the above reasons, Sompo must deny coverage under the Policy for Central Glass's claimed time element losses. Sompo bases its position on the applicable Policy language, conditions, terms, and exclusions as set forth in the Policy. In citing certain provisions of the Policy, Sompo is not waiving its rights to other coverage defenses under the Policy or at law. Rather, Sompo specifically reserves its right to assert and rely upon any defenses to coverage which may be available under the terms and conditions of the Policy, even if they are not mentioned or discussed herein.

Sompo's conclusion regarding coverage is based on its review of the materials it has received to date. If you believe Sompo should consider additional pertinent information or documents, we invite you to submit them at your earliest convenience. Moreover, if you believe Sompo's understanding of the facts is inadequate, that Sompo lacks necessary documents, or that its conclusions are improper, please inform us of your position and/or objections. Sompo is willing to reevaluate its coverage position in light of any additional documents you may provide. Sompo continues to reserve each of its rights, and requires strict compliance with each of the conditions and obligations set forth in the Policy.

In accordance with regulations promulgated under the Tennessee Insurance Code, please note that if an Insured believes that a claim for coverage under an insurance policy has been wrongfully denied, in whole or in part, the Insured may file a complaint with the Tennessee Department of Commerce and Insurance, Consumer Insurance Services. The Tennessee Department of Commerce and Insurance, Consumer Insurance Services may be reached at:

Tennessee Department of Commerce and Insurance
Consumer Insurance Services
500 James Robertson Parkway
Nashville, Tennessee 37243
Telephone: (800) 342-4029

---

[19] See id., p. 43.

**Sompo International Insurance**
Hayes Building, 11405 North Community House Road, Suite 600, Charlotte, NC 28277, U.S.
+1.704.759.2200

www.sompo-intl.com



**SOMPO INTERNATIONAL**
INSURANCE

If you have any questions, please do not hesitate to contact us.

Sincerely,

*Tracy Shook*

Tracy Shook, AIC
AVP Claims Manager, North American Property Claims

**Sompo International Insurance**
Hayes Building, 11405 North Community House Road, Suite 600, Charlotte, NC 28277, U.S.
+1.704.759.2200

www.sompo-intl.com

# Exhibit 3

POLICY NUMBER

HPR40033H0
POLICY AMT. AT TIME OF LOSS

$                    650,000,000
DATE ISSUED

05/01/2019
DATE EXPIRES

05/01/2020

# Sworn Statement

## IN

# PROOF OF LOSS

COMPANY CLAIM NUMBER

10469768
AGENT

Lockton Companies
AGENCY AT

Kansas City, MO

To the _____ Sompo America Insurance Company

of _____ 77 Third Avenue 24th Floor, New York, NY 10017-1307 c/o Tracy Shook, AIC AVP

At time of loss, by the above indicated policy of insurance you insured–

Carlex Glass America, LLC 7200 CENTENNIAL BLVD, NASHVILLE, TN, 37209-1013

against loss by all risks of physical loss _____ to the property described according to the terms and conditions of said policy and of all forms, endorsements, transfers and assignments attached thereto.

| | |
|---|---|
| TIME AND ORIGIN | A  weather-related  loss occurred about the hour of n/a  o'clock AM/PM., on the 3rd  day of March  , 20 20. The cause and origin of the said loss were: tornado winds |
| OCCUPANCY | The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever: auto glass manufacturing |
| TITLE AND CHANGES | At the time of the loss, the interest of your insured in the property described therein was  Owner . No other person or persons had any interest therein or encumbrance thereon, except: No Exceptions Since the said policy was issued, there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except n/a |
| TOTAL | THE TOTAL AMOUNT OF INSURANCE upon the property described by this policy was, at the time of the loss, $                   650,000,000 , as more particularly specified in the apportionment attached, besides which there was no policy or other contract of insurance, written or oral, valid or invalid. |
| PD VALUE | THE ACTUAL CASH VALUE of damaged property at the time of the loss was . . . . . . . . . . . $ _____ 42,595,096.00 |
| T.E. LOSS | THE TIME ELEMENT LOSS was . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . :$ _____ 23,315,448 |
| AMT. CLAIMED | THE AMOUNT CLAIMED under the above numbered policy number is . . . . . . . . . . . . . . . . . . $ _____ 65,910,544 |
| STATEMENTS OF INSURED | The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed  schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company; as to the extent of said  loss,  has  in  any manner been made.  Any other information that may be required will be furnished and considered a part of this proof. |

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.

State Of Tennessee

County Of Davidson

Subscribed and sworn to before me this  1st  
Personally Known to Me ✓
I.D. _____

Insured: Carlex Glass America, LLC

By: Alex Rotolo, CFO

day of  February

Notary: Stephanie McCart

[Notary seal: STEPHANIE B. McCARTER, STATE OF TENNESSEE, NOTARY PUBLIC, Commission Expires SEPT. 2...]

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURANCE COMPANY FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

State of Tennessee
Department of Commerce & Insurance
500 James Robertson Pkwy
Service of Process 10th Floor
Nashville, TN 37243-0565

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**



FIRST CLASS

US POSTAGE — PITNEY BOWES

ZIP 37243 $ 020.50⁰
02 4M
0000380135 MAY 20 2024

7020 1290 0001 6214 7545

7020 1290 0001 6214 7545    May 2024

Corporation Service Company
2908 Poston Avenue
Nashville, TN 37203

**IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE**
**20th JUDICIAL DISTRICT, DAVIDSON COUNTY**

| | | |
|---|---|---|
| CARLEX GLASS AMERICA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 24-0259-II |
| SOMPO AMERICA INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CONSENT MOTION FOR EXTENSION OF TIME

COME NOW, Plaintiff and Defendant (hereinafter the "Parties"), by and through undersigned counsel, and hereby move this Court to extend the time for Defendant to respond to Plaintiff's Complaint through July 25, 2024.

A proposed Order Granting the Consent Motion for Extension of Time is attached hereto.

Respectfully submitted this 4th day of June, 2024.

| | |
|---|---|
| /s/ Jack R. Dodson III (signed with express permission by Tracey Jordan) | /s/ Tracey A. Jordan |
| Jack R. Dodson III | Tracey A. Jordan |
| TN Bar No. 027947 | TN Bar No. 037423 |
| K&L Gates LLP | Cozen O'Connor |
| 501 Commerce Street, Suite 1500 | 200 South Biscayne Blvd., Ste. 3000 |
| Nashville, Tennessee 37203 | Miami, Florida 33131 |
| Telephone: (615) 780-6742 | Telephone: (305) 358-5503 |
| E-mail: rob.dodson@klgates.com | Facsimile: (786) 220-0205 |
| | E-mail: tjordan@cozen.com |
| *Counsel for Plaintiff* | — and — |
| | Alycen A. Moss (*pro hac vice forthcoming*) |
| | Elliot Kerzner (*pro hac vice forthcoming*) |
| | Cozen O'Connor |
| | The Promenade, Suite 400 |
| | 1230 Peachtree Street, N.E. |
| | Atlanta, Georgia 30308 |
| | Telephone: (404) 572-2052 |
| | Facsimile: (877) 728-1396 |
| | E-mail: amoss@cozen.com |
| | E-mail: ekerzner@cozen.com |
| | *Counsel for Defendant* |

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2024, I filed a true and correct copy of the foregoing *Consent Motion for Extension of Time* with the Clerk of Court by Federal Express overnight mail, and served a copy of same on Plaintiff's attorney by United States Mail, postage prepaid, as follows:

Jack R. Dodson III
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
rob.dodson@klgates.com

*/s/ Tracey A. Jordan*
Tracey A. Jordan
TN Bar No. 037423

# IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE
## 20th JUDICIAL DISTRICT, DAVIDSON COUNTY

| | | |
|---|---|---|
| CARLEX GLASS AMERICA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 24-0259-II |
| | ) | |
| SOMPO AMERICA INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PROPOSED ORDER

Having reviewed and considered the Consent Motion for Extension of Time for Defendant to respond to Plaintiff's Complaint, it is hereby:

**ORDERED AND ADJUDGED** that the Consent Motion is **GRANTED**, and that the time Defendant has to respond to Plaintiff's Complaint shall be extended through July 25, 2024.

SO ORDERED this _____ day of June, 2024.

_____